# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF ILLINOIS; and STATE OF OREGON,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; BENJAMINE HUFFMAN, in his official capacity as Acting Secretary of Homeland Security; U.S. SOCIAL SECURITY ADMINISTRATION; MICHELLE KING, in her official capacity as Acting Commissioner of the Social Security Administration; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY FINK, in her official capacity as Acting Secretary of Health and Human Services; U.S. DEPARTMENT OF JUSTICE; JAMES MCHENRY, in his official capacity as Acting Attorney General; U.S. DEPARTMENT OF AGRICULTURE; GARY WASHINGTON, in his official capacity as Acting Secretary of Agriculture; and the UNITED STATES OF AMERICA,<br><br>　　　　Defendants. | NO. 2:25-cv-00127<br><br>DECLARATION OF DR. CHARISSA FOTINOS |

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

I, Dr. Charissa Fotinos, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am the State Medicaid Director for the Washington State Health Care Authority (HCA). I have been employed with HCA since October 1, 2013 and held this position since 2022. As State Medicaid Director, I am responsible for executive level oversight and administration of the Washington Apple Health (Medicaid) program, which provides more than two million Washington residents with integrated physical and behavioral health services. In this role I oversee Medicaid and the Children's Health Insurance Program (CHIP) in Washington, which are programs governed by federal rules and supported by federal funding, but administered by the State. I have also served, since 2022, as HCA's Behavioral Health Medical Director.

3. Before beginning my role as State Medicaid Director in 2022, I served in the same role in an acting capacity beginning in 2021. I have served as the Deputy Chief Medical Officer since 2013. Prior to joining HCA, I served as Chief Medical Officer for Public Health-Seattle & King County for 10 years and have served as a physician faculty member at the Providence Family Medicine Residency Program. By way of formal training and medical practice, I am board certified by the American Board of Family Medicine in Family Medicine and by the American Board of Preventive Medicine in Addiction Medicine. I hold a Master of Science in evidence-based health care from Oxford University, Kellogg College, in England, and an M.D. from the University of Colorado Health Sciences Center.

4. HCA is the designated single state agency responsible for administering Washington's Medicaid program and Children's Health Insurance Program (CHIP), federal programs regulated by the U.S. Department of Health and Human Services. Medicaid and CHIP are jointly funded by both state and federal dollars, though at different rates, as explained below. HCA also administers some state funded health care programs, including the Children's Health

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Program (CHP) and the recently launched Apple Health Expansion (which in July 2024 began providing coverage for individuals 19 and older who do not qualify for other Apple Health (Medicaid) programs due to immigration status).

5. As explained below, Washington Apple Health is an umbrella term or "brand name" for all Washington State medical assistance programs, including Medicaid. HCA is Washington's Medicaid authority, its behavioral health authority, and functions as the largest purchaser of health coverage in Washington. It is a leader in ensuring Washington residents have access to services and interventions that support health, and it is committed to whole-person care, integrating physical and behavioral health services for better results and healthier communities in Washington. HCA purchases health care for nearly 2.8 million people through Apple Health (Medicaid) and other programs. Apple Health programs serve approximately 1.9 million individuals per month in Washington.

6. Medicaid is the federally matched medical aid program under Title XIX of the Social Security Act (and Title XXI of the Social Security Act for the Children's Health Insurance Plan) that covers the Alternative Benefit Package (ABP), Categorically Needy (CN) and Medically Needy (MN) programs. The program is a state and federal partnership with states funding a portion of the program (as noted, usually up to 50 precent). In Washington, as noted, Medicaid is provided under the name Apple Health. It provides coverage for a broad array of services, including preventative care and other health care services.

7. The table below illustrates the state fiscal year 2025 forecasted expenditure dollars in the thousands for the physical health, non-behavioral health services, side of HCA's programs. Funds are broken out by federal (GFF) and state (GFS) expenditures. Medicaid[1] includes funds associated with all Title XIX eligibility groups. CHIP[2] includes children covered under Title XXI. State only[3] programs in Washington include Medical Care Services (MCS), Children's Health Plan (CHP), post-partum coverage for non-citizen pregnant women and the Apple Health Expansion (AHE), among others. States, including Washington, use federal

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Medicaid funds for the Alien Emergency Medical (AEM) program, which is also known as Emergency Medicaid.

| FY 2025 HCA PH Forecasted Expenditures ($s in Thousands) | | | |
|---|---|---|---|
| | GFF | GFS | Total |
| *Medicaid* | 6,427,949 | 3,222,626 | 9,650,575 |
| *CHIP (Children)* | 105,594 | 55,974 | 161,569 |
| *AEM* | 31,828 | 20,527 | 52,355 |
| *Non-Citizen Pregnant Women through post-partum* | 31,799 | 50,369 | 82,168 |
| *CHP* | 4,553 | 55,514 | 60,067 |
| *MCS* | 181 | 18,593 | 18,774 |
| *AHE (includes AEM for AHE clients)* | 31,738 | 102,775 | 134,514 |
| *Total* | 6,633,644 | 3,526,378 | 10,160,022 |

8.  Within the Information Technology Innovation and Customer Experience Administration at HCA, roughly 350 state staff are responsible for determining eligibility for Apple Health programs, providing customer service, and managing eligibility policy for the majority of state and federally-backed Apple Health programs serving approximately 1.9 million Washingtonians. In addition to providing direct access to the programs, this administration is responsible for coordinating with the Department of Social and Health Services (DSHS) for administering Supplemental Security Income (SSI)-related and Long-Term Services and Supports Medicaid programs for the aged, blind or disabled populations.

9.  Medicaid eligibility is comprised of three income methodologies: Modified Adjusted Gross Income (MAGI) methodology, non-MAGI methodology, and deemed eligibility

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

(SSI recipients or Foster Care/Adoption support coverage). Programs under MAGI rules include coverage for adults aged 19-64, pregnant women, families, and children. Programs under non-MAGI rules include aged, blind or disabled populations. Deemed eligibility means that a person is granted coverage based on their categorical relationship to the program. For example, a person receiving SSI automatically receives full scope Medicaid coverage. All programs have the same level of coverage. With our community, state, and national partners, HCA is committed to providing evidence-based, cost-effective services that support the health and well-being of individuals, families, and communities in Washington State.

10. Federal Medicaid rules direct states to look at income and residency rules first and then determine whether someone is a citizen or has a satisfactory immigration status to determine eligibility. Individuals who are undocumented and do not have a lawful, qualifying immigration status, are not eligible for federal Medicaid or other benefits. The limited exception involves the federal program for undocumented or non-qualified individuals to receive emergency medical care coverage if they are otherwise eligible for Medicaid. This is also known as Emergency Medicaid. In Washington, this is available through the limited Alien Emergency Medical (AEM) program. This program covers emergency health care for a limited set of qualifying emergent medical conditions. Individuals must be categorically relatable to an existing Medicaid program—in other words, they must meet the income or other requirements—but not be eligible for a program solely due to immigration status requirements. As part of the Medicaid program, this is a joint federal and state funded program and is available to non-pregnant individuals with emergent medical conditions, including labor and delivery for pregnant clients, breast and cervical cancer, dialysis treatment and some long-term care services. When individuals who are undocumented or non-qualified receive emergency coverage under AEM, the federal matching rate is 50 percent, meaning that federal funds cover 50 percent of the cost and state funds cover 50 percent of the cost.

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

11. Coverage programs for children are also provided under the name Apple Health for Kids. From a public-facing standpoint, Washington's Apple Health covers all kids regardless of immigration status up to 317 percent of the Federal Poverty Limit (FPL). Funding for the coverage, though, depends on a child's eligibility for different programs.

12. Below 215 percent of the FPL, for children who are citizens or qualified and authorized immigrants, the funding for this coverage is through Medicaid.

13. Between 215 and 317 percent of the FPL, for children who are citizens or qualified and authorized immigrants, the funding for this coverage comes through CHIP, and households pay a minimal premium for kids coverage. CHIP is a federally matched health coverage program that expands coverage to children above the Medicaid cutoff. Washington's CHIP offers comprehensive healthcare coverage to children through age 18, who reside in households with incomes between 215 percent and 317 percent of the FPL, whereas Medicaid covers eligible children below that range.

14. While provided in Washington under the name Apple Health, coverage provided under the CHIP program operates separately from Medicaid on the funding side. Historically, CHIP federal match has been 65 percent. It was increased as high as 88 percent for a period of time in recent years, but now is at 65 percent. This means that coverage provided to eligible children under the CHIP funding structure results in federal funds covering a higher portion of the expenses. Children who would have been eligible for Washington's CHIP-funded coverage programs had they met immigration status requirements can receive coverage through the state-funded Apple Health for Kids (CHP).

15. Apple Health also covers all pregnant women regardless of immigration status with income at or below 215 percent of the FPL. This is possible because their unborn children are deemed covered at conception, so even though the mother may not have a legal immigration status, the child will be born a U.S. citizen and is therefore eligible under CHIP from conception through birth. After the child is born, the child (as a U.S. citizen) can remain covered under

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  Medicaid while the mother is no longer covered under the federal program. Historically,
2  Washington's annual federal CHIP award totals about $250 million. That funding, combined
3  with the appropriate state funds, can be used for many purposes including prenatal health care
4  for immigrants who might not qualify for Medicaid.

5     16. As of December 2024, HCA administers Medicaid and CHIP funded coverage
6  for more than 860,000 children in Washington. HCA estimates that coverage on a per-child basis
7  costs approximately $2,844 per year on average for physical health care coverage. For this
8  coverage, Washington expended approximately $2.37 billion with approximately $1.3 billion
9  coming from the federal government under Medicaid and CHIP. With respect to the state-only
10 funded CHP, there were approximately 30,000 children covered. Additionally, the State
11 expended approximately $60 million with approximately $4.5 million from the federal
12 government under Medicaid as part of AEM (for emergency medical services).

13    17. Under federal law, HCA must provide Medicaid and CHIP coverage to citizens
14 and qualified noncitizens whose citizenship or qualifying immigration status is verified and who
15 are otherwise eligible. Applications for coverage are processed either through the Washington
16 Healthplanfinder (administered by the Health Benefit Exchange) where eligibility is based on a
17 MAGI determination or through the Department of Social and Health Services (DSHS) for other
18 eligible individuals. Citizenship or eligibility status is one eligibility factor that HCA must verify
19 for Apple Health (Medicaid and CHIP) coverage. There are multiple ways that HCA verifies
20 citizenship or immigration status to determine eligibility.

21    18. Generally speaking, for MAGI-based coverage, HCA first uses an individual's
22 Social Security Number (SSN) along with the individual's name and date of birth to
23 automatically check the SSN with the Social Security Administration (SSA) in order to confirm
24 identity and citizenship through what is called the "federal hub." For individuals who declare to
25 be lawfully present and have a SSN, HCA uses the SSN, name, and date of birth to confirm an
26 individual's status with the Department of Homeland Security. For individuals who have an SSN

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

and declare to be a citizen, but for whom citizenship cannot be automatically verified, HCA will request verification from the individual of their citizenship. And when an individual is applying for Classic Apple Health/non-MAGI through DSHS, SSN and citizenship are automatically verified through an interface with the SSA.

19. In instances where citizenship is not or cannot be verified by those automatic means (such as where an individual claims to be a citizen or have a qualifying status but HCA cannot verify it through the automatic process because the individual lacks an SSN), an individual can be approved for Medicaid/CHIP coverage based on their attestation and given a reasonable opportunity to provide verification. On that issue, a declaration of citizenship or satisfactory immigration status may be provided in writing, and under penalty of perjury by an adult member of the household, an authorized representative, or someone acting for the applicant. States must provide otherwise eligible individuals with a "reasonable opportunity period" to verify their satisfactory immigration status. Individuals making a declaration of a satisfactory citizenship or immigration status are furnished at least 90 days of coverage in order to resolve any unverified issues. If an individual's status is found to be unsatisfactory before the 90 days, their eligibility is determined and their coverage closed. If at the end of the 90 days, the individual still has not resolved their status, they can have an additional 90 days to continue working towards resolution. This is a manual process in which HCA works to verify an individual's citizenship or status on a case-by-case basis. It is administratively burdensome for both the individual and for HCA staff.

20. HCA's Application for Health Care Coverage is the form individuals can use to apply for Apple Health and is thus one way HCA can determine whether the individual is eligible for free or low-cost health care coverage through Apple Health (Medicaid), Apple Health for Kids and Apple Health for Kids with Premiums (also known as CHIP), or other state-funded programs. As part of that application, individuals must submit their (or if applying for their child, their child's) Social Security Number (SSN), date of birth, immigration information if

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

applicable, and income information. As the application explains, HCA uses SSNs and other immigration document numbers to determine eligibility.

21. I understand that the President has issued an Executive Order that will deny birthright citizenship to children born in Washington depending on their parents' citizenship or immigration status. The federal government's policy of ending birthright citizenship for children born in the United States based on their parent(s)' non-citizen/immigration status will have a variety of widespread impacts on Washington's medical benefits programs, including a decrease in receipt of proper medical care for children born in Washington and increased operational and administrative costs for Washington.

22. In addition to impacts on those subject to this new policy will have a direct impact on HCA's administration of its healthcare programs and the amount of federal funding Washington receives to reimburse medical expenses for children in Washington.

23. Washington has made tremendous strides in reducing the number of uninsured individuals. Many immigrants are direct beneficiaries of this progress. In 2007, Washington became one of the first states to adopt a local policy to cover all kids with income up to 312 percent of the federal poverty level regardless of immigration status. Washington has continued to improve and broaden coverage options for children residing in Washington and worked to streamline the application process and make public-facing materials easy to understand for parents seeking coverage for themselves and their children. This is possible using both state and federal Medicaid and CHIP dollars as appropriate. Evidence shows that uninsured individuals suffer significant negative health impacts and the economic impacts of an increase in the uninsured rate could be severe.

24. Washington's current Medicaid and health benefits programs are structured around the significant reimbursements from the federal government, and any loss of funding would have serious consequences for HCA and those individuals it serves. The federal government action of taking away birthright citizenship from children born in Washington will

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

result in babies being born as non-citizens with no legal status. That will result in direct loss of federal reimbursements to the State for coverage provided to those children because eligibility for federally matched programs such as Medicaid and CHIP depend on the individual's eligibility under federal law, which necessarily depends on their citizenship or immigration status. In particular, federally matched coverage to many children that would have been provided under Medicaid or CHIP will very likely be lost, since those programs are not available to unauthorized individuals aside from Emergency Medicaid/AEM coverage. This will necessarily result in a shift to the State of funding responsibility for this group of children, which poses a direct threat to the ability of the State to provide meaningful healthcare to all in need without interruption. It will also likely result in a significant number of children who may go uninsured and receive only emergency care when absolutely necessary, leading to worse health outcomes as they grow up and more expensive care through emergency procedures. Indeed, if infants or children go insured, they are not likely to be immunized, which puts them, their families, and the communities at higher risk of infectious disease.

25. Additionally, there will be substantial uncertainty and administrative burdens for HCA in providing coverage to pregnant women and their unborn children. As noted above, Washington is able to provide coverage to all pregnant women, regardless citizenship status, for prenatal care under the CHIP program because the unborn children are covered under CHIP. If the children are no longer to be citizens at birth, HCA will be left in limbo to determine whether coverage to those vulnerable pregnant women will be able to be covered, and if so, under what program. This is likely to pose a significant barrier to HCA providing streamlined coverage to women in need. In particular, HCA will need to do additional outreach to families, make systems changes and dedicate additional employee time to support understanding families' ongoing eligibility based on their child's citizenship at birth. This will put HCA and hospitals in a difficult and complex situation, requiring us to dedicate additional resources to understanding new or

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

unclear eligibility requirements and complicating providers' ability to be paid for services provided.

26. The removal of birthright citizenship is also like to cause coverage lapses, or at a minimum, result in direct shifts to the State with respect to the cost of funding healthcare coverage for children who would have otherwise been eligible for Medicaid and/or CHIP. These are not impacts that can be avoided. For example, with respect to emergency care, the State and its providers will be required to absorb costs that would normally be recoverable through federal reimbursements under Medicaid and CHIP. Hospitals must provide emergency medical care under federal law, including EMTALA and the relevant Emergency Medicaid provisions. They cannot turn patients away as a general rule. Such emergency services, if provided to a child otherwise eligible for Medicaid but for their immigration status, will still be covered in part by the federal government at the 50 percent match rate for Medicaid. However, if a child is a citizen and covered under CHIP, such services would be covered and reimbursed at the 65 percent match rate. If that same child is deemed a non-citizen at birth (and thus is ineligible for CHIP), the State will be left to pay for that care. Indeed, Washington's state-funded Children's Health Program (CHP) would provide coverage, as is required under state law. As a result, for each child that would be eligible for CHIP but for their new non-citizen status, the State will lose the 65 percent federal reimbursement for any emergency care provided—solely because the child, now as a non-citizen, would not be eligible for CHIP.

27. This poses an immediate risk to HCA's federal funding stream used to provide healthcare coverage to vulnerable Washington newborns and children. In state fiscal year 2022, there were 4,367 children born to unauthorized and non-qualifying mothers whose labor and delivery was covered by AEM (Emergency Medicaid). Those children, by being born in the United States and deemed citizens, were eligible for Medicaid or CHIP programs. If this number of children became ineligible due to a loss of citizenship and moved to the State-funded CHP coverage, that would result in a loss of $6.9 million in federal reimbursements to Washington

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

and a corresponding increase to State expenditures of the same amount, based on the current expenditures for the complete physical and behavioral health package of benefits. Additionally, the state would no longer be able to use the CHIP to pay for pre-natal services/expenses for the non-citizen mother. Those services would presumably shift to state-only funded coverage. Maintaining pre-natal care and services is important for health outcomes for both the mother and child/fetus. Those costs associated with this pre-natal care shifting to a state-only program is not included here.

28. In order to respond and update its practices in light of the federal government's new policy, HCA will also need to develop updated comprehensive training for staff, partners, and healthcare providers. For example, HCA will likely need to update its training and guidance around which children are citizens and therefore eligible for Medicaid and CHIP programs, and which must be funneled into state-only programs. This is a significant burden. This will likely require the work of several members of the eligibility policy team (at least 7-8 FTEs) because it would require changes touching several areas of internal expertise. Based on my team's estimation, this would likely take around two to three years to complete given the need to modify internal policies, public guidance, and formal rules; update training; and coordinate with state agencies like DSHS. We estimate that it may require training for up to 2,000 staff and will require coordination with staff in administrative hearings, communications, and for our external community partners. It may also require additional legislative solutions at the state level. Ultimately, this is counterintuitive, puts the health of children at risk, creates unfunded care mandates for already overburdened hospital systems and unwinds all the progress that has been achieved to ensure that all Washingtonians have access to affordable care.

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

12

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  I declare under penalty of perjury under the laws of the State of Washington and the
2  United States of America that the foregoing is true and correct.
3  DATED and SIGNED this 21st day of January 2025, at Olympia, Washington.

*[signature]*

CHARISSA FOTINOS, MD, MSC
Medicaid and Behavioral Health Medical Director
Washington State Health Care Authority

DECLARATION OF
DR. CHARISSA FOTINOS
CASE NO. 2:25-cv-00127

13

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744