1
2
4
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

STATE OF WASHINGTON; STATE OF
ARIZONA; STATE OF ILLINOIS; and
STATE OF OREGON,

                Plaintiffs,

   v.

DONALD TRUMP, in his official capacity
as President of the United States; U.S.
DEPARTMENT OF HOMELAND
SECURITY; BENJAMINE HUFFMAN, in
his official capacity as Acting Secretary of
Homeland Security; U.S. SOCIAL
SECURITY ADMINISTRATION;
MICHELLE KING, in her official capacity
as Acting Commissioner of the Social
Security Administration; U.S.
DEPARTMENT OF STATE; MARCO
RUBIO, in his official capacity as Secretary
of State; U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
DOROTHY FINK, in her official capacity
as Acting Secretary of Health and Human
Services; U.S. DEPARTMENT OF
JUSTICE; JAMES MCHENRY, in his
official capacity as Acting Attorney
General; U.S. DEPARTMENT OF
AGRICULTURE, GARY WASHINGTON,
in his official capacity as Acting Secretary
of Agriculture; and the UNITED STATES
OF AMERICA,

                Defendants.

NO. 2:25-cv-00127

DECLARATION OF
JENNY HEDDIN

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

I, Jenny Heddin, declare as follows:

1.    I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.    I am the Deputy Secretary—Chief of Staff for the Washington State Department of Children, Youth, and Families (DCYF). I served as the Finance Director for Children's Administration from 2013 until the creation of DCYF in 2018. I also served as the Chief Financial Officer for DCYF from its creation until serving as DCYF's Director of Strategic Initiatives and Collaboration. I became DCYF's Chief of Staff on October 6, 2023. In these various roles, I oversaw administration of the Title IV-E grant, financial activities for child welfare including foster care and now programmatic functions including foster care. I hold a master's degree in Public Administration and have worked for Washington for 20 years.

3.    DCYF is a cabinet-level agency focused on the well-being of children. Its vision is to ensure that Washington state's children and youth grow up safe and healthy—thriving physically, emotionally, and academically, nurtured by family and community. DCYF is the lead agency for child welfare services that support children and families to build resilience and health, and to improve educational outcomes. It partners with state and local agencies, tribes, and other organizations in communities across the state of Washington. It focuses on supporting children and families at their most vulnerable points, giving them the tools they need to succeed. According to brain science, laying a strong foundation early in life critically impacts healthy development. And addressing trauma, especially at critical transition points in the lives of youth, helps ensure successful transition into adulthood. To truly give all children the great start in school and life they deserve, DCYF was created to be a comprehensive agency exclusively dedicated to the social, emotional, and physical well-being of children, youth and families—an agency that prioritizes early learning, prevention, and early intervention at critical points along the age continuum from birth through adolescence.

DECLARATION OF JENNY HEDDIN
CASE NO. 2:25-cv-00127

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

4.      DCYF administers Washington's child welfare system which is funded in part through an annual appropriation based on an open-ended formula grant entitlement operated by the U.S. Department of Health and Human Services (HHS) Federal Foster Care Program under Title IV, Subpart E of the Social Security Act (Title IV-E).

5.      Title IV-E reimburses DCYF for a portion of the maintenance, administrative, and legal costs associated with caring for children placed in foster care. The state provides foster care services to children who are in danger of imminent physical harm from abuse or neglect, have been abused or neglected, are abandoned, or who have no parent capable of providing adequate care so that the children are in circumstances that endanger their psychological or physical development. It provides Title IV-E reimbursable services to achieve permanency for the children through family reunification, adoption, guardianship, or another approved living arrangement. Title IV-E also partially reimburses expenses associated with permanent placement of children through guardianship or adoption.

6.      While the state provides care for all children in foster care within its jurisdiction, it is only reimbursed through Title IV-E for expenses associated with children who meet Title IV-E eligibility requirements, including being United States citizens or qualifying non-citizens. DCYF receives federal reimbursements for many of the expenses associated with the care of dependent children eligible for Title IV-E. Services provided to individuals who are undocumented or who do not have a qualifying immigration status, are not eligible for federal Title IV-E reimbursement. Those individuals are also not entitled to other federally funded benefits such as Medicaid. DCYF is also entitled to reimbursements for many types of administrative and legal costs incurred in serving Title IV-E children.

7.      Title IV-E's "Adoption Assistance Program" is designed to facilitate the timely permanence for children whose special needs or circumstances would otherwise make them difficult to place. Under federal law, DCYF receives Title IV-E funding for the administrative functions of the Adoption Assistance Program, including portion of a monthly stipend paid to

the adoptive parents to assist with the cost of caring for the child. In addition, Title IV-E also provides for reimbursement for a onetime payment towards the cost of the adoption of a Title IV-E eligible child. The maximum amount a family can receive in Washington is $1500. Title IV-E reimburses the state for a portion of any ongoing legal and administrative expenses including the determination and redetermination of eligibility; fair hearings and appeals; rate setting; and other costs directly related only to the administration of the adoption assistance program. It also includes the administration of any grievance procedures; negotiation and review of adoption agreements; post-placement management of subsidy payments; recruitment of adoptive homes; placement of the child in the adoptive home; case reviews conducted during a specific preadoptive placement for children who are legally free for adoption; case management and supervision prior to a final decree of adoption; a proportionate share of related agency overhead; referral to services; development of the case plan; home studies, and a proportionate share of the development and use of adoption exchanges.

8.    Title IV-E's "Guardianship Assistance Program," like the Adoption Assistance Program, assists with the expense of achieving permanency for the dependent child. When a child is placed with a qualifying relative, the agency can receive partial reimbursement for related expenses and the monthly stipend provided to the relative guardian to assist with the cost of caring for the child, as well as for the same kind of legal and administrative services as provided for under the Adoption Assistance Program.

9.    Title IV-E's "Foster Care Program," provides partial reimbursement for the regular costs of supervising and providing foster care services to children, including eligible youth up to their twenty-first birthday.  This includes payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement. In the case of institutional care, it also includes the administration of

providing all the services detailed above. The state can also claim reimbursement for part of the cost establishing eligibility, training of staff and foster parents, and ongoing case management so long as the child remains eligible and requires services.

10.    Under the "Foster Care Program," the state can also claim reimbursement for part of the cost of providing legal representation to the child and the parents throughout the dependency process, including any permanency proceedings. In Washington, the Office of Civil Legal Aid is the agency that administers the Children's Representation Program. This program's mission is to underwrite and oversee the delivery of effective standards-based, trauma-informed, and culturally-competent attorney representation for children subject to dependency and termination of parental rights proceedings in Washington State. The Office of Public Defense is the agency that administers the parents' representation program by contracting with attorneys in all thirty-nine counties in Washington to represent indigent parents, custodians, and legal guardians involved in child dependency and termination of parental rights proceedings. The available reimbursement under Title IV-E is used, in part, to fund these programs.

11.    The amount of federal funds that Washington is entitled to under Title IV-E depends on the number of Title IV-E eligible children and the type of services they receive. Among the criteria for eligibility is the requirement that the child be a United States citizen or eligible non-citizen. The amount Washington receives is partly based on Washington's "penetration rate," which is then used to determine the amount Washington will be reimbursed for providing services. The penetration rate describes the proportion of Title IV-E eligible children in foster care in relation to the total number of children in foster care, pursuant to the definition of foster care in 45 CFR 1355.20. Certain reimbursable program administration costs are determined using a formula that is calculated on the number of hours spent in reimbursable activities multiplied by the penetration rate percentage. The fewer children that are eligible for Title IV-E, the lower the penetration rate.  The lower the penetration rate, the lower the potential reimbursement to the state and the greater the cost to the state.

12.    Title IV-E also partially reimburses Washington for the cost of direct care for Title IV-E eligible children placed with fully licensed foster caregivers who receive a payment for the children placed in their care. Again, the exclusion of a child from the pool of reimbursable expenses reduces the amount that Washinton is reimbursed, leaving the state to bear the full cost of caring for the child.

13.    Title IV-E also partially reimburses the state for a percentage of the legal and administrative services afforded to children and families involved in dependency, adoption and guardianship proceedings. Legal services include legal representation of the child, the appointment and services of Guardians ad Litem, one time court costs and fees associated with adoption and guardianship. Covered administrative services include case studies, recruitment of foster parents, referral to services, case management, data collection, data storage, and a proportionate share of agency overhead. The reimbursement formulas for these services are also calculated based on the expenses associated with total number of Title IV-E eligible children and a reduction in the total number of eligible children shifts the costs for those children entirely to the State.

14.    Notably, in order for Washington to be eligible for the payments under the Foster Care Maintenance Program and the Adoption Assistance Program, Title IV-E requires that DCYF make reasonable efforts to finalize children's permanent plans and that children in foster care have case plans in which DCYF files a petition to terminate the parental rights of the children's parents when children have been in foster care for fifteen of the most recent twenty-two months, unless an exception applies. Many caregivers are only able to adopt children in foster care or serve as their legal guardians because of the financial support provided to defray the costs associated with the adoption proceeding and through the ongoing monthly assistance payment for these high needs children. Washington receives federal money through Title IV-E's Adoption Support Program and Guardianship Support Program to provide this assistance, which contributes to children timely achieving permanency. The exclusion of a child from the pool of

children who are eligible for reimbursement of permanency expenses and assistance payments puts Washington in a no-win situation: it must either suffer the reduced amount that Washington is reimbursed and thereby increase its financial responsibility for children's permanency assistance programs, or avoid the increase in state financial responsibility of permanency assistance by maintaining children in foster care and delaying their permanency, which will also carry financial consequences because the State is not fulfilling Title IV-E's mandate that it make reasonable efforts to finalize children's permanency plans and file petitions to terminate the parental rights of the children's parents when children have been in foster care for the requisite period of time. Moreover, not only is extending children's length of stay in foster care damaging to children, but it will still increase the costs to the state if there is a reduction in the pool of Title IV-E eligible children.

15.    Because the penetration rate depends on the number of children eligible for Title IV-E funding, each decrease in the number of children eligible for Title IV-E funding negatively affects the total amount of federal funding that Washington receives under Title IV-E for foster care maintenance, adoption support, and guardianship support, and associated legal, administrative, and training costs. In November 2024, Washington had a penetration rate of 58.6 percent for children in traditional foster care.

16.    The median length of stay for a child in out-of-home care that is longer than seven days is nearly two years—727 days. If a child is ineligible for Title IV-E because they are not a citizen, DCYF cannot receive federal reimbursements for any of the services provided to that child.

17.    In federal fiscal year 2024, DCYF received approximately $219 million in reimbursable Title IV-E expenses serving eligible children. This includes about $160 million in reimbursements for foster care expenditures, $55 million in adoption support reimbursements, and $4 million in guardianship support reimbursements, all including administrative costs. And many of those who enter DCYF's care are infants and newborns. In 2022, 2,087 children under

the age of 1 entered DCYF's services for out-of-home care. Of those, 1,039 were newborns. In 2023, 1,481 under the age of 1 entered DCYF's services for out-of-home care, and 701 were newborns.

18.    I understand that the President has issued an Executive Order directing that individuals born to two unauthorized non-citizen parents are not to be deemed United States citizens. The federal government's policy of ending birthright citizenship for children born in the United States based on their parent(s)' non-citizen/immigration status will have program wide negative impacts on DCYF's administration of childcare subsidies for families, and foster care, adoption assistance guardianship assistance and extended foster care programs and associated legal, administrative, and training functions.

19.    The state laws and regulations that govern DCYF's Child Welfare Programs were specifically crafted to comply with the requirements for Title IV-E in anticipation that the financial partnership between the State and Federal government would maximize resources available to ensure that children and families residing in the state have the opportunity to thrive in safe, healthy environments. The federal government's stripping of birthright citizenship from children will result in babies being born in Washington as non-citizens, rendering the cost of their care non-reimbursable under Title IV-E. Washington will continue to provide services to those children, but any resulting reduction in the reimbursement rate will reduce the resources available to serve the entire population of children in foster care, including children who are U.S. citizens. Washington will continue to have administrative, legal, and training costs associated with the children no longer eligible for Title IV-E. Without reimbursement, the resources available to provide for those services for the entire population of children in foster care will be reduced as well.

20.    DCYF is required by federal law to verify the citizenship status of all children receiving foster care support under Title IV-E, in order to determine the child's eligibility. DCYF's service to children may begin as soon as they are born, so those determinations must be

DECLARATION OF JENNY HEDDIN
CASE NO. 2:25-cv-00127

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

made with respect to newborns. Currently, the primary method of citizenship verification is through birth certificates issued by other state agencies. DCYF relies on those birth certificates to determine whether children are eligible under Title IV-E.

21.    If DCYF is no longer able to rely on birth certificates to make eligibility determinations, it will need to amend its processes related to Title IV-E eligibility determinations. It will also require DCYF to update or amend existing trainings regarding eligibility determinations to account for the change in birthright citizenship. These necessary process changes will demand staff time that would have been spent on other projects to better serve the children and families of Washington.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

DECLARATION OF JENNY HEDDIN
CASE NO. 2:25-cv-00127

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED and SIGNED this 20th day of January 2025, at Olympia, Washington.

_____
JENNY HEDDIN

DECLARATION OF JENNY HEDDIN
CASE NO. 2:25-CV-00127                9                ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744