1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF ILLINOIS; and STATE OF OREGON, | NO. 2:25-cv-00127 |
| Plaintiffs, | DECLARATION OF SARAH K. PETERSON |
| v. | |
| DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; BENJAMINE HUFFMAN, in his official capacity as Acting Secretary of Homeland Security; U.S. SOCIAL SECURITY ADMINISTRATION; MICHELLE KING, in her official capacity as Acting Commissioner of the Social Security Administration; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY FINK, in her official capacity as Acting Secretary of Health and Human Services; U.S. DEPARTMENT OF JUSTICE; JAMES MCHENRY, in his official capacity as Acting Attorney General; U.S. DEPARTMENT OF AGRICULTURE; GARY WASHINGTON, in his official capacity as Acting Secretary of Agriculture; and the UNITED STATES OF AMERICA, | |
| Defendants. | |

DECLARATION OF
SARAH K. PETERSON
CASE NO. 2:25-cv-00127

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

I, Sarah K. Peterson, declare as follows:

1.     I am over the age of 18, competent to testify as to the matters herein and make this declaration based on my personal knowledge.

2.     I serve as the Washington State Refugee Coordinator and the Director of Washington's Office of Refugee and Immigrant Assistance (ORIA) within the Community Services Division of the Economic Services Administration (ESA) at the Washington Department of Social and Health Services (DSHS). Prior to joining ORIA in 2014, I worked for 14 years in nonprofit organizations that served immigrant and refugee communities in Philadelphia, Pennsylvania. In 2003, I earned my Master's Degree in Social Work from the University of Pennsylvania. I worked for HIAS Pennsylvania (Hebrew Immigrant Aid Society) for eight years helping to support their work in Philadelphia providing immigration legal services and refugee resettlement. It is at this organization that I gained direct experience helping people navigate federal immigration processes as well as access to public benefits programs.

3.     I direct Washington's Office of Refugee and Immigrant Assistance (ORIA), which administers over $100 million in state and federal funds to provide comprehensive services for refugees and immigrants living in Washington State. Washington State has a long legacy of welcoming people who are refugees and immigrants. ORIA offers programs and services that help people who are refugees and immigrants reach their full potential and contribute to thriving and diverse communities in Washington State.

4.     ORIA is housed within the Community Services Division (CSD), a Division within the Economic Service Administration (ESA), which is one of six administrations of the Washington Department of Social and Health Services (DSHS). ESA's core services focus on poverty reduction and safety net programs, child support services, and disability determinations. Nearly one out of every four Washington residents turned to DSHS for assistance with cash, food, child support, childcare, disability determinations, support for transitioning to employment, and other services. ESA's Community Services Division (CSD) operates the

DECLARATION OF
SARAH K. PETERSON
CASE NO. 2:25-cv-00127

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

federal and state public assistance programs that help low-income people meet their foundational needs and achieve economic security. Major programs include Temporary Assistance for Needy Families (TANF) and WorkFirst (Washington's welfare to work program), Basic Food (food assistance) and Basic Food Employment and Training, Refugee Cash Assistance, and others.

5.      ESA's Community Services Division (CSD) operates 52 different Community Services Offices (CSOs) and the Community Services Call Center that process client applications and determine eligibility for Washington's many public assistance programs, including cash and food assistance programs. ESA provides a variety of public assistance programs that draw from both federal and state resources and have many eligibility requirements, which include income levels, residency in Washington state, and verification of citizenship/immigration status. Eligibility for federally-funded cash and food assistance programs administered by ESA are limited to lawfully present immigrants who meet federally-defined eligibility standards that do not include unauthorized immigrants.[1] Washington state invests general state funds to mirror federal food and cash assistance to help individuals and families who are ineligible for federal programs, but eligibility still requires the immigrant be lawfully present.[2] Washington regulations for cash and food assistance define citizens to include individuals born in the United State or its territories.[3]

6.      ORIA works within CSD to ensure that refugee and immigrant families and individuals receiving public assistance have access to culturally sensitive and linguistically appropriate programs and services that aid them in rebuilding their lives. ORIA accomplishes this by partnering with more than 100 different community-based organizations across the state to provide direct services to more than 20,000 individuals annually. ORIA values our community

---

[1] *See* Wash. Admin. Code § 388-424-0010, 388-424-0020; 8 U.S.C. §§ 1611(a).
[2] Wash. Admin. Code §§ 388-424-0001, 388-424-0015, 388-424-0030. The only exceptions to the eligibility requirement of lawful presence for benefits administered by ESA are the Consolidated Emergency Assistance Program, a one-time emergency program, and the Disaster Cash Assistance Program, activated due to natural disasters or states of emergency.
[3] Wash. Admin. Code § 388-424-0001.

DECLARATION OF
SARAH K. PETERSON
CASE NO. 2:25-cv-00127

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

partners, and my team of professional staff and I engage with these community stakeholders on a monthly and quarterly basis to understand how the programs that we oversee are impacting the lives of refugees and immigrants. This regular community engagement enables ORIA to learn and receive feedback about how state and federal policies impact people in the community.

7.    I understand that the President has issued an Executive Order directing that children born in the United States to undocumented parents are not to be deemed United States citizens. The federal government's attempt to end birthright citizenship for children born in the United States based on their parents' immigration status will cause a generation of babies born in Washington State to become ineligible for the basic food and cash assistance programs that prevent all children from living in deep poverty and support their health and stability. Based on my experience with past changes to immigration and benefits laws, I believe that this order will also discourage immigrants from accessing services that they are eligible for and need to rebuild their lives in Washington communities. The Executive Order creates barriers for immigrants' abilities to get the assistance they need to meet their basic needs, stabilize their lives, and fulfill their full potential to contribute to diverse and thriving communities in Washington state.

8.    As a result of the Order, babies stripped of citizenship and left without a qualified immigration status will no longer be eligible for Washington's Basic Food program that provides assistance for households to purchase and access nutritious foods. The program combines federally funded Supplemental Nutrition Assistance Program (SNAP) and the state-funded Food Assistance Program for Legal Immigrants (FAP). Food benefits are provided on a "household" basis. To qualify for Basic Food, a household's earnings must fall below 200% ($53,300 for a family of three) of the federal poverty level. Beneficiary households may use the benefit to purchase food at one of the quarter million retailers authorized by the Food and Nutrition Service to participate in the program. By stripping children of citizenship and therefore denying them access to food assistance, the Order will affect children's access to sufficient and healthy food, causing a negative impact on children's health and risking increasing rates of child hunger.

DECLARATION OF
SARAH K. PETERSON
CASE NO. 2:25-cv-00127

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

9.      In addition, individuals stripped of citizenship by the Order and left without a qualified immigration status will no longer be eligible for programs that use state and federal funding to provide cash assistance. This includes federally funded Temporary Assistance for Needy Families (TANF) and state funded State Family Assistance, Aged, Blind or Disabled Program, and Pregnant Women's Assistance. TANF utilizes federal funds from the U.S. Department of Health and Human Services and state funding to provide cash assistance to parents/caregivers with children and pregnant individuals to bolster their ability to meet their families' foundational needs, including a safe home, healthy food, reliable transportation, and school supplies. Washington's programs make income assistance available to individuals who are ineligible for TANF, including pregnant individuals and families in emergency conditions. This funding is used to alleviate emergency conditions by providing cash to assist with food, shelter, clothing, medical care, or other necessary items. Loss of eligibly for these programs for children who will be stripped of citizenship will result in children living in deep poverty without access to shelter, warm clothing, safety, and security.

10.     Under the current eligibility structure, children who are citizens by birth in Washington meet immigration eligibility for these federal and state cash and food assistance programs even if their parents do not. The household may therefore receive food or cash assistance based on the child's eligibility. When the children in a household are eligible for benefits but the parents are not eligible for or able to access benefits independently, we identify these as "child only cases." Stripped of citizenship by the Executive Order, these children and by reference their families will no longer be eligible for basic public benefits that foster health, stability, and community integration.

11.     This Executive Order would create confusion for CSD's public benefits specialist who determine eligibility. CSD will need to review the processes and procedures to ensure that no changes to the Automated Client Eligibility Systems are required. Additional staff training

DECLARATION OF
SARAH K. PETERSON
CASE NO. 2:25-cv-00127

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1 and policy clarifications will be required to ensure the program and policy is implemented
2 accurately.

3      12.    If children subject to the Executive Order are no longer eligible for essential
4 public benefits through the government, they and their families will be forced to increasingly
5 rely on local non-profit and community-based organization to meet basic needs. Many of these
6 organizations are also facing reduction in funding and lack of resources for those in need. This
7 will strain local organizations and have a widespread negative impact on communities whose
8 residents will face barriers to health, stability, and opportunities to integrate and positively
9 contribute to their community. Lack of access to these safety net programs for these children
10 will create a domino effect leading to fewer and fewer resources available to the growing number
11 of people in need.

12      13.    From my experience working with community organizations during past changes
13 in federal immigration policy and from social science research of which I am aware, I also expect
14 there to be a "chilling effect" on enrollment in essential benefits even among families that have
15 members eligible for those benefits. Evidence from prior policy changes that affect public
16 benefits eligibility strongly suggests that many immigrants who are *not* directly subject to the
17 law will nevertheless withdraw from a broad array of public programs and services out of
18 confusion, fear, or an abundance of caution. The Executive Order is likely to have a negative
19 impact on the health and well-being of immigrant individuals and families, regardless of their
20 immigration status, because they will voluntarily disenroll from public benefits they are eligible
21 out of fear to interact with government programs.  Failing to receive essential public benefits
22 that support health, and stability will slow social integration, create new economic challenges
23 due to a lack of stability, and make it increasingly difficult for them to become fully self-
24 sufficient and integrated into our communities.

25      14.    If immigrant families fear accessing social services and benefits, this affects the
26 provision of emergency and other medical assistance, children's immunizations, and basic

nutrition programs, as well as the treatment of communicable diseases. Immigrants' fears of obtaining these necessary medical and other benefits are not only causing them considerable harm but are also jeopardizing the general public. For example, infectious diseases may spread as the numbers of immigrants who decline immunization services increase. I believe the Executive Order will undermine the State's priorities of increasing access to health care and helping people to become self-sufficient.

15.     One of ESA's core missions is to reduce the number of people living in poverty. Federal and state cash and food assistance programs provide people with the resources that they need to keep people from living in deep poverty. The birthright citizenship executive order creates walls that prevent ESA from being able to provide support to Washingtonians who will be stripped of citizenship. The order will prevent individuals and families from receiving the resources and supports that they need to thrive and become fully integrated into our local communities.

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED and SIGNED this 20th day of January 2025, at Seattle, WA

SARAH K. PETERSON

DECLARATION OF
SARAH K. PETERSON
CASE NO. 2:25-cv-00127

7