# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF ILLINOIS; and STATE OF OREGON,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; BENJAMINE HUFFMAN, in his official capacity as Acting Secretary of Homeland Security; U.S. SOCIAL SECURITY ADMINISTRATION; MICHELLE KING, in her official capacity as Acting Commissioner of the Social Security Administration; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY FINK, in her official capacity as Acting Secretary of Health and Human Services; U.S. DEPARTMENT OF JUSTICE; JAMES MCHENRY, in his official capacity as Acting Attorney General; U.S. DEPARTMENT OF AGRICULTURE; GARY WASHINGTON, in his official capacity as Acting Secretary of Agriculture; and the UNITED STATES OF AMERICA,<br><br>Defendants. | NO. 2:25-cv-00127<br><br>DECLARATION OF MATT ADAMS |

DECLARATION OF MATT ADAMS
CASE NO. 2:25-cv-00127

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

I, Matt Adams, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal and professional knowledge.

2. I am an attorney at law, admitted in the State of Washington and currently employed by Northwest Immigrant Rights Project (NWIRP) as its Legal Director. I have worked as an immigration attorney at NWIRP for the last twenty-six years. From June of 1998 to July of 2005, I worked as a Staff Attorney and later as the Directing Attorney of NWIRP's Granger office. In June of 2005, I became the Litigation Director. In July of 2006, I assumed my current position as Legal Director of NWIRP. In this role, I am responsible for supervising all litigation by NWIRP on behalf of clients before the federal district courts, the Court of Appeals and the Supreme Court.

3. Northwest Immigrant Rights Project (NWIRP) is a nonprofit organization that serves low-income immigrants in Washington State through direct representation, community education, and systemic advocacy. NWIRP provides direct legal representation and assistance in immigration matters to thousands of people with low incomes each year who come from over 150 countries and speak over 60 different languages. NWIRP is also the largest provider of legal services to persons in immigration proceedings in Washington. NWIRP is a trusted provider of immigration-related community education for immigrant communities and social service providers. NWIRP serves the community through four offices in Washington State in Granger, Seattle, Tacoma and Wenatchee.

4. I have extensive experience on cases focusing on immigrant rights. I have represented hundreds of immigrants before the Immigration Court, the Board of Immigration Appeals and the Federal Courts, including presenting arguments before the U.S. Supreme Court on behalf of two classes of detained individuals. I have successfully presented claims in twenty published decisions before the Ninth Circuit Court of Appeals and have been appointed as class counsel for over a dozen successful class action cases, including serving as lead-

1  counsel for two nationwide classes vindicating the rights of asylum seekers. I was awarded the
2  Jack Wasserman Memorial Award for Excellence in Litigation from the American
3  Immigration Lawyers Association (AILA) in 2008, and again in 2014 a part of legal team
4  in *Franco-Gonzalez v. Holder*, No. CV-10-02211 DMG DTBX, 2014 WL 8115423 (C.D. Cal.
5  2013), which for the first time established the right to appointed counsel at government
6  expense for a category of persons in removal proceedings. In 2016, I was awarded the
7  Washington State Bar Association Award of Merit, its highest honor.
8        5.    I have reviewed the Executive Order "Protecting the Meaning and Value of
9  American Citizenship" signed by President Trump on January 20, 2025. The order purports to
10 strip citizenship from persons born in the United States to 1) a mother with undocumented
11 status and father without U.S. citizenship or permanent residency; or to 2) a mother with
12 temporary status and father without U.S. citizenship or permanent residency. As a result of the
13 Order, these children will lack citizenship or any legal immigration status at birth. The
14 Immigration and Nationality Act (INA) does not provide any alternative legal status to persons
15 born in the United States. Moreover, under the INA the vast majority of persons subject to the
16 Order will have no pathway to even apply for lawful status in the United States. This is true not
17 only at the time of their birth, but also throughout the course of their lifetime. Instead, they will
18 grow up and live undocumented, forced to remain in the legal shadows of the country they
19 were born in.
20       6.    The INA provides two primary paths to lawful permanent residence—family
21 visas and employment visas, but neither path is available for the overwhelming majority of
22 undocumented newborns whose parents are not U.S. citizens or lawful permanent residents.
23 The Order targets those persons whose parents are not U.S. citizens or lawful permanent
24 residents. Under the Immigration and Nationality Act, only U.S. citizens and lawful permanent
25 residents are eligible to file family visa petitions for their children. Thus, none of the parents of
26 persons targeted by the Order are eligible to file family visa petition for their newborn children.

DECLARATION OF MATT ADAMS
CASE NO. 2:25-cv-00127

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Moreover, even if later in life they become eligible for a family visa petition, for example by marrying a U.S, citizen, they would be ineligible to apply for adjustment of status to lawful permanent resident status. This is because in order to apply for adjustment of status a person must demonstrate that they have been "inspected and admitted or paroled into the United States." See 8 U.S.C. § 1255(a). Because these persons were born in the United States, they have never been inspected and admitted or paroled into the United States, which is a statutorily required element to apply for adjustment of status.

7. Further, persons living without legal status cannot simply travel abroad and be admitted upon their return, as they are not authorized to reenter the United States if they have no status. See 8 U.S.C. § 1182(a)(7) (rendering persons ineligible to be admitted into the United States if they do not have lawful immigration status). The beneficiary of a visa petition filed by a U.S. citizen spouse may instead apply for a visa at a U.S. embassy or consulate in a foreign country, but this is a lengthy process that would require them to be admitted into the foreign country for a significant period of time. Moreover, because they have been living without status in the United States they will inevitably be subject to what is referred to as the 10 year bar, for having departed after living without status for more than one year in the United States. See 8 U.S.C. § 1182(a)(9)(B)(ii). As a result they would not be granted permission to return to the United States for at least ten years, unless they were granted a discretionary waiver. Id. Waivers are only available to those who can establish that "the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent." 8 U.S.C. § 1182(a)(9)(B)(v). The waiver does not take into account the extreme hardship to the person, but instead only weighs the hardship caused to the U.S. citizen or lawful permanent resident spouse or parent. Notably, these waivers generally take more than a year to be approved. In the meantime, the person is left to languish in the foreign country with no assurance that the discretionary waiver will ultimately be granted. Finally, it is

DECLARATION OF MATT ADAMS
CASE NO. 2:25-cv-00127

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

important to note that this difficult process is not even available for all the persons who are not married to U.S. citizens or lawful permanent residents.

8.  Persons targeted by this Order would also be ineligible to obtain lawful permanent resident status through employment visa petitions because even if they eventually graduate from college with a specialized skill required for employment visas, and are offered qualifying employment, they would similarly be ineligible to adjust status because they were not inspected and admitted or paroled into the United States, as required by 8 U.S.C. § 1255(a). Moreover, they face an additional bar: because they would not have status they would be independently barred by 8 U.S.C. § 1255(c), which renders a person ineligible who "accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status." Finally, most would not qualify to even apply for an employment visa through an embassy or consulate abroad because as noted above, persons who depart the United States and who have lived without status in the United States for more than a year are rendered inadmissible for ten years, 8 U.S.C. § 1182(a)(9)(B)(ii), and most will not have a qualifying relative to even apply for the discretionary waiver.

9.  Because the INA does not provide an alternative legal status to persons born in the United States who are not U.S. citizens, children stripped of citizenship by the Order and left undocumented will be at immediate risk of removal from the United States. This includes being at risk of being arrested and detained by Immigration and Customs Enforcement, even while they go through the removal (i.e., deportation) process. If placed in removal proceedings, most will not qualify for any immigration status. The most common form of relief from removal for persons who have no lawful status is to apply for cancellation of removal. *See* 8 U.S.C. § 1229b. However, they would not qualify for the first type of cancellation, § 1229b(a), as that only provides relief for persons who have already been granted lawful permanent residence. The vast majority would not qualify for the second type of cancellation,

DECLARATION OF MATT ADAMS
CASE NO. 2:25-cv-00127

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

§1229b(b)(1), as that is only available for persons who have been continuously residing in the U.S. for at least ten years and are able to demonstrate that their removal would cause "exceptional and extremely unusual hardship" to either a U.S. citizen or lawful permanent resident spouse, parent or child. *See* 8 U.S.C. § 1229b(b)(1)(D). Even if these persons were not placed in removal proceedings until after ten years had passed, the vast majority would not have a qualifying relative, i.e., U.S. citizen or lawful permanent resident spouse, parent or child. And even those with a qualifying relative must demonstrate that it causes the qualifying relative not just hardship, but "exceptional and extremely unusual hardship," an extremely difficult standard to satisfy. Indeed, to reinforce the difficult standard the statute placed a numerical limit so that no more than 4,000 people may be granted cancellation of removal in any given year. *See* 8 U.S.C. § 1229b)(e)(1).Our office represents many undocumented persons in removal proceedings who have a qualifying relative and are statutorily eligible to apply for cancellation of removal under 8 U.S.C. § 1229b(b)(1), and who present compelling equities—including demonstrating family separation and the loss of a parent where a child has physical or mental disabilities. Yet immigration judges regularly deny such applications finding the hardship they present is similar to the hardship of hundreds of other undocumented persons who are ordered removed each week.

10. While there are other limited forms of immigration relief, they only apply to a small section of the population. For example, asylum is only available to persons who demonstrate a well-founded fear of persecution on account of a protected ground (race, religion, nationality, membership in a particular social group or political opinion). *See* 8 U.S.C. §§ 1101(a)(42), 1158. In my experience undocumented persons who have not already lived in the country where they fear persecution are highly unlikely to qualify as they will not be able to demonstrate objective evidence that they will individually be targeted despite having no past persecution. Special Immigrant Juvenile Visas are only available for children who have been abandoned, abused or neglected by a parent. 8 U.S.C. § 1101(a)(27)(J)(i). Similarly, U visas

DECLARATION OF MATT ADAMS
CASE NO. 2:25-cv-00127

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

are only available for persons who have been the victim of enumerated crimes that caused substantial harm, and subsequently cooperated with the investigation or prosecution of the crime. *See* 8 U.S.C. § 1101(a)(15)(U). The vast majority of persons subject to the Order will remain without any path to lawful immigration status. Instead, they will be forced to remain undocumented, living in fear of any encounter with public officials. In my experience working directly with clients living without legal immigration status, the fear of detention and deportation is profoundly detrimental to their wellbeing and the ability to fully integrate into their communities. Our clients are often afraid to call the police or the fire department, as they have heard of others who ended up being reported to immigration after calling such authorities. Some clients are even afraid of taking their children to the hospital, or interacting with school officials.

11. In most states undocumented persons have no right to apply for a driver's license. Even in Washington State, they will not be eligible for REAL ID-compliant identification, which starting in May 2025 will be required for domestic air travel. Their ability to travel even within the United States will be severely limited. Many clients live in fear of interactions with immigration officials at airports or bus stations.

12. Undocumented persons are not eligible to obtain an employment authorization document (EAD) or a Social Security number, both necessary to work lawfully for those who cannot prove citizenship or lawful permanent residency. Undocumented individuals are not eligible for work authorization under any of the avenues available under the INA. *See* 8 C.F.R. § 274a.12. Because of this they face a much higher likelihood of being exploited by employers who know they face difficulty in finding employment. Over the years I have worked with countless clients where employers have withheld their last paycheck or denied them overtime because the employers are confident that undocumented persons, fearing immigration enforcement, will not report the employer's unlawful conduct.

DECLARATION OF MATT ADAMS
CASE NO. 2:25-cv-00127

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

13. The order will exponentially increase the undocumented population in Washington State. As the largest provider of immigration legal services in Washington, NWIRP's services are already in high demand. Even with a staff of over 180, we are unable to meet the needs of the majority of immigrant community members who contact us seeking representation. The majority of persons placed in removal proceedings are forced to represent themselves, and must stand alone against an ICE attorney before the immigration judge. Similarly, for persons not in removal proceedings we are not able to represent everyone who seeks our assistance. Instead we use waitlists for most types of affirmative relief. The Order would add thousands of additional undocumented children in Washington who will at some point likely need legal representation. This will stretch the already full capacity of NWIRP and other immigration legal providers in Washington

14. We have already received phone calls from worried parents who ask whether their children will now lose their citizenship and whether they should pull their children out of the school, or whether they should withdraw from WIC or cutoff food stamps for their children. Many parents have sacrificed so much of their lives in order to find stability and safety for their children. Now they are distraught knowing that their children potentially face a lifetime of uncertainly, hiding in the shadows, limited to an underground economy which has caused the parents so much pain in their lifetime. Many have explained that their children have nowhere to go in their home country, talking about how difficult it would be for their children, many who do not even speak, read and write in the language of their parents' home country.

15. It is very difficult to respond to these inquiries other than ensuring them that the U.S. Constitution and the Supreme Court of this Country have made clear, for more than a century, that their children who are born in the United States, are entitled to citizenship, regardless of the fact that the parents have no lawful status.

DECLARATION OF MATT ADAMS
CASE NO. 2:25-cv-00127

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED and SIGNED this 21st day of January 2025, at Seattle, Washington.

*[signature]*

Matt Adams

DECLARATION OF MATT ADAMS
CASE NO. 2:25-cv-00127

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744