UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF ILLINOIS; and STATE OF OREGON,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; BENJAMINE HUFFMAN, in his official capacity as Acting Secretary of Homeland Security; U.S. SOCIAL SECURITY ADMINISTRATION; MICHELLE KING, in her official capacity as Acting Commissioner of the Social Security Administration; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY FINK, in her official capacity as Acting Secretary of Health and Human Services; U.S. DEPARTMENT OF JUSTICE; JAMES MCHENRY, in his official capacity as Acting Attorney General; U.S. DEPARTMENT OF AGRICULTURE; GARY WASHINGTON, in his official capacity as Acting Secretary of Agriculture; and the UNITED STATES OF AMERICA,<br><br>　　　　　Defendants. | NO. 2:25-cv-00127<br><br>DECLARATION OF NADINE O'LEARY |

DECLARATION OF
NADINE O'LEARY
CASE NO. 2:25-cv-00127

## DECLARATION OF NADINE O'LEARY

I, Nadine O'Leary, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am the Deputy Registrar of the State of Illinois, Department of Health (IL DPH or DPH), Department of Vital Records (DVR), a position I have held since 2019.

2. In this position, I direct, supervise, and issue instructions necessary to the efficient administration of a statewide system of vital records, the Office of Vital Record, and act as custodian of its record in accordance with 410 ILCS 535/5, as delegated by the State Registrar.

3. Prior to working with DVR, I worked at the Abraham Lincoln Presidential Library and Museum from 2012 to 2019; my last position at the Library and Museum was Acting Director. From 1999 to 2012, I worked for the Illinois Secretary of State's Organ and Tissue Donor Program as a Program Analyst and eventually as Program Director.

4. I earned a Bachelor of Arts from Knox College in Galesburg, Illinois.

5. I submit this Declaration in support of Plaintiff States' Motion for Temporary Restraining Order pertaining to the Executive Order entitled "Protecting the Meaning and Value of American Citizenship" (the "Citizenship Stripping Order"). I have compiled the information of the matters set forth below through personal knowledge, my review of information and records gathered by staff, and through IL DPH personnel who have assisted me in gathering this information. I also reviewed the Illinois data in "Birth to Unauthorized Immigrants in the State of Washington, Arizona, Illinois, and Oregon" Report prepared by the National Demographics Corporation. Compl. Ex. B, app. E. I have also familiarized myself with the Citizenship Stripping Order in order to understand its immediate and long-term impact on IL DPH and the State of Illinois.

1

<u>Illinois Department of Public Health</u>

6. IL DPH's mission is to protect public health, promote healthy communities, and continue to improve the quality of health care in Illinois. To support that goal, IL DPH performs many functions, including regulating healthcare facilities and overseeing the Department of Vital Records (DVR), which registers vital events such as births.

<u>Registration and Birth Certificates of Newborns</u>

7. Illinois healthcare facilities coordinate with DVR to collect information to register a child's birth.

8. When a child is born in a healthcare facility, the person in charge of the facility or their designated representative is statutorily obligated to register the birth pursuant to Illinois Statute, which mirrors the U.S. standard form birth certificate. 410 ILCS 535/12. That individual provides the newborn's parents with a Certificate of Live Birth Worksheet ("Worksheet") that asks for several pieces of information, including the parents' place of birth and Social Security Numbers (SSNs). The Worksheet does not inquire about the parents' immigration status.

9. If the parents do not have an SSN, or do not wish to share it, they can leave that field blank. Their omission of that information does not affect the issuance of the newborn's birth certificate. If parents do provide their SSNs, that information is stored only for child support enforcement purposes and is not used to verify their immigration status.

10. After the newborn's parents complete and sign the Worksheet, hospital staff enter the information from the Worksheet into an electronic birth system (IVRS) maintained by DVR. IVRS then routes the record to the appropriate Local Registrar to complete registration with the State.

11. A newborn's completed birth certificate does not indicate whether the parents have an SSN. The only information regarding the parents on a newborn's birth certificate is the mother's legal name, the father's full name (if provided), their places and dates of birth, residence, and mailing addresses. Currently, it is not possible to determine a foreign-born parent's immigration status from their child's birth certificate.

12. Healthcare facilities do not routinely ask patients, including new parents, for their immigration status. Generally, hospitals learn that information only when assessing a patient's eligibility for public benefits, which may depend on immigration status. If hospitals obtain immigration status information for patients, it is recorded in their health records and becomes protected health information that is shielded from disclosure under the Health Insurance Portability and Accountability Act ("HIPAA"). Currently, healthcare facilities do not verify the accuracy of the information provided by parents in this process.

13. If the newborn registration process had to be amended to provide for verification of the parents' citizenship and/or immigration status because of the Citizenship Stripping Order, this would impose considerable administrative burdens on State-run healthcare facilities. If healthcare facilities were required to confirm the accuracy of the parents' places of birth, SSNs, or immigration status, the facilities would incur significant new administrative costs related to implementing a system to substantiate the information provided and hire and train staff to do the same. Assuming this burden would further lead to delays in registration and issuance of the newborn's birth certificate, leaving a child born in Illinois in a limbo status until that system is created and implemented.

Application for Social Security Number of Newborns

14. While registering a newborn for a birth certificate at a healthcare facility, parents may also complete an application for an SSN for the newborn through a Social Security Administration ("SSA") program called Enumeration at Birth ("EAB").

15. The EAB process is voluntary for families, but according to SSA, about 99% of SSNs for infants are assigned through this program.

16. Under the EAB process, a question added to the Worksheet allows parents to voluntarily request a SSN for their newborn child. Hospital or birth center personnel enter the request for an SSN along with birth certification information in IVRS. DVR submits to the SSA the necessary information for it to assign an SSN to the newborn.

17. The EAB application asks for the parents' SSNs. Parents born outside the United States can apply for and receive an SSN for their child without including their own SSNs on the application. Currently, because children born in the United States are U.S. citizens, they are eligible for SSNs regardless of their parents' immigration status.

18. DVR only sends EAB records to SSA for enumeration of infants born within the past 12 months.

19. Illinois receives federal funding from the SSA EAB process on a quarterly basis for each SSN that is issued through the EAB process. The State receives $4.19 per SSN issued through the EAB process. DVR requested over $500,000 in FY 2024 and just under $500,000 in FY2025 in IVRS for federal funding from the SSA EAB process. DVR uses those funds to support the payment of its administrative and operational costs.

20. For 2022, there were approximately 9,100 children born in Illinois to undocumented mothers. If birthright citizenship were revoked pursuant to the Citizenship Stripping Order, those

children would no longer be granted citizenship and would therefore be ineligible for an SSN. This estimate is based on the expert analysis provided by the National Demographics Corporation. Compl. Ex. B, app. E.

21. For 2022, there were approximately 5,200 children born in Illinois to two undocumented parents. If birthright citizenship were revoked pursuant to the Citizenship Stripping Order, those children would no longer be granted citizenship and would therefore be ineligible for an SSN. This estimate is based on the expert analysis provided by the National Demographics Corporation. *Id.*

22. If approximately 5,200 to 9,100 fewer SSNs were issued through the EAB process due to the revocation of birthright citizenship, this would result in an annual loss of EAB funding to IL DPH of approximately $21,788 to $38,129.

23. In addition to the loss in funding, state-run healthcare facilities would incur new administrative costs from expending resources to verify parents' immigration status before applying for a newborn's SSN through the EAB process. SSA will presumably require proof of parents' lawful status to issue an SSN under the Citizenship Stripping Order. State-run healthcare facilities would then be forced to consult with, and assist, families with obtaining the paperwork necessary to prove their immigration status. It is likely that the electronic system and guidelines for submitting SSN applications through that system—which are currently detailed in a 59-page SSA manual— would have to be revised. This would likely require healthcare facilities to train, and potentially hire, staff to work with parents in obtaining, and then verifying, the requisite documents to establish lawful immigration status.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 21st day of January, 2025, in Springfield, IL

**Nadine J. O'Leary**

State Deputy Registrar
Division of Vital Records
Illinois Department of Public Health
925 E. Ridgely
Springfield, IL  62702