District Judge John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | CASE NO. 2:25-cv-00127-JCC<br><br>OPPOSITION TO PLAINTIFF STATES' MOTION FOR A TEMPORARY RESTRAINING ORDER |

Pursuant to Local Civil Rule 65(b)(5), Defendants hereby file their opposition to Plaintiffs' emergency Motion for a Temporary Restraining Order (Dkt. No. 10) ("TRO Mot."). The Court should deny the motion for the reasons set forth below.

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 1

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

## INTRODUCTION

This case in no way warrants the extraordinary measure of a temporary restraining order ("TRO"). On January 20, 2025, President Donald J. Trump issued an Executive Order addressing the federal government's interpretation of the Fourteenth Amendment's Citizenship Clause, which provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1. *See* Exec. Order entitled, "Protecting the Meaning and Value of American Citizenship" ("Citizenship EO"). As the Citizenship EO recognized, the Fourteenth Amendment "has never been interpreted to extend citizenship universally to everyone born within the United States." *Id*.

Instead, as a textual matter, the Fourteenth Amendment affords so-called "birthright citizenship" only to those persons born in the United States *and* subject to its jurisdiction—and thus excludes children of noncitizens here illegally as well as children of temporary visa-holders. *See* Citizenship EO §§ 1, 2. The EO applies only to children born on February 19, 2025, onwards, and expressly does not apply to children of lawful permanent residents. Further, the EO directs relevant agencies to issue guidance within 30 days regarding how they plan to take appropriate measures to issue documents recognizing citizenship only for individuals who qualify as citizens. *See* Citizenship EO §§ 2, 3.

That EO is an integral part of President Trump's recent actions, pursuant to his significant authority in the immigration field, to address this nation's broken immigration

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 2

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
202-514-3374

system and the ongoing crisis at the southern border. *See, e.g.*, Exec. Order entitled, "Securing Our Borders" (Jan. 20, 2025); Exec. Order entitled, "Declaring a National Emergency at the Southern Border of the United States" (Jan. 20, 2025); Exec. Order entitled, "Protecting the American People Against Invasion" (Jan. 20, 2025) ("Invasion EO"). As the President has recognized, individuals unlawfully in this country "present significant threats to national security and public safety," Invasion EO, Sec. 1, and the severity of these problems warrant a full panoply of immigration measures.

Despite the time remaining before the Citizenship EO is operational, Plaintiffs—four states—filed suit and demanded a TRO the day after the Citizenship EO issued, claiming a need for "immediate relief," TRO Mot. at 1, even though the EO will not apply to any individual born until February 19. That rush to the courthouse for extraordinary relief is fundamentally flawed. For starters, Plaintiffs request a "14-day" TRO, Pls.' Proposed TRO at 2, Dkt. No. 10-1, which by its terms would expire before any births covered by the EO—and thus any injury asserted by Plaintiffs—could occur. The Court can also deny Plaintiffs' emergency motion for a TRO because Plaintiffs' suit flunks multiple threshold hurdles. Among those bars: As states, Plaintiffs cannot assert abstract injuries. And under Supreme Court precedent, the Plaintiff states lack any injury, let alone an irreparable one that cannot be addressed on a more reasonable schedule. As for the merits, notwithstanding Plaintiffs' hyperbole, the EO is entirely consistent with the Fourteenth Amendment's text and history, as

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 3

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

well as Citizenship Clause precedents that Plaintiffs cite. This Court should not rush to judgment on a manufactured timeline.

## STANDARD OF REVIEW

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain such extraordinary relief, a plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citation omitted).

## ARGUMENT

**I.      The Plaintiff States Lack Standing.**

A.      This Court should resolve this TRO motion on the straightforward ground that a state may not bring a Citizenship Clause claim against the federal government. "[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement," "the plaintiff generally must assert his own legal rights and interests." *Warth* v. *Seldin*, 422 U.S. 490, 499 (1975). A plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* Thus, constitutional claims generally may be brought only by "one at whom the constitutional protection is aimed." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 4

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

The Supreme Court has recognized a narrow exception to that rule for *parens patriae* actions—that is, suits in which a state seeks "to protect her citizens" from alleged violations of their federal rights. *Georgia v. Pennsylvania Railroad Co.*, 324 U.S. 439, 447 (1945). Critically, however, it is well established that a "State does not have standing as *parens patriae* to bring an action against the Federal Government." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982). "[I]t is no part of [a state's] duty or power to enforce [its people's] rights in respect of their relations with the federal government." *Massachusetts v. Mellon*, 262 U.S. 447, 485-486 (1923).

Applying those principles, the Supreme Court has held that states lack standing to bring claims under Section 1 of the Fourteenth Amendment against the federal government. For example, in *South Carolina v. Katzenbach*, 383 U.S. 301 (1966), the Court held that South Carolina lacked standing to challenge a federal statute under the Due Process Clause. *See id.* at 323-324. The "States of the Union" have no rights of their own under the Due Process Clause; "[n]or does a State have standing as the parent of its citizens to invoke these constitutional provisions against the Federal Government." *Id.* at 324. Similarly, in *Haaland v. Brackeen*, 599 U.S. 255 (2023), the Court held that Texas lacked standing to challenge a federal statute under the Equal Protection Clause. Texas "ha[d] no equal protection rights of its own," and Texas could not "assert equal protection claims on behalf of its citizens because 'a State does not have standing as *parens patriae* to bring an action against the Federal Government.'" *Id.* at 294-295 (brackets and citation omitted).

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 5

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

Those precedents squarely control this case. Just as South Carolina and Texas could not sue the federal government under the Fourteenth Amendment's Due Process and Equal Protection Clauses, the Plaintiff states may not sue the federal government under the Citizenship Clause. The states "ha[ve] no [citizenship] rights of their own," and given established "limits on *parens patriae* standing," they also may not "assert [Citizenship Clause] claims on behalf of [their residents]." *Brackeen*, 599 U.S. at 295 & n.11. Citizenship Clause claims should be litigated, if at all, by the affected individuals themselves using the process designed by Congress for such claims. 8 U.S.C. § 1503.

B.  More broadly, Plaintiffs' claimed injuries fail to establish Article III standing to assert any of their claims. Plaintiffs first rely on purported harms that their residents will suffer as a result of the Citizenship EO. *Cf.* TRO Mot. at 2. But the Supreme Court has foreclosed states from suing the federal government based on harms to their citizens, because, as discussed above, that is an impermissible *parens patriae* action. *See also, e.g.*, *Murthy v. Missouri*, 603 U.S. 43, 76 (2024) ("States do not have standing as *parens patriae* to bring an action against the Federal Government." (internal quotation marks & citation omitted)). Nor can Plaintiffs rely on the doctrine of third-party standing to assert the rights of individual residents, because that is a "thinly veiled attempt to circumvent the limits on *parens patriae* standing." *Brackeen*, 599 U.S. at 295 n.11.[1]

---

[1] For this reason, the Ninth Circuit's decision in *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017), which allowed a state to sue on behalf of its university and then "assert the rights of the students, scholars, and faculty," *id.* at 1160, is no longer good law. *See also*

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 6

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC  20005
202-514-3374

1   Plaintiffs also cannot establish standing based on "pecuniary and property interests,"
2   TRO Mot. at 6 (capitalization omitted), which are (at most) incidental, downstream effects of
3   the Citizenship EO.  In particular, Plaintiffs invoke purported economic harms stemming from
4   the Medicaid, CHIP, and Title IV-E foster care programs, on the basis that federal law does
5   not provide benefits for noncitizens. *See* TRO Mot. at 16. According to Plaintiffs, the EO will
6   result in more children being noncitizens rather than citizens, and the states will then need to
7   expend greater resources to provide benefits to those noncitizen children because the states
8   will not receive federal reimbursement for such benefits. *See id.* at 16-17.

9   As an initial matter, nothing in the Citizenship EO requires Plaintiffs to provide such
10  benefits to noncitizens. Nor have Plaintiffs identified any other source of federal law that
11  compels them to offer such benefits.  Instead, they have *voluntarily* chosen to provide such
12  benefits—which means those costs are an independent choice made by the states' legislatures,
13  not a cost attributable to the Citizenship EO itself.  *See Clapper v. Amnesty Int'l USA*, 568
14  U.S. 398, 417-18 (2013) (holding that "respondents' self-inflicted injuries" were insufficient
15  for Article III standing, because they "are not fairly traceable" to the challenged government
16  action); *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) ("The injuries to the plaintiffs'

---

*Hawaii v. Trump*, 859 F.3d 741, 765 (9th Cir. 2017), *vacated*, 583 U.S. 941 (2017).  In any event, those decisions are also irrelevant because the states' claimed injuries here do not include any harms associated with state-operated universities.

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 7

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

fiscs were self-inflicted, resulting from decisions by their respective state legislatures. . . . No State can be heard to complain about damage inflicted by its own hand.").[2]

More fundamentally, the Supreme Court has rejected these types of incidental economic harms as a basis for standing in *United States v. Texas*, 599 U.S. 670 (2023). There, Texas and Louisiana challenged federal actions that, in their view, resulted in an increase in the number of noncitizens in their states, which imposed various costs on the states (*e.g.*, costs from continuing to "supply social services . . . to noncitizens"). *See id.* at 674. The Supreme Court deemed those costs insufficient for standing:

> [I]n our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending. And when a State asserts, for example, that a federal law has produced only those kinds of indirect effects, the State's claim for standing can become more attenuated. In short, none of the various theories of standing asserted by the States in this case overcomes the fundamental Article III problem with this lawsuit.

*Id.* at 680 n.3 (citations omitted). That holding forecloses Plaintiffs' standing here. Just as in *Texas*, where it was insufficient for the challenger states to identify monetary costs stemming

---

[2] The states contend that "Washington will suffer financial losses for services that it must provide," because one state-operated hospital is "required by federal law to provide emergency care," which is unreimbursed for noncitizen children. TRO Mot. at 17. But the relevant requirement to provide emergency care—stemming from the Emergency Medical Treatment and Labor Act, or EMTALA—exists solely because that state-operated hospital voluntarily chose to participate in Medicare. *See* 42 U.S.C. § 1395dd(e)(2) (confirming that EMTALA applies only to hospitals participating in Medicare); *Se. Arkansas Hospice, Inc. v. Burwell*, 815 F.3d 448, 450 (8th Cir. 2016) (acknowledging that Medicare participation is a voluntary choice by hospitals). Thus, this injury is likewise the result of a voluntary choice by Washington, not the challenged EO itself.

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 8

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

from the presence of noncitizens, the states cannot rely on social services expenditures to challenge the federal government's regulation of others.

The indirect, downstream nature of the states' claimed economic harms also distinguishes this case from *Department of Commerce v. New York*, 588 U.S. 752 (2019). There, certain states were allowed to challenge the decennial census because of direct economic effects that the census would have on those states. *See id.* at 767-68. Indeed, the very purpose of the census is to determine how congressional seats and federal funds are distributed among the states. Similarly, in *Biden v. Nebraska*, 143 S. Ct. 2355 (2023), the challenged federal policy would have directly deprived a state government corporation of ongoing fees that it would otherwise continue earning under its federal contract. *See id.* at 2366.

But here, the challenged EO lacks any direct bearing on Plaintiffs' healthcare or other social service expenditures, nor does it deprive the states of ongoing fees. The Citizenship EO simply regulates how the federal government will approach certain individuals' immigration status. A third party, including a state, has no legally cognizable interest in the recognition of citizenship by the federal government of a particular individual—let alone economic benefits or burdens that are wholly collateral to citizenship status. Whatever potential downstream effects might arise for state programs in response is irrelevant to standing.

Accepting Plaintiffs' theory of injury here—that states suffer Article III injury whenever a federal policy allegedly results in an increase in state expenditures or loss in state

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 9

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

revenues—would eliminate any limits on state challenges to federal policies. *See Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022) ("Are we really going to say that any federal regulation of individuals through a policy statement that imposes peripheral costs on a State creates a cognizable Article III injury for the State to vindicate in federal court? If so, what limits on state standing remain?"). Indeed, the states' claimed interest in future fees under their contract with the Social Security Administration ("SSA"), TRO Mot. at 18, highlights the breadth of their theory—asserting that a discrete contract with SSA grants them Article III license to challenge any federal action that conceivably lowers the birthrate within their states.[3]

Finally, Plaintiffs cannot rely on "operational disruptions and administrative burdens" that they claim will result from the Citizenship EO, TRO Mot. at 8, which does not require states to change their systems or impose any penalty for failing to do so. Thus, these claimed harms are not attributable to the federal policy itself. And again, the notion that states can assert standing based on putative harms from changing their systems to adapt to a new federal policies would create automatic standing to challenge every new federal policy. That is not the law, for states or other organizations. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394-95 (2024).

---

[3] Plaintiffs' claimed interest in future fees under their SSA contract is distinct from the situation in *Nebraska*, where the federal policy would have "completely discharged" existing loans and thereby deprived the state entity of ongoing fees associated with those accounts. 143 S. Ct. at 2366. Here, the states' interest is in purely hypothetical future fees.

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 10

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

## II.     Plaintiffs Are Not Likely to Succeed on the Merits.

As to the merits, the Citizenship Clause provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1. Under the plain terms of the Clause, birth in the United States does not by itself entitle a person to citizenship. The person must also be "subject to the jurisdiction" of the United States. *Id*. Contrary to Plaintiffs' overheated rhetoric, that phrase does not mean simply being subject to federal jurisdiction to tax or regulate someone.

Among the many reasons why Plaintiffs' position is incorrect, the term "subject to the jurisdiction thereof" in the Fourteenth Amendment harks to tandem language in the Civil Rights Act of 1866, ch. 31, 14 Stat. 27. The Supreme Court has interpreted the Act and the Amendment coterminously, explaining that the Act served as the "initial blueprint" for the Amendment, *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389 (1982), and that the Amendment in turn "provide[d] a constitutional basis for protecting the rights set out" in the Act, *McDonald v. City of Chicago*, 561 U.S. 742, 775 (2010). The Act provided, as relevant here, that "all persons born in the United States and *not subject to any foreign power, excluding Indians not taxed*, are hereby declared to be citizens of the United States." § 1, 14 Stat. at 27 (emphasis added). The phrase "subject to the jurisdiction thereof" in the Fourteenth Amendment is best read to exclude the same individuals who were excluded by the Act—*i.e.*, those who are "subject to any foreign power" and "Indians not taxed." Yet, under Plaintiffs'

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 11

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

view, the 1866 Civil Rights Act—which was governing law until 1940—was apparently unconstitutional, because plenty of individuals born in the United States and subject to federal regulatory jurisdiction are also "subject to any foreign power"—a disqualifying condition under the 1866 Civil Rights Act.

Ample historical evidence shows that the children of non-resident aliens are subject to foreign powers—and, thus, are not subject to the jurisdiction of the United States and are not constitutionally entitled to birthright citizenship. For example, before the adoption of the Fourteenth Amendment, Justice Story wrote: "Persons who are born in a country are generally deemed to be citizens and subjects of that country. A reasonable qualification of the rule would seem to be that it should not apply to the children of parents who were *in itinere* in the country, or who were abiding there for temporary purposes, as for health, or occasional business." Joseph Story, *Commentaries on the Conflict of Laws* § 48, at 48 (1834). And after the adoption of the Amendment, Justice Miller wrote: "If a stranger or traveller passing through, or temporarily residing in this country, who has not himself been naturalized, and who claims to owe no allegiance to our Government, has a child born here which goes out of the country with its father, such a child is not a citizen of the United States, because it was not subject to its jurisdiction." Samuel F. Miller, *Lectures on Constitutional Law* 279 (1891).

The Supreme Court's decision in *Elk v. Wilkins*, 112 U.S. 94 (1884), confirms that the children of non-resident aliens lack a constitutional birthright to citizenship. In *Elk*, the Court held that, because members of Indian tribes owe "immediate allegiance" to their tribes, they

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 12

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

are not "subject to the jurisdiction" of the United States and are not constitutionally entitled to citizenship. *Id.* at 102. Indian tribes occupy an intermediate position between foreign States and U.S. States. *See Cherokee Nation v. Georgia*, 30 U.S. 1, 17 (1831) (Marshall, C.J.) (describing Indian tribes as "domestic dependent nations"). The United States' connection with the children of illegal aliens and temporary visitors is weaker than its connection with members of Indian tribes. If the latter link is insufficient for birthright citizenship, the former certainly is.

Plaintiffs rely on the Supreme Court's decision in *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), but they overread that case. *Wong Kim Ark* involved a person who was born in the United States to alien parents who, at the time of the child's birth, "enjoy[ed] a permanent domicile and residence" in the United States. *Id.* at 652. The Court explained that the "question presented" concerned the citizenship of "a child born in the United States" to alien parents who "have a permanent domicile and residence in the United States." *Id.* at 653. Answering that question, the Court held that "a child born in the United States" to alien parents who "have a permanent domicile and residence in the United States" "becomes at the time of his birth a citizen of the United States." *Id.* at 705. Despite some broadly worded dicta, the Court's opinion thus leaves no serious doubt that its actual holding concerned only children of permanent residents. The EO is fully consistent with that holding. *See*, *e.g.*, Citizenship EO § 2(c) ("Nothing in this order shall be construed to affect the entitlement of other individuals,

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 13

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

*including children of lawful permanent residents*, to obtain documentation of their United States citizenship." (emphasis added)).

### III. The Equities Weigh Strongly Against Emergency Temporary Relief.

By definition, since Plaintiffs lack standing to challenge the Citizenship EO, they also have failed to establish that they will suffer irreparable injury during the 14-day period covered by their requested TRO, "until a hearing on Plaintiff States' forthcoming motion for a preliminary injunction can be held." Pls.' Proposed TRO at 3. This timing point bears emphasis: Any individual potentially subject to the Citizenship EO's interpretation has not been born yet and will not be born for approximately four weeks, and Plaintiffs have not carried their burden of showing that they will be required to lose any funds or incur any expense during the relatively brief period before their preliminary injunction motion can be decided on the basis of more detailed briefing and a more fulsome airing of the issues.

Moreover, even if their claimed pecuniary losses could establish a cognizable injury, *but see supra* Sec. I, Plaintiffs have not demonstrated that any such losses would be irreparable. *See, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F. 4th 1180, 1188 (9th Cir. 2022) ("[M]onetary injury is not normally considered irreparable." (alteration in original) (citation omitted)). Even granting, *arguendo*, Plaintiffs' contention that economic harm that is "not recoverable" may sometimes constitute irreparable harm, *see* TRO Mot. at 15, Plaintiffs here have failed to establish that their primary claimed harm—"losses to reimbursements received through [federal] programs," *id.*—is truly unrecoverable. For example, they do not explain how they

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 14

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
202-514-3374

would be unable to adjudicate their claims in separate proceedings when they seek reimbursement or whether there are any available administrative processes to recover federal monies to which Plaintiffs claim entitlement after the conclusion of this lawsuit. *Cf. Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1115-16 (9th Cir. 2003) (finding that a party asserting a claim for Medicare reimbursement would not be irreparably harmed by exhausting claims through an administrative review process).

These asserted harms are greatly outweighed by the harm to the government and public interest that would result from the extraordinary relief Plaintiffs request. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that the balancing of harms and public interest requirement for emergency injunctive relief merge when "the Government is the opposing party"). As the Supreme Court has recognized, Executive officials must have "broad discretion" to manage the immigration system. *Arizona v. United States*, 567 U.S. 387, 395-96 (2012). It is the United States, not these Plaintiff states, that has "broad, undoubted power over the subject of immigration and the status of aliens," *id*. at 394, and providing Plaintiffs with their requested relief would mark a severe intrusion into this core executive authority, *see INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (warning against "intrusion by a federal court into the workings of a coordinate branch of the Government"); *see also Doe #1 v. Trump*, 957 F.3d 1050, 1084 (9th Cir. 2020) (Bress, J., dissenting) (an injunction that limits presidential authority is "itself an irreparable injury") (citing *Maryland v. King*, 567 U.S. 1301 (2012)).

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 15

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

At minimum, Plaintiffs' apparent request for nationwide relief, *see* Pls.' Proposed TRO at 4 (describing requested TRO without geographic limitation), is improper. Based on the well-established principle that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted), the Ninth Circuit has repeatedly vacated or stayed nationwide injunctions. *See, e.g.*, *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019); *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018); *City & County of San Francisco. v. Trump*, 897 F.3d 1225, 1233-35 (9th Cir. 2018). Plaintiffs here have not established that nationwide relief here is "*necessary* to give [them] the relief to which they are entitled." *California*, 911 F.3d at 582 (citation omitted).

## IV. Relief Against the President is Improper.

Although Plaintiffs have named the President as a Defendant, *see* Compl. ¶ 18, Dkt. No. 1, "courts do not have jurisdiction to enjoin [the President] . . . and have never submitted the President to declaratory relief." *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) (citations omitted); *see Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) ("[I]n general 'this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'") (citation omitted); *id*. at 827 (Scalia, J., concurring in part) ("[W]e cannot issue a declaratory judgment against the President."); *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866). Accordingly, the Court lacks jurisdiction to enter Plaintiffs' requested relief against the President and should dismiss him as a defendant in this case.

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 16

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC 20005
202-514-3374

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a temporary restraining order.

DATED this 22nd day of January, 2025.

                                                        Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Branch Director

*s/ Brad P. Rosenberg*
BRAD P. ROSENBERG, D.C. Bar No. 467513
Special Counsel

R. CHARLIE MERRITT*
YURI FUCHS*
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
Washington, DC 20005
Phone: 202-514-3374
Fax: 202-616-8460
Email: brad.rosenberg@usdoj.gov

*Attorneys for Defendants*
*\* Conditional admission pending*

*I certify that this memorandum contains 4,174 words, in compliance with the Local Civil Rules.*

Opposition to Motion for
a Temporary Restraining Order
2:25-cv-00127-JCC - 17

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
1100 L STREET, NW
WASHINGTON, DC  20005
202-514-3374