```
                    UNITED STATES DISTRICT COURT

                   WESTERN DISTRICT OF WASHINGTON
_____

STATE OF WASHINGTON et al.,  )
                             )
         Plaintiffs,         ) No. 2:25-cv-00127-JCC
                             )
    vs.                      ) Seattle, WA
                             )
DONALD TRUMP et al.,         )
                             ) TRO Hearing
         Defendants.         ) January 23, 2025
                             ) 10:00 a.m.

_____

                  VERBATIM REPORT OF PROCEEDINGS
               BEFORE THE HONORABLE JOHN C. COUGHENOUR
                    UNITED STATES DISTRICT JUDGE
_____


APPEARANCES:

For the Plaintiffs:   Lane Polozola
                      Alyson Dimmitt Gnam
                      Daniel Jun Jeon
                      Colleen M. Melody
                      Attorney General's Office
                      800 5th Avenue, Suite 2000
                      Seattle, WA 98104-3188
                      lane.polozola@atg.wa.gov
                      alyson.dimmittgnam@atg.wa.gov
                      daniel.jeon@atg.wa.gov
                      colleen.melody@atg.wa.gov
```

```
 1   For the Defendants:   Brett Shumate
                           U.S. Department of Justice
 2                         950 Pennsylvania Avenue NW
                           Washington, DC 20530
 3                         brett.a.shumate@usdoj.gov

 4                         Nancy K. Canter
                           U.S. Department of Justice
 5                         P.O. Box 878
                           Ben Franklin Station
 6                         Washington, DC 20044
                           nancy.k.canter@usdoj.gov
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20   Andrea Ramirez, CRR, RPR
     Official Court Reporter
21   United States District Court
     Western District of Washington
22   700 Stewart Street, Suite 17205
     Seattle, WA 98101
23   andrea_ramirez@wawd.uscourts.gov
     (206)370-8507
24
     Reported by stenotype, transcribed by computer
25
```

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 3 of 20    3

State of WA et al. vs. Trump et al., 1/23/25

```
 1                    P R O C E E D I N G S
 2                          *   *   *
 3            THE CLERK:  Your Honor, the matter before the Court
 4   is scheduled for a hearing on plaintiffs' motion for a
 5   temporary restraining order.  The cause number is C25-127
 6   assigned to Your Honor, the State of Washington et al. vs.
 7   Donald Trump et al.
 8        Counsel, please make your appearances, beginning with
 9   plaintiffs.
10            ATTY. POLOZOLA:  Good morning, Your Honor.  Lane
11   Polozola for the State of Washington.  I'll also be speaking on
12   behalf of the co-plaintiff states as well.
13            ATTY. SHUMATE:  Good morning, Your Honor.  Brett
14   Shumate on behalf of the defendants.
15            THE COURT:  All right.
16            ATTY. POLOZOLA:  Good morning and thank you, Your
17   Honor.
18        The plaintiff states are here this morning seeking an
19   emergency nationwide TRO because the President's executive
20   order attempts to erase the Fourteenth Amendment's promise of
21   citizenship to people born in the United States and is causing
22   immediate, widespread, and severe harm to the states and their
23   residents.  The states' agencies face lost funding, increased
24   costs, and an administrative and operational nightmare under
25   the EO and the uncertainty it creates, and the citizens are
```

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 4 of 20    4

State of WA et al. vs. Trump et al., 1/23/25

1   being -- and citizens are being stripped of their most
2   foundational constitutional right, which is the right to have
3   rights.
4       The government's main argument in their filing last night
5   is that, essentially, a TRO is not needed because nothing will
6   happen until February 19, that there's no urgency under the
7   circumstances.  But that's incorrect, Your Honor, and the
8   defendants misread their own executive order.
9       Only Section 2, the part about government documents, waits
10  until February 19.  Everything else in the order is live as we
11  speak this morning.  That includes Section 1, under which there
12  are huge classes of people to whom, quote, "citizenship does
13  not automatically extend," according to the executive order.
14  It also includes Section 3, which commands federal agencies to
15  obey the entire order in full, starting the moment the order
16  was issued on January 20.  And that's why the harm, including
17  the burdens on the states, is occurring now.
18      With respect to the harm, Your Honor, and the equities at
19  stake, irreparable harm is why the states have standing to be
20  here and obtain a TRO to prevent them from continuing.  The
21  states, as we've laid out in our papers, Your Honor, administer
22  numerous programs to serve their residents -- think Medicaid,
23  children's health insurance programs, foster care and adoption
24  services programs.  These programs are structured around
25  substantial contributions from the federal government, but

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 5 of 20

State of WA et al. vs. Trump et al., 1/23/25

1  federally backed services like these are limited to individuals
2  who are citizens or have a qualifying immigration status.
3       Under the order, however, babies being born today don't
4  count as American citizens anymore.  And as noncitizens with no
5  legal status, children being born under the EO aren't eligible
6  for federally backed services that the states administer.  The
7  states will therefore lose extensive federal dollars they would
8  otherwise receive for those services, and they have to modify
9  existing systems, build new systems, overhaul the systems they
10 previously relied on where they relied on a child's place of
11 birth, birth certificate, or social security number to
12 determine eligibility.
13      Now, I want to bring the Court's attention to a few
14 examples with respect to this harm and burden that's being
15 imposed on the states.  At ECF 14, Washington State's Medicaid
16 state director explained how the Health Care Authority would
17 have to engage seven to eight full-time employees on a project
18 that would take two to three years to complete to overhaul
19 eligibility and verification systems under the new rule of
20 birthright citizenship.
21      Likewise, ECF 25, from Arizona, they estimate that it will
22 cost 2.3- to $4.4 million and require 12 months to update
23 Arizona's three systems to be able to determine eligibility for
24 health care coverage under the new rule of birthright
25 citizenship provided by the EO.

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 6 of 20      6

State of WA et al. vs. Trump et al., 1/23/25

1       In addition to the burden on the states, though, Your
2   Honor, I do want to take time to speak about the harm to the
3   states' residents and the individuals who are impacted under
4   this order.  The government's filing last night essentially
5   ignores this harm, but that appears to be the purpose of the
6   entire executive order.
7       As we've pointed out in our papers, Your Honor, the
8   executive order will impact hundreds of thousands of children
9   nationwide who will lose their citizenship under this new rule
10  and more than 1100 per month in the plaintiff states.  1100
11  children per month will be born impacted by this executive
12  order.
13      But, Your Honor, we want to be very clear.  Births cannot
14  be paused while the Court considers the states' case.  Babies
15  down the street at Harborview are likely being born today with
16  a cloud hanging over their citizenship status.  And to be
17  clear, citizenship, as we know, is one of our most cherished
18  rights in this country.
19      So in considering the states' motion, we would ask that
20  the Court think seriously about what a denial of American
21  citizenship means.  It means that the children being born will
22  have no legal status.  They may be subject to removal or
23  deportation, family separation.  Many others may be deemed
24  stateless, a citizen of nowhere, because they were born here.
25  The United States is their home country.  They will be subject

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 7 of 20    7

State of WA et al. vs. Trump et al., 1/23/25

1   to travel restrictions.  They cannot freely come and go in the
2   country as American citizens can.  They will be deprived of
3   their right to vote as they age.  They will be deprived of
4   their right to work legally as they grow up.  And they will be
5   denied the right to fully participate in our democratic system.
6        As we've noted, with respect to the states' programs that
7   we serve our residents, children will become ineligible for
8   many services and programs that assist children and families in
9   need.  And there are also likely to be long-term substantial
10  negative impacts on their educational outcomes, their earning
11  potential and social mobility, and their health outcomes, as
12  we've detailed in our moving papers.  In sum, Your Honor, these
13  individuals will lose their right to be a full participant in
14  our society.  They will instead be forced to live in the
15  shadows, without a legal status, as a new permanent underclass
16  in the country.
17       With that in mind, Your Honor, it's important to note that
18  the executive order is based on an exceptionally weak fringe
19  interpretation of the Fourteenth Amendment that has been
20  soundly and repeatedly rejected by the courts, Congress, and,
21  until Monday, by the executive branch.  But the text and
22  history of the Citizenship Clause is clear.  It states that all
23  individuals born in the United States and subject to its
24  jurisdiction are citizens, period.  There is no exception for
25  babies born to certain classes of people.  And there is no

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 8 of 20    8

State of WA et al. vs. Trump et al., 1/23/25

1  serious dispute that all individuals born in the United States
2  who are covered by the executive order, individuals who may be
3  born to parents who are undocumented or even lawfully here on a
4  temporary basis, are, in fact, subject to the jurisdiction of
5  the United States.  I would submit, Your Honor, to suggest
6  otherwise is absurd.  It is an argument that these individuals,
7  these children, are immune from the law, like diplomatics.
8      The federal government doesn't explain in its papers --
9  and it can't, I would submit -- what it would mean for these
10 children or for undocumented immigrants to be not subject to
11 the jurisdiction of the United States, as they are arguing.
12 Are they not subject to the jurisdiction of the immigration
13 courts?  Must they not follow the laws while they are here?
14 That's the logical outcome of the federal government's
15 interpretation that they're offering of the Fourteenth
16 Amendment.
17     Fortunately, Your Honor, the Supreme Court resolved this
18 question and foundational precedent in the *Wong Kim Ark* case
19 that also came from a dark period of our nation's history, and
20 the Ninth Circuit has followed *Wong Kim Ark*.  In that case,
21 Wong Kim Ark -- Wong Kim Ark, excuse me -- was born in the
22 United States to Chinese parents who were noncitizens and could
23 not become American citizens.  They subsequently left.
24     When Wong Kim Ark visited his parents and tried to reenter
25 the country, he was denied entry.  His case made it to the

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 9 of 20    9

State of WA et al. vs. Trump et al., 1/23/25

1  Supreme Court, though, and the Supreme Court clarified that he
2  was a citizen at birth, and the Citizenship Clause of the
3  Fourteenth Amendment is near universal and broad in its scope.
4  It does not permit class-based exceptions, exceptions for race,
5  alienage, or any other basis.
6       The Ninth Circuit, as we've noted, in Reagan vs. King,
7  affirmed the district court's rejection of a similar challenge
8  to the citizenship of 2600 individuals of Japanese ancestry
9  during World War II -- again, an example from our nation's
10 history when the denial of citizenship was sought to be used as
11 a political weapon, and the courts have rejected those
12 attempts.
13      The grant of birthright citizenship in the Fourteenth
14 Amendment, Your Honor, is, simply put, off limits.  Neither the
15 President nor any of the federal defendants have the power to
16 rewrite the Fourteenth Amendment and deny citizenship to an
17 entire class of individuals in our country.
18      I want to touch briefly, Your Honor, on the scope of
19 relief we're seeking.  We do seek an order preserving the
20 status quo nationwide and temporarily barring any
21 implementation of acts based -- any implementation of the
22 executive order or acts based on the executive order.  We think
23 it's not only warranted but required under the circumstances.
24      And the reason is simple.  The TRO will preserve the
25 status quo, the rule that has been in effect since the

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 10 of 20    10

State of WA et al. vs. Trump et al., 1/23/25

1    Citizenship Clause was adopted to repudiate *Dred Scott*, and
2    prevent the harms from occurring while the case proceeds.
3         There is no action that will be required of the federal
4    government.  The status quo will remain.  But in the absence of
5    a TRO, the harm will continue multiplying exponentially, and
6    there is no realistic way to limit the relief along geographic
7    boundaries or otherwise while fully preventing and protecting
8    the plaintiffs from suffering the harm at issue.  Another way
9    to look at it, Your Honor, citizenship does not and cannot turn
10   on state borders.  And that's the case here.  The executive
11   order is in effect now, and its application is universal, and
12   the TRO should mirror that.
13        Just by way of a brief example, Your Honor, to the extent
14   there are questions with respect to the scope, you know, a
15   circumstance I'm concerned about is the fact that our state
16   residents cross state borders routinely.  We think of folks in
17   Spokane who have family, jobs in Coeur d'Alene.  They cross the
18   border daily, perhaps.  If a pregnant individual has a child
19   while across the border in Idaho and a TRO or injunctive relief
20   is limited based on the state border, that can't possibly be
21   workable and fully protect the state and the harms to the
22   state's residents.
23        So, Your Honor, I appreciate the time to be here this
24   morning.  And I'll just say, in closing, as we wrote in our
25   papers, the Citizenship Clause of the Fourteenth Amendment

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 11 of 20      11

State of WA et al. vs. Trump et al., 1/23/25

1   emerged out of one of our nation's darkest chapters, and it
2   embodies one of our most solemn promises, which is the promise
3   to citizenship.  On Monday, the President took us back to the
4   days of *Dred Scott*, and we're asking the Court now to return us
5   to present day while the states' case can proceed on the
6   merits.
7        A TRO should issue to stop the President's order from
8   taking effect and further disrupting the plaintiff states'
9   operations and the lives of their residents, including those
10  being born today, this week, and while the case proceeds.
11       Thank you, Your Honor.
12              THE COURT:  All right.  From the government?
13              ATTY. SHUMATE:  Good morning, Your Honor.  May it
14  please the Court, Brett Shumate on behalf of the defendants.
15       We would ask the Court to deny the plaintiffs'
16  extraordinary request to temporarily restrain the defendants
17  and the President from implementing and enforcing the
18  President's executive order on birthright citizenship.
19       I'd like to --
20              THE COURT:  In your opinion, is this executive order
21  constitutional?
22              ATTY. SHUMATE:  Yes, Your Honor.  It absolutely is.
23  Our brief last night explained briefly why we think it is.  We
24  would like the opportunity to provide the Court with full
25  briefing on the merits, but we haven't had an opportunity to do

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 12 of 20    12

State of WA et al. vs. Trump et al., 1/23/25

1  that yet.  We had about a day to pull together that brief.  I
2  apologize for the late filing.
3      But we would like the opportunity for full preliminary
4  injunction briefing.  That's what we're doing with the other
5  cases that have been filed challenging this executive order.
6  We're defending the order in those cases as well.  None of the
7  other plaintiffs in those cases have raced into court and asked
8  for a temporary restraining order.  All those cases are
9  proceeding on a normal track, where the plaintiffs have moved
10 for a preliminary injunction.  We've negotiated an orderly
11 briefing schedule.  Those courts will hold hearings in
12 February, most likely.  And the order does not take effect --
13 this order doesn't take effect until February 19.
14     I think my friend grossly exaggerates and misrepresents
15 the effective date of this order.  And I'd just like to walk
16 the Court through, to be clear, about when this order takes
17 effect because what they're asking for is a 14-day TRO that
18 will do nothing and expire before the executive order even
19 takes effect.  So let me just walk the Court through, if you
20 don't mind.
21     So Section 2(a) announces the President's policy with
22 respect to birthright citizenship.  Section 2(b) explains that
23 the policy section in Subpart 2(a), quote, "shall apply only to
24 persons who are born within the United States after 30 days
25 from the date of this order," end quote.  That means a child

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 13 of 20    13

State of WA et al. vs. Trump et al., 1/23/25

```
 1  born today, tomorrow is not affected by this policy.  This
 2  policy will only take effect after February 19.  And that's why
 3  the other states who have sued in other jurisdictions have not
 4  moved for a TRO, because there is no imminent emergency, right
 5  now, that affects the residents in Washington or the State of
 6  Washington.
 7          And let me go on.  So Section 3 is about enforcement in
 8  the executive order.  And it directs the agencies that are
 9  directed to implement and enforce this order not to take any
10  action that is inconsistent with this order.  That means --
11              THE COURT:  You know, I'd like to go back to your
12  opinion about the constitutionality of this order.
13          I've been on the bench for over four decades.  I can't
14  remember another case where the question presented was as clear
15  as this one is.  This is a blatantly unconstitutional order.
16          Where were the lawyers when this decision was being made?
17  There are other times in world history when we look back, as
18  people of good will, and say, "Where were the judges?  Where
19  were the lawyers?"  And frankly, I have difficulty
20  understanding how a member of the bar could state unequivocally
21  that this is a constitutional order.  It just boggles my mind.
22          Go ahead.
23              ATTY. SHUMATE:  We respectfully disagree, Your Honor,
24  and we would like the opportunity to try to persuade the Court.
25              THE COURT:  That's what you're given right now.
```

Case 2:25-cv-00127-JCC   Document 53   Filed 01/24/25   Page 14 of 20    14

State of WA et al. vs. Trump et al., 1/23/25

1    ATTY. SHUMATE:  Your Honor, we have explained in our
2    brief why we think this order is constitutional.  We have
3    explained why the original meaning of the Citizenship Clause --
4    the language about "subject to the jurisdiction" meant
5    individuals who are not subject to some other foreign power.
6       And so the position of the President, the position of the
7    Department of Justice is that individuals who remain subject to
8    a foreign power, illegal aliens who cross the border, have no
9    allegiance to the United States.  Those individuals, their
10   parents are not United States citizens --
11           THE COURT:  If any of these children that are subject
12   to this order commit a crime, is it your position they're not
13   subject to the jurisdiction of the United States?
14           ATTY. SHUMATE:  They're certainly subject to the laws
15   of this country but --
16           THE COURT:  How about the jurisdiction of the United
17   States?
18           ATTY. SHUMATE:  They're subject to the laws of this
19   country.  They're subject to complying --
20           THE COURT:  You haven't answered my question.
21      How about are they subject to the jurisdiction of the
22   United States?
23           ATTY. SHUMATE:  They're subject to the jurisdiction
24   with respect to the laws of this country but not with respect
25   to the Citizenship Clause of the Fourteenth Amendment.  Yes,

Case 2:25-cv-00127-JCC   Document 53   Filed 01/24/25   Page 15 of 20   15

State of WA et al. vs. Trump et al., 1/23/25

1  they're entitled to the equal protection of the laws.  They're
2  not permitted to be discriminated against.  But citizenship is
3  different.
4      My friend brought up the *Wong Kim Ark* case.  That case
5  only involved the citizenship status of a child of lawful
6  permanent residents who had some allegiance to the United
7  States and were subject to the jurisdiction of the United
8  States.  It did not involve the children of an illegal
9  immigrant or somebody who's here on a temporary visa.
10     Respectfully, this issue has not been litigated.  And this
11 order expressly does not apply, in Section 2(c), to lawful --
12 the children of lawful permanent residents.
13     So I understand the Court initially may disagree with our
14 position.  All we would ask is for an opportunity to fully
15 brief and try to persuade the Court at the preliminary
16 injunction stage.  There is no reason for the Court to enter a
17 temporary injunctive order right now with respect to an order
18 that is not even in effect yet.
19     So we would ask the Court, please, just allow us to brief
20 the issue.  I understand the Court is skeptical.  That's -- I
21 understand the Court's reservation.  We would ask the Court,
22 before you enter a judgment and make an initial decision on the
23 merits, give us an opportunity to fully brief the issue before
24 you enter a judgment against the government.
25     The other point I'd like to make is that -- I think you

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 16 of 20    16

State of WA et al. vs. Trump et al., 1/23/25

1   heard my friend say they're here primarily to protect the
2   residents of the state of Washington.  As we explained in our
3   brief, that is not the role of the state of Washington.  The
4   courts have been very clear that with respect to the
5   enforcement of constitutional claims, the states do not have
6   parens patriae standing to bring constitutional claims against
7   the federal government.  And that's primarily what the State of
8   Washington is trying to do.
9        So to the extent you want to -- the Court is inclined to
10  enter an order granting, the Court has to consider all the
11  threshold defenses we've identified, including the fact that
12  the states do not have standing to even reach the merits.
13       And finally, the other point I'd like to make, in terms of
14  the imminence of the harm, my friends have raised the concern
15  that the order will impose economic harms in the state in terms
16  of lost funding or increased cost, but that is way down the
17  road.  Nothing -- the states have not shown that they will
18  suffer any imminent economic harm within the next 27 days that
19  would possibly justify a temporary injunction that would
20  prevent this order from at least taking effect on February 19.
21       And to the extent the Court believes that there is some
22  type of harm that's going to take effect after the 19th, we are
23  happy to brief a preliminary injunction over the next few
24  weeks, come back to the Court sometime in February, and allow
25  the Court to rule on the merits of this order before it takes

Case 2:25-cv-00127-JCC   Document 53   Filed 01/24/25   Page 17 of 20   17

State of WA et al. vs. Trump et al., 1/23/25

1  effect and before it could conceivably harm anyone.  We would
2  just think a TRO today is wildly inappropriate and premature
3  because there is no harm.
4       Again, this order clearly is prospective after
5  February 19.  It has no effect on children born today or
6  tomorrow.  There is no reason to grant any type of temporary
7  relief or make a snap judgment on the merits of an important
8  constitutional question that will, no doubt, go to the Supreme
9  Court.  I think it's incumbent on all of us to approach this
10 question with care and allow the Court to make a reasoned
11 decision on the basis of full briefing, not something that the
12 plaintiffs filed two days ago, three days ago and we were able
13 to finally brief just last night.
14      To the extent, Your Honor, you are inclined to enter some
15 type of an order today, I think it's imperative that the Court
16 at least take three steps to narrow the scope of any relief.
17 The first would be excluding the President from any type of
18 injunctive order.  As we explained at the end of our brief last
19 night, the Court does not have jurisdiction to directly enjoin
20 the President.  Courts have been clear on that for a very long
21 time.  The Court does have jurisdiction to enjoin agency
22 officials who implement an order.  But we would ask the Court,
23 do not enjoin the President.
24      The second is to narrow the scope of relief to the
25 plaintiffs in this case.  There are a dozen or more other

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 18 of 20    18

State of WA et al. vs. Trump et al., 1/23/25

```
 1   states filing a similar claim in Massachusetts.  There are
 2   four -- four other cases as well.  It would be inappropriate
 3   for the Court to enter a nationwide order when there are other
 4   plaintiffs pursuing similar claims.  They would get two bites
 5   at the apple depending on -- if the plaintiffs here win, they
 6   get another chance in another court.  And the Ninth Circuit has
 7   spoken to this issue as well.
 8         And finally, I would ask the Court to be very clear in the
 9   scope of any injunctive order.  The proposed order that the
10   plaintiffs have provided the Court with is really ambiguous
11   with respect to what they're asking to be blocked.  For
12   example, the order says to ask the Court to enjoin
13   implementation and enforcement.  So I understand what
14   enforcement means.  That's what happens after 30 days; right?
15   Don't deny passports, that sort of thing.
16         It's unclear what they mean by implementation.  I would
17   ask the Court to strike that from any scope of relief, allow
18   the agencies to continue doing things behind the scenes to
19   prepare to implement this order to the extent an injunctive
20   order is lifted at some point.  But it would be unclear for the
21   executive branch to not know what they are allowed to do, at
22   least inside the executive branch, without actually enforcing
23   the order.
24         So in sum, Your Honor, I understand your concerns.  But I
25   think -- we'd urge the Court not to grant any type of temporary
```

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 19 of 20    19

State of WA et al. vs. Trump et al., 1/23/25

1    order today making a snap judgment on the merits because there
2    is no harm.
3         Plaintiffs are asking, again, for a 14-day TRO that will
4    expire before this order even takes effect.  It makes no sense.
5    What makes sense is to have full briefing on a preliminary
6    injunction, come back here in two, three weeks, allow the Court
7    to issue a reasoned opinion, have some time to write an
8    opinion, before this order takes effect on February 19.
9         So what we would suggest is the Court order the plaintiffs
10   to file a preliminary injunction motion this Friday.  We'll
11   file a response next Friday, and we'll come back the week after
12   that and have a full discussion on the merits.  And we are
13   fully prepared to defend this order on the merits.  We'll talk
14   through the history of the Fourteenth Amendment.  We'll talk
15   about the case law.  But today, I think it's enough to say
16   there is no imminent harm that is -- that the states will incur
17   as a result of this order.
18        Thank you for your time, Your Honor.
19             THE COURT:  All right.  Anything further?
20             ATTY. POLOZOLA:  Thank you, Your Honor.  I can be
21   very brief.
22        A TRO is an extraordinary remedy, but it's warranted when
23   the federal government takes extraordinary actions like it has
24   in the executive order.
25        As of right now, there is no other TRO that has been

Case 2:25-cv-00127-JCC    Document 53    Filed 01/24/25    Page 20 of 20      20

State of WA et al. vs. Trump et al., 1/23/25

1  entered.  There is no relief.  But I understand there is a
2  pending TRO in Maryland, but there is not one right now.
3        With respect to resolving the issue, we would welcome a
4  hearing and a forthcoming PI motion in two weeks.  But in the
5  interim, we believe that the TRO is needed right now for the
6  reasons we've discussed.
7        With that, Your Honor, again, I just want to close with
8  babies are being born today, here and in the plaintiff states
9  and around the country, with a cloud cast over their
10 citizenship, and we're asking the Court to enter a TRO to
11 prevent that.
12       Thank you.
13            THE COURT:  All right.  I've signed the TRO.  You'll
14 receive an email -- or a minute order from us setting a
15 briefing schedule and a schedule for a hearing on a preliminary
16 injunction.
17       We'll be in recess.
18                         (Adjourned.)
19
                      C E R T I F I C A T E
20
21     I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.
22
23 /s/ *Andrea Ramirez*
24 ANDREA RAMIREZ
   OFFICIAL COURT REPORTER
25