THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> DONALD TRUMP, ET AL., <br><br> Defendants. | Case No.: *2:25-cv-00127* <br><br> **DECLARATION OF WILLIAM NELSON IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO INTERVENE** |

I, William Nelson, declare under penalty of perjury that the following is true and correct:

1. Introduction

I submit this declaration in support of my Motion for Reconsideration of the Order Denying My Motion to Intervene in the above-captioned case. This case carries profound constitutional implications, particularly in interpreting the Fourteenth Amendment. The breadth and application of its Citizenship Clause present critical issues that demand precise judicial scrutiny. Both expansive and restrictive interpretations of the clause influence resource allocation, systemic equity, and public trust in governance.

**The Original Intent of the Citizenship Clause**

The Citizenship Clause was a direct response to the Supreme Court's decision in *Dred Scott v. Sandford* (1857), which denied citizenship to African Americans. The framers of the Fourteenth Amendment sought to rectify this injustice by guaranteeing citizenship to "all persons born or naturalized in the United States, and subject to the jurisdiction thereof." This provision aimed to ensure that formerly enslaved people and their descendants were recognized as full citizens.

DECLARATION OF WILLIAM NELSON IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO INTERVENE - 1

WILLIAM NELSON
1523 132ND ST STE, C418
EVERETT, WA 98208
♦
(425) 800-8800
william@seattleseahawks.me

Congressman John Bingham and other framers were explicit in their intent: the clause was designed to address systemic injustices and unify national and state citizenship, thereby preventing states from selectively denying rights to specific groups. Senator Jacob Howard, who introduced the clause in the Senate, stated that it was intended to cover "every human being born within the jurisdiction of the United States." However, this assurance was made in the context of addressing the citizenship of formerly enslaved individuals, not the children of foreign nationals. While the Citizenship Clause has historically been interpreted broadly, this expansive reading conflicts with the narrower application of the Due Process and Equal Protection Clauses. These clauses, which safeguard rights for U.S. citizens, naturalized individuals, legal immigrants, and Native Americans, have been constrained in scope. Extending birthright citizenship to children of foreign nationals who are in the country illegally, on tourist visits, or temporary work assignments diverts critical resources. This practice undermines the amendment's foundational intent and creates significant inequities in resource allocation.

## 2. Qualifications to Intervene

a. As a United States citizen, I am a direct beneficiary of the Fourteenth Amendment's protections. I have a substantial interest in ensuring that the Citizenship Clause is interpreted consistently with its original intent and in a manner that does not misallocate public resources.

b. The plaintiffs' expansive interpretation of the Citizenship Clause, if upheld, would misdirect resources from lawful residents and citizens to individuals who do not meet the historical intent of the clause. This outcome adversely affects me and others in similarly situated positions.

## 3. Procedural Grounds for Reconsideration

a. Local Rule 7(h) permits reconsideration where manifest errors or significant new developments arise. The court's denial of my motion overlooked essential arguments regarding my vested interest and the inadequacy of existing defendants in fully addressing these issues.

b. Reconsideration is warranted to ensure the legal arguments receive comprehensive judicial evaluation.

## 4. Substantive Arguments

**Taxation and Citizenship**

A critical consideration is whether individuals born in the United States to foreign nationals, who subsequently return to their parents' country of citizenship, are fulfilling their obligations as U.S. citizens—particularly regarding

DECLARATION OF WILLIAM NELSON IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO INTERVENE - 2

WILLIAM NELSON
1523 132ND ST STE, C418
EVERETT, WA 98208
♦
(425) 800-8800
william@seattleseahawks.me

taxation. The United States requires its citizens, irrespective of residence, to file and pay taxes. Failure to do so constitutes a felony. If these individuals are not meeting their tax obligations, they are either violating U.S. tax law, or their citizenship under the expansive interpretation of the Fourteenth Amendment should be questioned. This issue underscores the policy and enforcement challenges stemming from a broad application of the Citizenship Clause.

The federal government must address whether it is consistently enforcing these obligations. If the government chooses to uphold a broad interpretation of birthright citizenship, it must also ensure compliance with tax obligations through its regulatory mechanisms. If the states prevail, the Trump Administration should immediately deploy the 88,000 tax agents authorized under the Biden Administration to begin collection efforts targeting U.S. citizens born domestically but residing abroad. This approach may also serve to offset tariffs imposed by the Trump Administration on countries, such as China, that facilitate 'tourist birther' practices to enable their citizens to acquire U.S. citizenship.

**Impact on Public Resources**

a. **Significant Interest:** As a taxpayer, I have a vested interest in ensuring that resources are allocated to lawful citizens, naturalized individuals, and legal immigrants, consistent with the Fourteenth Amendment's intent.

b. **Potential Impairment:** A broad interpretation of the Citizenship Clause risks diverting resources from these groups, thereby impairing equitable allocation and undermining the amendment's foundational principles.

c. **Inadequate Representation:** Current defendants prioritize institutional interests, which may not align with those of individual citizens. My intervention ensures a more nuanced representation of the broader implications for ordinary Americans.

### 5. Compliance with Federal Rules

My motion adheres to Federal Rule of Civil Procedure 24(a) and (b), which govern intervention by right and permissive intervention. I have demonstrated a shared legal question and highlighted deficiencies in the representation of individual citizen interests.

\\

\\

\\

DECLARATION OF WILLIAM NELSON IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO INTERVENE - 3

WILLIAM NELSON
1523 132ND ST STE, C418
EVERETT, WA 98208
♦
(425) 800-8800
william@seattleseahawks.me

### 6. Public Interest and Justice

Allowing my intervention enhances the court's capacity to address the overarching constitutional questions presented by this case. My unique perspective prioritizes the responsible application of constitutional principles and the safeguarding of public resources.

**Personal Experience: A Reflection of Systemic Failures**

The justice system frequently falls short of its obligation to provide fair and equitable resolutions, particularly for individuals contending with systemic barriers. Procedural complexities, compounded by disparities in resources, disproportionately disadvantage those without institutional support.

As a disabled individual managing cognitive impairments exacerbated by Long COVID, I have personally encountered these systemic challenges. Despite relying on assistive technology, I have faced injustice and retaliation with limited recourse:

- **Threats and Hostility:** While employed by Starbucks Corporation, I endured explicit and threatening behavior from a senior executive, Stuart Gibson. These actions, which created a hostile work environment, went unaddressed by the company.
- **Unpaid Wages and Contractual Breaches:** Starbucks has failed to pay me for 40 hours of acknowledged work and withheld the second installment of my signing bonus, violating their contractual commitments.
- **Retaliation and Bias:** The company's ongoing efforts to terminate my employment under pretextual grounds, including investigations initiated by conflicted parties, exemplify systemic inequities.
- **Barriers to Accommodation:** Despite providing comprehensive medical documentation, my requests for reasonable accommodations have been dismissed. This disregard underscores the broader challenges faced by disabled individuals seeking justice.

These experiences highlight the urgent need to address inequities within the legal system and to prioritize the rights of citizens over expansive interpretations of constitutional provisions.

### Conclusion

For the foregoing reasons, I respectfully request that this Court grant my Motion to Intervene as a Defendant in this matter. Additionally, I seek leave to file counterclaims and defenses addressing the plaintiffs' misinterpretation of the Fourteenth Amendment and the improper diversion of public resources.

DECLARATION OF WILLIAM NELSON IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO INTERVENE - 4

WILLIAM NELSON
1523 132ND ST STE, C418
EVERETT, WA 98208
♦
(425) 800-8800
william@seattleseahawks.me

1  Respectfully submitted this 27th day of January 2025.

_____
WILLIAM NELSON
Defendant Pro Se
William Nelson
1523 132ND ST SE STE C418
Everett, WA 98208
william@seattleseahawks.me
425-800-8800 (mobile)
808-204-1401 (fax)

DECLARATION OF WILLIAM NELSON IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO INTERVENE - 5