The Honorable John C. Coughenour

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., | Case No. 2:25-cv-00127-JCC |
| Plaintiffs, | **INDIVIDUAL PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | Noting Date: February 24, 2025 |
| Donald TRUMP, et al., | |
| Defendants. | ORAL ARGUMENT REQUESTED |

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

## I.   INTRODUCTION

Individual Plaintiffs Delmy Franco, Cherly Norales, Alicia Chavarria, their future children, and the class they seek to represent all face the specter of themselves or their children being stripped of their U.S. citizenship, despite being born in the United States and being subject to the country's jurisdiction. They and putative class members are directly impacted by an Executive Order (EO) signed by President Trump on January 20, 2025, that purports to strip them or their children of their right to U.S. citizenship. But that EO violates the express language of the Fourteenth Amendment of the U.S. Constitution, Supreme Court precedent squarely addressing the question presented, and a federal statute codifying this constitutional right.[1]

The first clause of the Fourteenth Amendment to the U.S. Constitution (the Citizenship Clause) states that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. Const. amend. XIV § 1. The express language and history of the Citizenship Clause establish that the Constitution bestows citizenship upon all persons born in the United States—with only rare exceptions involving persons who are not subject to the laws of this country, such as the children of foreign diplomats. In *United States v. Wong Kim Ark*, the Supreme Court confirmed that children born in the United States to noncitizen parents are citizens under the Fourteenth Amendment's Citizenship Clause. 169 U.S. 649 (1898). Congress has since codified birthright citizenship in a statute whose language mirrors the Fourteenth Amendment. *See* 8 U.S.C. § 1401(a).

---

[1]     On January 27, 2025, this Court consolidated this matter (formerly Case No. 2:25-cv-00163) with Case No. 2:25-00127-JCC. As ordered by the Court, the Individual Plaintiffs will file a supplemental motion for a preliminary injunction by January 29, 2025. *See* Dkt. 56. As detailed below, they also seek provisional class certification to provide class-wide injunctive relief if the Court does not otherwise certify the class prior to entering any injunctive order.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

The EO, entitled "Protecting the Meaning and Value of American Citizenship," contradicts its stated purpose: it blatantly seeks to eviscerate the fundamental principle of birthright citizenship in the United States, notwithstanding the Citizenship Clause's explicit language, history, controlling caselaw, and the parallel federal statute. If left unchecked, the EO would cause catastrophic harm to Individual Plaintiffs and proposed class members.

The question presented in this case—whether the EO violates the Citizenship Clause— can and should be resolved on a class-wide basis, as there will be hundreds and soon thousands of persons in Washington State facing the exact same fundamental question. The proposed class satisfies the requirements under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. The Individual Plaintiffs thus request that the Court certify the following class and appoint them as class representatives:

> All pregnant persons residing in Washington State who will give birth in the United States on or after February 19, 2025, where neither parent of the expected child is a U.S. citizen or lawful permanent resident at the time of the child's birth; and,

> all children residing in Washington State who are born in the United States on or after February 19, 2025, where neither of their parents is a U.S. citizen or lawful permanent resident at the time of the child's birth.

The Individual Plaintiffs also request that, in the event that the Court issues a preliminary injunctive order prior to certifying the class, that the Court issue a provisional certification order to ensure class-wide relief. *See infra* p. 19.

Class certification is appropriate because the class is sufficiently numerous and the Individual Plaintiffs seek relief common to the class, have claims typical of the class, and are adequate representatives. On behalf of themselves and all proposed class members, Individual Plaintiffs seek an order from this Court that (1) permanently enjoins implementation of the EO, (2) declares that the EO violates the Citizenship Clause, 8 U.S.C. § 1401(a), and controlling

MOT. FOR CLASS CERT. - 2
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

Supreme Court precedent, (3) declares that children covered by the order are U.S. citizens, and (4) sets aside agency action implementing the EO under the Administrative Procedure Act (APA).

## II.  BACKGROUND

### A.  The Executive Order

On January 20, 2025, President Trump issued an Executive Order that purports to eliminate birthright citizenship for certain children of noncitizens in the United States. *See* The White House, Executive Order, Protecting the Meaning and Value of American Citizenship, https://www.whitehouse.gov/presidential-actions/2025/01/protecting-the-meaning-and-value-of-american-citizenship/ (Jan. 20, 2025). The EO states that, beginning thirty days after its signing, "no department or agency of the United States government shall issue documents recognizing United States citizenship" to newborn children where (1) "that person's mother was unlawfully present in the United States and the person's father was not a United States citizen or lawful permanent resident [LPR] at the time of said person's birth" or where (2) "that person's mother's presence in the United States was lawful but temporary, and the person's father was not a United States citizen or [LPR] at the time of said person's birth." EO § 2. In short, the order claims to redefine the Citizenship Clause of the Fourteenth Amendment and drastically undercuts *jus soli*—that is, birthright citizenship—in the United States. The order only applies prospectively.

Notably, the order's language underscores its breathtaking scope, particularly by failing to define who is "unlawfully present" or who has "temporary" status. To the Individual Plaintiffs' knowledge, Defendants have not provided any clarifying guidance. As written, however, the order appears to sweep in any child born to parents who are neither LPRs nor U.S. citizens. This covers a wide range of immigration statuses, many of which allow noncitizens to

1   reside in this country for years and even decades, such as asylum, withholding of removal,

2   temporary protected status, U status, and H-1B status. While ultimately a person's immigration

3   status does not matter to Plaintiffs' legal claims, the order's scope reflects the widespread and

4   devastating impact it will have on immigrant families in this state.

5   **B.  Individual Plaintiffs' Legal Claims**

6       Adjudicating a motion for class certification does not call for "an in-depth examination of

7   the underlying merits," but a court may nevertheless analyze the merits to the extent necessary to

8   determine the propriety of class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983

9   n.8 (9th Cir. 2011); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351–52 (2011). Here,

10  Plaintiffs' and the proposed class members' legal claims make clear that the class challenges a

11  uniform agency policy.

12      This case centers on the Citizenship Clause of the Fourteenth Amendment, guaranteeing

13  that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof,

14  are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV

15  § 1. The Citizenship Clause repudiated the Supreme Court's shameful decision in *Dred Scott v.*

16  *Sanford*, 60 U.S. 393 (1857), and ensured that *jus soli*—birthright citizenship—applies to *all*

17  people born in the United States.

18      The EO at issue in this case purports to unilaterally reinterpret the Citizenship Clause to

19  strip the children of people who are not U.S. citizens or LPRs of the "priceless treasure" that is

20  U.S. citizenship. *Fedorenko v. United States*, 449 U.S. 490, 507 (1981) (citation omitted). While

21  the EO claims that noncitizens are not "subject to the jurisdiction" of the United States, that

22  interpretation is baseless. Instead, that phrase refers only to limited, well-known exceptions,

23  including diplomats or the children of hostile foreign armies on U.S. soil. The Clause's plain

MOT. FOR CLASS CERT. - 4
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

text, history prior to Reconstruction, legislative debates surrounding its passage, and caselaw have all made clear that the phrase regarding jurisdiction exempts only these narrow classes of individuals. Indeed, the Supreme Court explicitly rejected the EO's legal basis long ago in *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), and has since repeatedly reaffirmed this interpretation of the Fourteenth Amendment. In short, President Trump's EO is nothing short of a flagrantly unconstitutional attempt to rewrite a foundational aspect of the U.S. Constitution.

## C. Individual Named Plaintiffs' Factual Backgrounds

### 1. Delmy Franco

Plaintiff Delmy Franco is a noncitizen from El Salvador who currently resides in Lynnwood, Washington. Franco Decl. ¶ 2. She is around seven months pregnant, and her due date is March 26, 2025. *Id.* ¶ 9. Ms. Franco fled El Salvador in 2015 with her oldest daughter, who was six years old at the time, to escape violence and threats. Her partner had already fled El Salvador the year prior. *Id.* ¶¶ 6–7. An immigration judge granted her daughter asylum and Ms. Franco withholding of removal. *Id.* ¶ 7. She has lived in the state of Washington for almost ten years. *Id.* ¶ 3. Her brother and sister live in Washington, as does her immediate family, including a U.S. citizen son born in 2018. *Id.* ¶ 8. She considers Washington her home and her family's home. *Id.*

Ms. Franco fears that under the EO her expected child will be deemed undocumented as neither she nor the father are U.S. citizens or LPRs. *Id.* ¶ 11. She fears that her child will be targeted by immigration enforcement, and that immigration agents may separate her and her family from her child. *Id.* ¶ 13. Even if not subject to immigration enforcement actions, she fears that her child will lack educational opportunities and authorization to work legally in the United States. *Id.* Without the assurance of citizenship, Ms. Franco is concerned her child will feel

MOT. FOR CLASS CERT. - 5
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

1  unsafe and that she will have to live in hiding to protect the child and her family. *Id.*

2         2.  <u>Cherly Norales</u>

3        Plaintiff Cherly Norales is a noncitizen from Honduras who currently resides in Seattle,

4  Washington. Norales Decl. ¶ 2. She is around seven months pregnant, and her due date is March

5  19, 2025. *Id.* ¶ 9. Ms. Norales fled Honduras in 2023 with her son, who was two years old at the

6  time, to escape severe violence, abuse, and threats. *Id.* ¶¶ 3, 6. Ms. Norales and her child have

7  applied for asylum before an immigration judge. *Id.* ¶ 8.

8        Ms. Norales fears that under the EO her expected child will be deemed undocumented as

9  neither she nor the father are U.S. citizens or LPRs. *Id.* ¶ 11. She is worried that her child may be

10  targeted by immigration enforcement. *Id.* ¶ 13. She worries that her child will not have access to

11  public benefits available only to U.S. citizens, and that this lack of access may impact the child's

12  well-being. *Id.* In addition, she fears that the child will eventually be unable to access to higher

13  education or work lawfully. *Id.* She also does not want her unborn child to ever risk removal to a

14  country the child has never known—a country where she has faced so much fear and abuse. *Id.*

15         3.  <u>Alicia Chavarria</u>

16        Plaintiff Alicia Chavarria is a noncitizen from El Salvador who currently resides in

17  Bothell, Washington. Chavarria Decl. ¶ 2. She is around three months pregnant, and her due date

18  is July 21, 2025. *Id.* ¶ 8. Ms. Chavarria fled El Salvador in 2016 to escape violence and abuse,

19  believing the Salvadoran police could not help her or protect her. *Id.* ¶¶ 5–6. She came to the

20  state of Washington, where her brother lived, and met her current partner in Washington in 2018

21  or 2019. *Id.* ¶ 7. Their first child was born in 2019. *Id.* Ms. Chavarria has now lived in

22  Washington about eight years and considers this state her and her family's home. *Id.* Ms.

23  Chavarria applied for asylum with United State Citizenship and Immigration Services (USCIS).

MOT. FOR CLASS CERT. - 6
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98101
(206) 957-8611

1  *Id.* ¶ 6.

2      Ms. Chavarria fears that under the EO her expected child will be deemed undocumented

3  as neither she nor the father are U.S. citizens or LPRs. *Id.* ¶ 10. She fears her child could be

4  targeted for immigration enforcement, and that immigration agents may separate her family. *Id.*

5  ¶ 12. She fears that her child may be removed to a country from which she was forced to flee.

6  *Id.*  It is imperative to Ms. Chavarria that her family remain united and safe in the United States.

7  *Id.* She is also concerned for how difficult her child's life will be without proof of U.S.

8  citizenship and the benefits it includes, like unrestricted social security number. *Id.* Ms.

9  Chavarria fears that without citizenship, it will be difficult for her child to obtain a specialized

10  education or work, and she does not want this for her child. *Id.*

## III. ARGUMENT

12      Individual Plaintiffs (hereinafter, "Plaintiffs") seek certification of the following class:

13      All pregnant persons residing in Washington State who will give birth in the United
        States on or after February 19, 2025, where neither parent of the expected child is

14      a U.S. citizen or lawful permanent resident at the time of the child's birth; and,

15      all children residing in Washington State who are born in the United States on or
        after February 19, 2025, where neither of their parents is a U.S. citizen or lawful

16      permanent resident at the time of the child's birth.

17  Under Federal Rule of Civil Procedure 23, Plaintiffs are entitled to class certification where two

18  conditions are met: "The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*,

19  numerosity, commonality, typicality, and adequacy of representation), and it also must fit into

20  one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A.*

21  *v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Plaintiffs' proposed class satisfies Rule 23(a) and

22  (b)(2).

23

MOT. FOR CLASS CERT. - 7
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

Courts in the Ninth Circuit, including this Court, have routinely certified class actions challenging immigration and citizenship policies and practices that have broad, categorical effect. *See, e.g.*, *Mansor v. USCIS*, 345 F.R.D. 193, 199 (W.D. Wash. 2023) (certifying nationwide class of applicants for Temporary Protected Status challenging a policy that failed to provide them with interim benefits guaranteed by statute); *Moreno Galvez v. Cuccinelli*, No. C19-0321RSL, 2019 WL 3219418, at *2 (W.D. Wash. Jul. 17, 2019) (certifying class of children and youth challenging policies impeding access to Special Immigrant Juvenile visas); *Nightingale v. USCIS*, 333 F.R.D. 449, at *457–63 (N.D. Cal. 2019) (certifying nationwide classes challenging agency's failure to produce immigration files); *Rosario v. USCIS*, No. C15-0813JLR, 2017 WL 3034447, at *12 (W.D. Wash. July 18, 2017) (granting nationwide certification to class of initial asylum applicants challenging the government's adjudication of employment authorization applications); *Wagafe v. Trump*, No. C17-0094-RAJ, 2017 WL 2671254, at *16 (W.D. Wash. June 21, 2017) (certifying nationwide class of immigrants challenging legality of a vetting program impeding naturalization applicants from obtaining citizenship); *Mendez Rojas v. Johnson*, No. C16-1024RSM, 2017 WL 1397749, at *7 (W.D. Wash. Jan. 10, 2017) (certifying two nationwide classes of asylum seekers challenging defective asylum application procedures); *Rivera v. Holder*, 307 F.R.D. 539, 551 (W.D. Wash. 2015) (certifying class of detained immigrants in the Western District of Washington challenging custody proceedings that categorically deny requests for conditional parole); *A.B.T. v. USCIS*, No. C11-2108 RAJ, 2013 WL 5913323, at *2 (W.D. Wash. Nov. 4, 2013) (certifying nationwide class and approving a settlement amending government practices that precluded asylum applicants from receiving employment authorization); *Roshandel v. Chertoff*, 554 F. Supp. 2d

MOT. FOR CLASS CERT. - 8
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

1194 (W.D. Wash. 2008) (certifying class of naturalization applicants living in Western District of Washington challenging policy delaying access to citizenship).

These cases demonstrate the propriety of Rule 23(b)(2) certification in actions challenging immigration policies that deprive individuals of the benefits or rights to which they are entitled. Indeed, the rule was intended to "facilitate the bringing of class actions in the civil-rights area," particularly those seeking declaratory or injunctive relief. Charles Alan Wright & Arthur R. Miller, 7AA *Federal Practice and Procedure* § 1775 (3d ed. 2022). Claims brought under Rule 23(b)(2) often involve issues affecting vulnerable individuals, like Plaintiffs, who would be unable to present their claims absent class treatment. Additionally, the core issues in these types of cases generally present pure questions of law, rather than disparate questions of fact, and thus are well suited for resolution on a class-wide basis.

**A.  The Proposed Class Meets All Requirements of Federal Rule of Civil Procedure 23(a).**

1.  <u>The proposed class members are so numerous that joinder is impracticable.</u>

Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." "[I]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). "Numerousness—the presence of many class members—provides an obvious situation in which joinder may be impracticable, but it is not the only such situation . . . ." William B. Rubenstein, 1 *Newberg & Rubenstein on Class Actions* § 3:11 (6th ed. 2022) (footnote omitted). "Thus, Rule 23(a)(1) is an impracticability of joinder rule, not a strict numerosity rule. It is based on considerations of due process, judicial economy, and the ability of claimants to institute suits." *Id.* (footnote omitted). Determining

numerosity "requires examination of the specific facts of each case and imposes no absolute

limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

While "no fixed number of class members" is required, *Perez-Funez v. INS*, 611 F. Supp.

990, 995 (C.D. Cal. 1984), courts have generally found "the numerosity requirement satisfied

when a class includes at least 40 members," *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir.

2010); *see also Rivera*, 307 F.R.D. at 550 (certifying class where "the Court [found] it highly

plausible that more than 40 [noncitizens] will be detained on this basis over the next year, and

that more than 40 [noncitizens] are being detained on this basis currently"); *Hum v. Dericks*, 162

F.R.D. 628, 634 (D. Haw. 1995) ("There is no magic number for determining when too many

parties make joinder impracticable. Courts have certified classes with as few as thirteen

members, and have denied certification of classes with over three hundred members."). Courts

have also found impracticability of joinder when even fewer class members are involved. *See,

e.g.*, *McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan and Trust*, 268 F.R.D.

670, 674–76 (W.D. Wash. 2010) (certifying class with 27 known members); *Arkansas Educ.

Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (finding 17 class members

sufficient); *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 606 (N.D. Cal. 2014) (noting that

courts routinely find numerosity "when the class comprises 40 or more members").

Here, Plaintiffs estimate that the class is currently comprised of hundreds, and will

quickly comprise thousands, of members. Data from Washington State and the expert testimony

submitted in this case support this number. In 2021, Washington State estimated that there were

over 300,000 undocumented noncitizens in the state. *See* Wei Yen, Washington state's

immigrant population: 2010-21, Office of Financial Management (May 2023),

https://ofm.wa.gov/sites/default/files/public/dataresearch/researchbriefs/brief110.pdf. As a result,

even a conservative estimate suggests that thousands of people will be born this year alone in Washington that will now be considered noncitizens. *See* All Births Dashboard, Washington State Department of Health (last accessed Jan. 23, 2025), https://doh.wa.gov/data-and-statistical-reports/washington-tracking-network-wtn/county-all-births-dashboard (reflecting a fertility rate of 51.9 births per 1,000 women aged 15–44 in 2022 in Washington). Additionally, the states' expert estimates that in 2022 there were about 4,000 births in the state to parents who were undocumented. *See* Lapkoff Decl., Dkt. 13 ¶ 11. Consequently, Plaintiffs have identified a sufficient number of proposed class members to demonstrate the class is so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1).

Joinder is also impracticable because of the existence of unnamed, unknown future class members who will be subjected to Defendants' policy of refusing to recognize U.S. citizenship. *See Ali v. Ashcroft*, 213 F.R.D. 390, 408–09 (W.D. Wash. 2003) ("[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met, regardless of class size." (citation and internal quotation marks omitted)); *Rivera*, 307 F.R.D. at 550 (finding joinder impractical due, in part, to "the inclusion of future class members"); *Hawker v. Consovoy*, 198 F.R.D. 619, 625 (D.N.J. 2001) ("The joinder of potential future class members who share a common characteristic, but whose identity cannot be determined yet is considered impracticable."). Here, joinder is impracticable for the same reason, as the proposed class includes families who are not yet pregnant and children who are not yet born. *Supra* p. 7.

In addition to class size and future class members, there are several other factors that make joinder impracticable in the present case, such as judicial economy, geographic dispersion of class members, financial resources of class members, and the ability of class members to bring

individual suits. *See* Rubenstein, *supra*, § 3:12; *see also, e.g.*, *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) (finding joinder impracticable where proposed class members were, inter alia, "spread across the state" and "low-income Medicaid recipients"). Here, the proposed class members are dispersed statewide. Many are also low-income noncitizens and thus do not have the means to bring the complex litigation that this case requires. *See, e.g.*, Franco Decl. ¶ 13; Chavarria Decl. ¶ 12.

Finally, "[b]ecause plaintiffs seek injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed subclass . . . is sufficient to make joinder impracticable." *Arnott v. USCIS*, 290 F.R.D. 579, 586 (C.D. Cal. 2012) (second, third, fourth, and fifth alterations in original) (quoting *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004)). As a result, even if numerosity were a close question here (which it is not), class certification is warranted. *Stewart v. Assocs. Consumer Discount Co.*, 183 F.R.D. 189, 194 (E.D. Pa. 1998) ("[W]here the numerosity question is a close one, the trial court should find that numerosity exists, since the court has the option to decertify the class later pursuant to Rule 23(c)(1).").

2.    The class presents common questions of law and fact.

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." "Courts have found that a single common issue of law or fact is sufficient to satisfy the commonality requirement." *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 257 (C.D. Cal. 2008)); *see also, e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) ("[T]he commonality requirement asks us to look only for some shared legal issue or a common core of facts."). Commonality exists if class members' claims all "depend upon a common contention . . . of such

a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Therefore, the critical issue for class certification "is not the raising of common 'questions' . . . but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted).

Here, Plaintiffs and proposed class members raise a common legal issue. Specifically, they allege that the EO defies the express language of the Fourteenth Amendment and 8 U.S.C. § 1401, and purports to strip people of their citizenship. By definition, all class members are subject to that policy, either because they themselves are stripped of U.S. citizenship or their children are stripped of citizenship. Consequently, Plaintiffs and proposed class members all share the legal claim that the EO and any action implementing the EO violates the U.S. Constitution, 8 U.S.C. § 1401(a), and the APA.

The fact that putative class members may have varying immigration statuses does not defeat the commonality among them. Together, Plaintiffs challenge an executive order and the policies implementing that order that apply equally to all class members. They therefore satisfy the commonality requirement, as they present the "common legal question" of "whether Defendants' [policy] violates the [Fourteenth Amendment and 8 U.S.C. § 1401(a)]." *Mansor*, 345 F.R.D. at 205; *see also Moreno Galvez*, 2019 WL 3219418, at *2 (stating that class of immigrant youth satisfied commonality where the case presented questions of "[w]hether the [challenged] policy is in accordance with federal law" and "[w]hether the policy is arbitrary and capricious"); *Nw. Immigrant Rights Project v. USCIS*, 325 F.R.D. 671, 693 (W.D. Wash. 2016) ("[A]ll questions of fact and law need not be common to satisfy the rule." (citation omitted)); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) ("Where the

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." (citation omitted)); *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (finding commonality based on plaintiffs' common challenge to INS procedures, and noting that "[d]ifferences among the class members with respect to the merits of their actual document fraud cases . . . are simply insufficient to defeat the propriety of class certification"); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) (granting certification in challenge to common government practices in asylum cases, even though the outcome of individual asylum cases would depend on individual class members' varying entitlement to relief).

Moreover, the commonality standard is even more liberal in a civil rights suit such as this one, which "challenges a system-wide practice or policy that affects all of the putative class members." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 808 (9th Cir. 2020) (citation omitted). Indeed, "class suits for injunctive or declaratory relief" like this case, "by their very nature often present common questions satisfying Rule 23(a)(2)." Wright & Miller, *supra*, § 1763.

Finally, Plaintiffs and proposed class members suffer the same injury. All will face the fear and uncertainty that the EO presents for their future, including the very real threat of immigration enforcement, forcing them and their families to live in the shadows. And even if those born after February 19, 2025, are not immediately targeted for removal, the EO will have an impact on the benefits and rights that they enjoy. This includes potentially preventing the class member children from obtaining public benefits limited to U.S. citizens. Further, as they grow older, they will experience more closed doors: they will be cut off from employment (because they lack work authorization) and they will have limited access to higher education

MOT. FOR CLASS CERT. - 14
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

1  (because they will be ineligible for federal student financial aid). In addition, they will further be

2  denied all the core rights afforded to U.S. citizens, including the right to travel and vote.

3      The class member parents will also suffer from this lack of rights. DHS may target their

4  homes for immigration enforcement actions, resulting in family separations. Parents will be

5  forced to make difficult, sometimes harrowing choices to avoid risking exposing their families to

6  immigration officials. Finally, as their children grow older, the EO will greatly impair the

7  children's ability to provide for their class member parents later in life, undermining any dreams

8  of stability and security for their families.

9      In sum the relief sought by Plaintiffs will resolve the litigation as to all class members "in

10  one stroke," *Wal-Mart*, 564 U.S. at 350, and they thus satisfy the commonality requirement of

11  Rule 23(a)(2).

12      3.   Plaintiffs' claims are typical of the claims of the members of the proposed class.

13      Rule 23(a)(3) specifies that the claims of the representatives must be "typical of the

14  claims . . . of the class." Meeting this requirement usually follows from the presence of common

15  questions of law. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The

16  commonality and typicality requirements of Rule 23(a) tend to merge."). To establish typicality,

17  "a class representative must be part of the class and possess the same interest and suffer the same

18  injury as the class members." *Id.* at 156 (citation and internal quotation marks omitted); *see also*

19  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (finding typicality requirement met where

20  class representatives "allege the same or similar injury as the rest of the putative class; they

21  allege that this injury is a result of a course of conduct that is not unique to any of them; and they

22  allege that the injury follows from the course of conduct at the center of the class claims"

23  (citation, internal quotation marks, and alteration omitted)). As with commonality, factual

MOT. FOR CLASS CERT. - 15
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

differences among class members do not defeat typicality provided there are legal questions common to all class members. *See LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) ("The minor differences in the manner in which the representative's Fourth Amendment rights were violated does not render their claims atypical of those of the class." (footnote omitted)).

In this case, the claims of the named Plaintiffs are typical of the claims of the proposed class. Specifically, Plaintiffs and proposed class members all suffer from the same injury: the purported elimination of their citizenship (in the case of the children) or of their children's citizenship (in the case of the parents). Moreover, as detailed above, Plaintiffs will suffer the same or similar harms that flow from this elimination of citizenship, such as family separation and the loss of benefits. The child class members will also face the threat of removal and lose access to work authorization, educational opportunities, and other key rights as citizens. These harms in turn affect the parent plaintiffs, whose children will be unable to work or may not be able to access higher education. The children's vulnerability to removal also puts the entire family's stability at risk, threatening separation or departure of the entire family unit. In sum, the harms suffered by Plaintiffs are typical of the harms suffered by the proposed class, and Plaintiffs' injuries and the injuries of proposed class members result from the identical course of conduct by Defendants. Plaintiffs therefore satisfy the typicality requirement.

    4.  <u>Plaintiffs will adequately protect the interests of the proposed class, and counsel are qualified to litigate this action</u>**.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Walters*, 145 F.3d at 1046 (citation omitted).

###### a.  *Named Plaintiffs*

Plaintiffs are motivated to pursue this action on behalf of others like them who, based on the EO, will have their children stripped of citizenship. This threatens Plaintiffs' families with separation and the loss of benefits, among other harms. *See* Franco Decl. ¶ 13; Norales Decl. ¶ 13; Chavarria Decl. ¶ 12. The Plaintiffs also all face immense emotional distress and fear due to the threatened loss of their child's citizenship and its attendant rights—especially the possibility of their child's removal. Franco Decl. ¶ 13; Norales Decl. ¶ 13; Chavarria Decl. ¶ 12. Other class members face the same potential harms.

Plaintiffs will thus fairly and adequately protect the interests of the proposed class, as they share the same interests and seek the same relief for all putative class members: an injunction, a declaratory order, and vacatur under the APA that stops Defendants from implementing the unlawful EO. Finally, Plaintiffs do not seek money damages for themselves. As a result, there is no potential conflict between the interests of any of the Plaintiffs and members of the proposed class. Accordingly, Plaintiffs are adequate representatives of the proposed class.

###### b.  *Counsel*

The adequacy of counsel is also satisfied here. Counsel are deemed qualified when they have experience in previous class actions and cases involving the same area of law. *See, e.g.*, *Jama v. State Farm Fire & Cas. Co.*, 339 F.R.D. 255, 269 (W.D. Wash. 2021); *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984); *Marcus v. Heckler*, 620 F. Supp. 1218, 1223–24 (N.D. Ill. 1985). Plaintiffs are represented by attorneys from the Northwest Immigrant Rights Project, all of whom who have extensive experience in class action lawsuits and other complex federal court litigation involving immigration law, including challenges to government policies in adjudicating

MOT. FOR CLASS CERT. - 17
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

immigration benefits. *See* Adams Decl. ¶¶ 3–4, 6–8. Counsel are able to demonstrate that they are counsel of record in numerous cases focusing on immigration law, in which they vigorously represented both the class representatives and absent class members in obtaining relief.

**B. The Proposed Class Satisfies Federal Rule of Civil Procedure 23(b)(2).**

In addition to satisfying the four requirements of Rule 23(a), Plaintiffs also must meet one of the requirements of Rule 23(b) for a class action to be certified. Here, Plaintiffs seek certification under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688; *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) ("Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive.").

By its very language, the Executive Order announces and directs the implementation of a uniform "policy of the United States" that strips birthright citizenship from all children born on or after February 19, 2025, where neither parent is an LPR or U.S. citizen. EO § 2. The challenged policy thus applies across the board to all Plaintiffs, eliminating birthright citizenship of either themselves (in the case of the children) or their children (in the case of the parents). Accordingly, a "single injunctive or declaratory judgment"—one enjoining the Executive Order in its entirety and declaring it unconstitutional under the Fourteenth Amendment—"would provide relief to each member of the class." *Dukes*, 564 U.S. at 360; *see also Amchem Products v. Windsor*, 521 U.S. 591, 614 (1997) (explaining that "[c]ivil rights cases against parties

charged with unlawful, class-based discrimination are prime examples" of 23(b)(2) class

actions). Therefore, this action unquestionably meets the requirements of Rule 23(b)(2).

**C. Plaintiffs Also Request Provisional Certification if the Court Does Not Grant Class Certification Prior to Any Injunctive Order.**

As noted above, Plaintiffs seek preliminary injunctive relief for themselves and for

putative class members. However, since temporary injunctive relief cannot be granted to a class

before an order has been entered determining that class treatment is proper, *see Nat'l Ctr. for

Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371 (9th Cir. 1984); *Davis v. Romney*, 490 F.2d

1360, 1366 (3d Cir. 1974), "[c]ourts in the Ninth Circuit routinely grant provisional class

certification for purposes of entering injunctive relief," *Maney v. Brown*, 516 F. Supp. 3d 1161,

1171 (D. Or. 2021) (citation omitted). Thus, Plaintiffs also request provisional class certification

to allow the Court to provide the preliminary injunctive relief required to protect the status quo

and to prevent irreparable harm to themselves and to the putative class members. In entering

such a provisional order, the Court's "analysis [regarding satisfaction of the requirements for

provisional class certification] is tempered . . . by the understanding that such certifications 'may

be altered or amended before the decision on the merits.'" *Damus v. Nielsen*, 313 F. Supp. 3d

317, 329 (D.D.C. 2018) (quoting *Bame v. Dillard*, No. 05-1833, 2008 WL 2168393, at *5

(D.D.C. May 22, 2008)).

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court certify (and

provisionally certify, as necessary) the proposed class, appoint Plaintiffs as class representatives,

and appoint the undersigned attorneys as class counsel.

MOT. FOR CLASS CERT. - 19
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98101
(206) 957-8611

DATED this 27th day of January 2025.

s/ Matt Adams
Matt Adams, WSBA No. 28287
matt@nwirp.org

s/ Leila Kang
Leila Kang, WSBA No. 48048
leila@nwirp.org

s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid, WSBA No. 46987
glenda@nwirp.org

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974
aaron@nwirp.org

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Suite 400
Seattle, WA 98104
(206) 957-8611

*Counsel for Individual Plaintiffs and Putative
Class Members*

MOT. FOR CLASS CERT. - 20
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

1

**WORD COUNT CERTIFICATION**

2      I certify that this memorandum contains 5,983 words, in compliance with the Local Civil

3  Rules.

4                              s/ Aaron Korthuis
                              Aaron Korthuis
5                              NORTHWEST IMMIGRANT RIGHTS PROJECT
                              615 Second Ave., Suite 400
6                              Seattle, WA 98104
                              (206) 816-3872
7                              aaron@nwirp.org

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

MOT. FOR CLASS CERT. - 21
Case No. 2:25-cv-00127-JCC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611