UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF ILLINOIS; and STATE OF OREGON,<br><br>            Plaintiffs,<br><br>    v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. SOCIAL SECURITY ADMINISTRATION; MICHELLE KING, in her official capacity as Acting Commissioner of the Social Security Administration; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY FINK, in her official capacity as Acting Secretary of Health and Human Services; U.S. DEPARTMENT OF JUSTICE; JAMES MCHENRY, in his official capacity as Acting Attorney General; U.S. DEPARTMENT OF AGRICULTURE; GARY WASHINGTON, in his official capacity as Acting Secretary of Agriculture; and the UNITED STATES OF AMERICA,<br><br>            Defendants. | NO. 2:25-cv-00127-JCC<br><br>DECLARATION OF APRILLE FLINT-GERNER |

**DECLARATION OF APRILLE FLINT-GERNER**

I, Aprille Flint-Gerner, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge and records of the Oregon Department of Human Services that are kept in the ordinary course of its business.

2. I am the Director for the Oregon Child Welfare Division of the Oregon Department of Human Services. (ODHS). I have served as Director since July 2023 and was previously the Child Welfare Interim Director. I am responsible for executive level oversight and administration of Oregon's foster care program and compliance with Title IV-E.

3. I hold a Bachelor of Arts in African American Studies and a Master of Social Work from San Jose State University. I have more than 25 years of experience in public sector work, including specialized experience in workforce and adaptive leadership development, community and cross-system engagement, and technical assistance and implementation support. I have specialized knowledge and expertise in many promising practices and equity frameworks in child welfare and human services. I am knowledgeable about the administration of the Child Welfare Division, including its implementation of Title IV-E.

4. The Child Welfare Division of ODHS is focused on the well-being of children. Its mission is to ensure every child and family is empowered to live a safe, stable and healthy life. We are part of a larger statewide social system that works to support children, families and communities. Child Welfare focuses on keeping families together whenever it is safe to do so.

5. One of ODHS's duties is to administer Oregon's child welfare system. Oregon's child welfare system is funded in part through an annual appropriation based on an open-ended formula grant entitlement operated by the U.S. Department of Health and Human Services (HHS) Federal Foster Care Program, known as Title IV-E.

6. Title IV-E includes various programs that provide funding to children and ODHS. While ODHS provides foster care support for all children in the foster care system, regardless of

immigration status, it receives federal matching reimbursements for any funds that are directed to foster children eligible for Title IV-E. Children must be citizens or qualifying non-citizens to be entitled to enjoy benefits under Title IV-E and may be eligible as soon as birth. ODHS does not receive reimbursements based on their services to individuals who are undocumented or do not have a lawful, qualifying immigration status, as defined in Title IV-E. ODHS is also entitled to reimbursements for many types of administrative costs incurred in serving Title IV-E children, including the administration of various Title IV-E programs that ODHS administers and receives funding for.

7. Included in Title IV-E's funding program is its "Adoption and Guardianship Assistance Program," which provides funding to facilitate the timely placement of children, whose special needs or circumstances would otherwise make it difficult for them to have permanency through adoption or guardianship. Under federal law, Child Welfare Division receives Title IV-E funding for the administrative functions of the Adoption and Guardianship Assistance Program, which includes:

   a. Overall: the determination and redetermination of eligibility; fair hearings and appeals; rate setting; other costs directly related only to the administration of the adoption and guardianship assistance program; the administration of any grievance procedures; negotiation and review of adoption/guardianship assistance agreements; post-placement management of subsidy payments; a proportionate share of related agency overhead; development of the case plan; referral to services; home studies; and mediation of post-finalization contact agreements.

   b. For adoptions: recruitment of adoptive homes; placement of the child in the adoptive home; case reviews conducted during a specific preadoptive placement for children who are legally free for adoption; case management and supervision

prior to a final decree of adoption; and a proportionate share of the development and use of adoption exchanges.

8. Title IV-E also includes a "Foster Care Maintenance Payments Program," which provides funding for the regular costs of supervising and providing social services to children in foster care. This includes: payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child and reasonable travel to the child's home for visitation and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement. In the case of institutional care, it also includes the administration of providing all of the services detailed above.

9. Title IV-E funds the Independent Living Program services for youth who are age 14 and over and the Chafee educational stipends to support young adults pursuing higher education after experiencing foster care.

10. Title IV-E administrative funds support the training of agency staff, including resource parents (who some states refer to as foster parents), as well as funding training for legal representation for parents and children, Court-Appointed Special Advocates (CASA), and members of the Citizen Review Board (CRB).

11. Title IV-E funding is critical to ensuring high quality service to Oregon's children who experience foster care today and in the future.

12. The amount of federal funds that Oregon is entitled to under Title IV-E depends on the number of Title IV-E eligible children. The amount Oregon receives is based on Oregon's "eligibility rate" or "penetration rate," which is then used to determine the amount Oregon will be reimbursed for providing services. The eligibility rate describes the percentage of Title IV-E eligible children being served, compared against the total number of served children in foster care, pursuant to the definition of foster care in 45 CFR 1355.20. The total number of children being served depends on the services being provided. For example, Title IV-E reimburses Child

Welfare Division for payments for services in support of children placed in a resource family home, a licensed group care facility, or in a home other than that of the child's parent, guardian, or legal custodian. The reimbursed services include the recruitment, training, and management of resource parents, the recruitment of adoptive families, and the facilitation of the adoption process, among other services. The rate that CWD is reimbursed for the costs related to serving children in paid out of home care is calculated by the number of days that Title IV-E eligible children were in paid out of home care divided by the total number of days that all children (including children ineligible for Title IV-E) were in paid out of home care.

13. Because the penetration rate depends on the number of children eligible for Title IV-E funding, even a small decrease in the number of children eligible for Title IV-E funding would have dramatic impacts on the total amount of federal funding that Oregon receives under Title IV-E.

14. For example, in Federal Fiscal Year 2024, Oregon spent a total of $792,403,677 to administer its child welfare system. That same year, Oregon had a penetration rate of 49% percent, based on approximately 2,200 children who are eligible for Title IV-E divided by approximately 4,490 children in foster care on a given day. Consequently, even 45 fewer children being eligible for Title IV-E funding would have decreased Oregon's penetration rate by 1% percent, which would have decreased Oregon's reimbursement by $3.4 million. Or, taking a different approach, if 1,500 children are born annually in Oregon who would not be considered citizens under the federal executive order, then we can extrapolate the impact based on the percentage of Oregon children who enter foster care. Using fiscal year 2024 dollars and foster care percentages (.005%), there would be eight children who would enter foster care and would not be considered citizens and who, therefore, would not be entitled to Title IV-E eligibility. Even just eight fewer eligible children per year equates to $596,850.49 in lost federal funding based on fiscal year 2024 expenditures.

15. The impact of the executive order on Oregon's child welfare system would not be limited to a reduction in federal funding for care of the children experiencing foster care. The recent executive order purporting to end birthright citizenship for children born in the United States based on their parent(s)' non-citizen/immigration status, if implemented, would have a variety of widespread impacts on Oregon's foster care program, including an increase in the operational and administrative costs for Oregon's foster care program.

16. In addition to impacts on those subject to this new policy, the federal government's action would increase the cost of ODHS's administration of its foster care programs and, at the same time, decrease the amount of federal funding Oregon receives to reimburse administrative and maintenance costs related to its services for foster children in Oregon.

17. ODHS is required by federal law to verify the citizenship status of all individuals receiving foster care support under Title IV-E, to determine the child's eligibility. Currently, the primary method of citizenship verification is through birth certificates held by other state agencies. Because ODHS can serve children as soon as they are born, it relies on birth certificates to determine whether young children are eligible under Title IV-E. When a child enters foster care, ODHS does not otherwise verify the citizenship of their biological parents in any way, as the parent(s)' citizenship is irrelevant to the services that Child Welfare provides.

18. ODHS has no system in place to determine the citizenship of a child's parents when the child enters foster care. If ODHS were required to change its practices to conform with the federal government's executive order, ODHS would also need to develop that system and develop updated comprehensive training for staff, partners, and other contracted agencies who carry out Title IV-E duties. For example, ODHS would likely need to update its training and guidance around which children are citizens and therefore eligible for Title IV-E funding, and which children are only eligible for state-only programs. Moreover, Title IV-E requires ODHS to verify the citizenship of each child for whom it seeks federal reimbursements. While ODHS

was previously able to rely on birth certificates to meet its federal obligation, it would no longer be able to do so and would need to create a process to verify the citizenship of the parents at the time the child enters foster care to determine whether the ODHS is entitled to federal reimbursements. This would be a significant and costly administrative burden on the State and ODHS.

I declare under penalty of perjury under the laws of the State of Oregon and the United States of America that the foregoing is true and correct.

DATED and SIGNED this 24th day of January, at Happy Valley, OR.

*APRILLE FLINT-GERNER*