UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF ILLINOIS; and STATE OF OREGON,<br><br>              Plaintiffs,<br><br>              v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; BENJAMINE HUFFMAN, in his official capacity as Acting Secretary of Homeland Security; U.S. SOCIAL SECURITY ADMINISTRATION; MICHELLE KING, in her official capacity as Acting Commissioner of the Social Security Administration; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY FINK, in her official capacity as Acting Secretary of Health and Human Services; U.S. DEPARTMENT OF JUSTICE; JAMES MCHENRY, in his official capacity as Acting Attorney General; U.S. DEPARTMENT OF AGRICULTURE; GARY WASHINGTON, in his official capacity as Acting Secretary of Agriculture; and the UNITED STATES OF AMERICA,<br><br>              Defendants. | Civil Action No. 2:25-cv-00127<br>Judge John C. Coughenour |

**DECLARATION OF HEIDI E. MUELLER**

I, Heidi E. Mueller, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1.  I am Director of the Illinois Department of Children and Families Services ("IL DCFS" or "DCFS"), a position I have held since February 1, 2024. I served as the Acting Director of IL

DCFS from February 2024 until March 21, 2024. On March 22, 2024, I was unanimously confirmed by the Illinois Senate as Director of IL DCFS. As Director of IL DCFS, I oversee the care, custody, and services to abused, neglected and dependent minors placed in DCFS's custody by Illinois Courts as well as programs provided to children and families at risk of coming into foster care.

2. Prior to holding this position, from December 2016 to February 2024, I served as the Director of the Illinois Department of Juvenile Justice where I oversaw the care, custody, and services provided to youth committed to that department by Illinois Courts. I was first appointed by Governor Bruce Rauner after having served from April 2014 to December 2016 as the Deputy Director of Programs, responsible for the Department of Juvenile Justice's service array and rehabilitative model. From 2012 to 2014, I served as the Executive Director of the Illinois Juvenile Justice Commission, advising the Governor and the General Assembly regarding juvenile justice policy and practice and administering the State's federal grant funding under the Juvenile Justice and Delinquency Prevention Act.

3. I hold a bachelor's degree, cum laude, in psychology and history from Macalester College, completed Master's level studies in Social Psychology from Stony Brook University, and earned a Juris Doctor degree from the University of Chicago Law School.

4. I submit this Declaration in support of Plaintiff States' Motion for Preliminary Injunction pertaining to the Executive Order entitled "Protecting the Meaning and Value of American Citizenship" (the "Citizenship Stripping Order"). I have compiled the information of the matters set forth below through personal knowledge, my review of information and records gathered by staff, and through IL DCFS personnel who have assisted me in gathering this

2

information. I have also read the Citizenship Stripping Order in order to understand its immediate and long-term impact on IL DCFS and the State of Illinois.

## Department of Children and Family Services Background

5.  IL DCFS is the state agency mandated to investigate allegations of child abuse and neglect, maintain records regarding those investigations, and offer preventative and other services in Illinois. IL DCFS provides services to families at risk of having children enter foster care and to abused, neglected, and dependent youth who are placed in State custody and their families to address the issues that brought the family to the attention of the State with the goal of reunifying the families or providing alternative permanency living arrangements for youth. IL DCFS oversees the licensing and certification of relative and foster family homes for youth in the custody of the State and the licensing of other childcare institutions and placements for youth in DCFS care and custody. IL DCFS also provides early childhood care and education programs as part of the State's child welfare service system.

6.  IL DCFS was created by the Children and Family Services Act "to provide social services to children and their families, to operate children's institutions, and to provide certain other rehabilitative and residential services as enumerated in this Act." 20 ILCS 505/1. Those services include: ensuring the necessary number of placements and other resources of sufficient quality and variety to meet the needs of children and families; providing direct child welfare services through public or private childcare programs or facilities, which protect and promote the health, safety, and welfare of children, including abused and neglected children; and placing children who have been removed from their parents in appropriate living arrangements.

7.  IL DCFS is also mandated to provide arrangements and monitor rehabilitative services for children and their families on a voluntary basis or who are under a court order. 325 ILCS 5/8.4.

8.  IL DCFS is a statewide agency that operates in all 102 counties in the State of Illinois. DCFS consists of a central office and four regions: Cook County, Northern, Central and Southern. Each region is divided into field service areas. The general statewide management and support functions of the agency are currently performed at the central office level.

9.  IL DCFS contracts with community-based child welfare contributing agencies ("CWCA") throughout the State to provide services for children and families. These services include case management services for families and children who remain together and are at risk of coming into foster care.

10. IL DCFS directly and through CWCAs provides foster care and residential placement and other services to children and youth removed from their parents.

11. DCFS provides services regardless of a child's or family's immigration status.

12. DCFS supervised or administered foster care for 19,514 children in 2023. As of the end of the state fiscal year on June 30, 2024, DCFS supervised or administered foster care for 18,854 children.

13. Children can enter IL DCFS's care at any time prior to their 18th birthday. In State Fiscal Year 2024 (July 1, 2023 to June 30, 2024) 6,252 children entered foster care. The breakdown of the ages of those children at the time they entered foster care is: 1,455 children were less than one year old; 1,942 children were between one year to five years old; 1,414 children were six to ten years old; 1,329 children were 11 to 16 years old; and 112 were 17 years old.

4

14. In calendar year 2024, 5,991 children entered foster care: 1,373 children were less than one year old; 1,827 were one year to five years old; 1,352 were six to ten years old; 1,308 were 11 to 16 years old; and 131 of those children were 17 years old.

15. DCFS must timely identify the needs of children and youth placed in their custody and provide timely and appropriate services and placements to meet those identified needs and ensure children and youth in DCFS custody are cared for.

### Federal Funding Tied to a Child's Citizenship Status

16. Section 471 of the Social Security Act provides that for a state to obtain foster care maintenance payment reimbursements for a child in foster care, the State Plan must set forth that the state has procedures in effect for verifying the citizenship or immigration status of the child. 42 U.S.C. 671 (a)(27).

17. IL DCFS receives several sources of federal funding for providing services to children that are contingent on the child's immigration status. DCFS receives federal funding for providing services to eligible children, children that are a U.S. citizen or a "qualified alien." DCFS does not receive federal funding for providing similar services to children who are undocumented.

18. Prior to the enactment of the Citizenship Stripping Order, DCFS received federal funding for providing services to income-eligible children including those whose parents' immigration status was unknown or not determined.

19. If the Executive Order is implemented, IL DCFS will not receive the same level of federal funding for the provision of services to children even though it will continue to provide the same services to children regardless of their immigration status, as required by State law.

20. DCFS would also have to use its limited resources (resources that would otherwise directly provide for the care of youth) to create, implement, and update systems for all its programs to

track and determine the citizenship status of newborn children entering its care, even if the immigration status of a child's parents is unknown or indeterminable.

21. Title IV-E of the Social Security Act ("Title IV-E") requires the federal government to provide grants to state foster care agencies with approved Title IV-E plans, including IL DCFS, to assist those agencies with the costs of foster care maintenance for eligible children, as well as for adoption, guardianship, prevention, and other support services.

22. Title IV-E entitles Illinois to claim partial reimbursement from the federal government for IL DCFS's foster care expenditures for children who are removed from a home and placed in foster care and who meet the eligibility criteria for the former Aid to Families with Dependent Children ("AFDC") program, as it was in effect on July 16, 1996.

23. The 1996 AFDC program also limits federal public benefits to United States citizens and "qualified aliens." As IL DCFS understands the Title IV-E limitations independently, *cf.* 8 U.S.C. § 1641, and per the AFDC criteria, children who are undocumented are not "qualified aliens," and thus DCFS does not receive any federal reimbursement for its foster care expenditures for those children.

24. Federal funding under Title IV-E covers foster care maintenance payments for eligible children and provides for partial reimbursement of the State's administrative expenses associated with its foster care system. Foster care maintenance payments cover the cost of basic necessities, including food, clothing, shelter, daily supervision, and school supplies for eligible children in DCFS's care. Federal funding is provided on a quarterly basis after the State submits claims for eligible expenditures associated with eligible children.

25. Partial reimbursement of DCFS's administrative expenses is calculated by using the State's "penetration rate" or "eligibility rate," which is the percentage of children in foster care who

6

are eligible for Title IV-E funding. This loosely equates to the percentage of children in foster care who came from families with limited resources. That rate describes the percentage of Title IV-E eligible children DCFS serves, compared against the total number of children in DCFS's foster care, pursuant to the definition of foster care in 45 CFR 1355.20. IL DCFS must calculate a penetration rate for each quarter. For federal Fiscal Years 2023 and 2024, IL DCFS's penetration rate was between 26 and 34 percent: for those years, federal funds covered approximately 26 to 34 percent of the administrative expenses associated with DCFS's provision of foster care for eligible children.

26. In Federal Fiscal Year 2024, IL DCFS received almost **$140** million in Title IV-E federal funding for administrative expenses and foster care maintenance payments for eligible children.

27. Title IV-E federal funds also include funding for the Adoption Assistance Program, which facilitates the timely adoption of children with special needs or circumstances. Under federal law, DCFS receives Title IV-E funding for administering the Adoption Assistance Program, including assessing a child's eligibility for DCFS care, conducting hearings and appeals, and recruiting adoptive homes for identified children, among other administrative functions.

28. Based on DCFS's experience, it is very likely that DCFS serves U.S. citizen children with parents whose status would disqualify their child from birthright citizenship under the Citizenship Stripping Order. In calendar year 2024, 1,373 children entered foster care in Illinois in the first year of their lives. Those children were eligible for inclusion in the tabulation of federal funding received by IL DCFS, but children with parents of disqualifying status would be ineligible for inclusion in that tabulation under the Citizenship Stripping Order.

7

29. If children born to undocumented parents in Illinois who require foster care services were not given citizenship status as of birth, thereby becoming undocumented, IL DCFS would, consistent with state law, including the Children and Family Services Act, 20 ILCS 505; the Abused and Neglected Child Reporting Act, 325 ILCS 5; and the Illinois Juvenile Court Act, 705 ILCS 405, and the terms of the Consent Decree entered in *B.H. v. Mueller*, 88-cv-5599 (N.D. Ill. Dec. 20, 1991) continue to provide these children with foster care services as needed. However, because those children would be ineligible for Title IV-E funding, DCFS would not receive any reimbursement from the federal government under Title IV-E for providing those services. DCFS, and Illinois would be solely responsible for funding care for those children via its foster care and adoption systems.

30. Given all that, if the Citizenship Stripping Order took effect, IL DCFS would not receive a significant share of federal funds under Title IV-E based on the exclusion of children who are undocumented from the calculation of IL DCFS's expected federal funding.

## Costs of Ascertaining Citizenship Status

31. DCFS needs to determine the citizenship status of the children it serves in order for Illinois to accurately obtain quarterly Title IV-E reimbursements from federal sources for foster care services provided to eligible children. Children are only eligible for the afore-listed programs and services if they are U.S. citizens or "qualified aliens."

32. Prior to the issuance of the Citizenship Stripping Order, IL DCFS relied on a child's birth certificate as evidence of U.S. citizenship. This is administratively simple, especially with respect to newborns that DCFS caseworkers may interact with shortly after birth.

8

33. If birthright citizenship were terminated and DCFS could not rely on a child's birth certificate as proof of citizenship, it would significantly complicate DCFS's ascertainment of certain foster care services provided for that child that are reimbursable under Title IV-E.

34. To ascertain eligibility stemming from citizenship, DCFS caseworkers would have to develop a new system for determining the citizenship and immigration status of children entering its care. That system would likely require DCFS to take steps to determine, verify, and document the immigration status of the parents of children who come into foster care. It would cost considerable time and resources to implement such a system. This would be especially difficult in certain circumstances where parents are unwilling to engage with DCFS. DCFS would also incur significant costs to train DCFS caseworkers to implement that system.

35. While the precise costs are difficult to estimate without further guidance from the federal government on how states must determine citizenship status for federal benefits and Title IV-E eligibility, it could easily cost millions of dollars. Because quarterly submissions to the federal government for Title IV-E reimbursements are due at the end of April 2025, DCFS would have to develop and begin implementing such a system immediately, which may not be possible in the short timeframe.

36. Developing such a system to ascertain a child's citizenship status would also divert DCFS's limited resources from providing services to at risk children in Illinois to the detriment of children that benefit from a variety of DCFS's programs.

37. Separately, DCFS occasionally takes temporary custody of newborn children who have been abandoned, such as pursuant to Illinois's Abandon Newborn Infant Protection Act. (Protection Act), 325 ILCS 2/1-70. The parents of such abandoned children may be unknown, and DCFS

9

would therefore be unable to ascertain their eligibility for the above-mentioned federal programs.

38. Indeed, if a newborn is abandoned pursuant to the Protection Act, Illinois law permits an individual relinquishing a newborn infant to remain anonymous, absent any evidence of abuse or neglect of the child. 325 ILCS 2/30. DCFS could therefore be prevented from being able to determine the immigration status of the abandoned newborn's parents unless that information were volunteered.

39. Consequently, DCFS would be unable to establish that abandoned newborns are U.S. citizens eligible for Title IV-E reimbursement for DCFS—regardless of the actual immigration status of the newborn's parents. In summary, the Citizen Stripping Order will have an immediate and detrimental effect on the operations and finances of IL DCFS and harm the vulnerable youth and families we serve.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Executed this 27th day of January 2025, in Chicago, Illinois.

**Heidi E. Mueller**
Director
IL Department of Children and Family Services
60 East Van Buren Street
Suite 1339
Chicago, Illinois 60605
Heidi.Mueller@Illinois.gov