The Honorable Judge John C. Coughenour

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| **STATE OF WASHINGTON**, *et al.*, | **NO.: 2:25-CV-00127-JCC** |
|     Plaintiffs, | **[PROPOSED] BRIEF *AMICUS CURIAE* OF AMERICA'S FUTURE, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, CITIZENS UNITED, U.S. CONSTITUTIONAL RIGHTS LEGAL DEFENSE FUND, LEADERSHIP INSTITUTE, AND CONSERVATIVE LEGAL DEFENSE AND EDUCATION FUND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
|     v. | |
| **DONALD TRUMP**, in his official capacity as President of the United States, *et al.*, | |
|     Defendants. | |

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 1

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. 3

INTEREST OF THE *AMICI CURIAE* ...................................................................... 5

STATEMENT OF THE CASE ................................................................................... 5

ARGUMENT

I.    PLAINTIFF STATES' CLAIMS AGAINST AND PRAYER FOR
      INJUNCTIVE RELIEF AGAINST PRESIDENT TRUMP SHOULD BE DISMISSED
      OUT OF HAND ............................................................................................. 6

II.   PLAINTIFF STATES LACK STANDING TO CHALLENGE THE
      EXECUTIVE ORDER .................................................................................... 9

III.  PLAINTIFFS HAVE FAILED TO DEMONSTRATE A LIKELIHOOD OF SUCCESS
      ON THE MERITS ........................................................................................ 10

      A.  Plaintiffs' View of Birthright Citizenship Is Unsupported by *Wong
          Kim Ark* .............................................................................................. 10

      B.  Plaintiffs' Reliance on Other Supreme Court Cases Is Unpersuasive ...... 15

IV.   "BIRTHRIGHT CITIZENSHIP" VIOLATES THE TEXT AND THE
      ORIGINAL INTENT OF THE FOURTEENTH AMENDMENT ....................... 17

      A.  The Text and Context ........................................................................... 18

      B.  Purpose and Drafting History of the Citizenship Clause ......................... 20

V.    PLAINTIFFS' CLAIM THAT BIRTHRIGHT CITIZENSHIP SHOULD BE HANDED
      OUT TO ALL CHILDREN OF ALIENS HAS BIZARRE
      RESULTS.................................................................................................... 22

CONCLUSION ....................................................................................................... 26

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 2

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA 98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

**TABLE OF AUTHORITIES**

U.S. CONSTITUTION
Article III, Sect. 3 ................................................................................. 23
Article IV, Sect. 2, cl. 1 ........................................................................ 19
Amendment XIV ........................................................................... 10, *passim*

STATUTES
Civil Rights Act of 1866, 14 *Stat.* 27 ................................................. 18

CASES
*Brown v. Board of Education*, 347 U.S. 483 (1954) .............................. 13
*Carlisle v. United States*, 83 U.S. 147 (1872) ..................................... 24
*Scott v. Sandford,* 60 U.S. 393 (1857) ................................... 15, 20, 22
*Elk v. Wilkins*, 112 U.S. 94 (1884) ..................................... 13, 14, 16
*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ................................ 7
*INS v. Rios-Pineda*, 471 U.S. 444 (1985) .......................................... 16
*Kendall v. United States*, 37 U.S. 524 (1838) ..................................... 7
*Marbury v. Madison*, 5 U.S. 137 (1803) ........................................ 7, 8
*Mass. v. EPA*, 549 U.S. 497 (2007) ..................................................... 9
*Massachusetts v. Mellon,* 262 U.S. 477 (1923) ................................... 9
*Minor v. Happersett*, 88 U.S. 162 (1874) ................................... 13, 14
*Mississippi v. Johnson*, 71 U.S. 475 (1866) .................................. 7, 8
*Nixon v. Fitzgerald,* 457 U.S. 731 (1982) ........................................... 8
*Perkins v. Elg*, 307 U.S. 325 (1939) ................................................. 17
*Plessy v. Ferguson*, 163 U.S. 537 (1896) .......................................... 12
*Plyler v. Doe*, 457 U.S. 202 (1982) ........................................... 15, 16
*Slaughter-House Cases*, 83 U.S. 36 (1873) ................................. 13, 14
*United States v. Wong Kim Ark*, 169 U.S. 649 (1898) ................. 10, *passim*
*Van Ness v. Pacard*, 27 U.S. 137 (1829) .......................................... 11
*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................. 9
*Youngstown Sheet & Tube v. Sawyer*, 343 U.S. 579 (1952) ................. 8

MISCELLANEOUS
19 U.S. Op. Off. Legal Counsel 340, 1995 WL 1767990 (1995) ............... 12
H. Ardman, "World War II: German Saboteurs Invade America in 1942," *History.net*
    (June 12, 2006) ............................................................................. 25
R. Berger, <u>Government by the Judiciary: The Transformation of the</u>
    <u>Fourteenth Amendment</u> (Liberty Fund: 1997) ................................ 18
Congressional Globe, 39th Cong, 1st Session ............................ 20, 21, 22
Declaration of Independence ...................................................... 19, 23
J. Eastman, "The Significance of 'Domicile' in *Wong Kim Ark*," 22 Chap. L. Rev.
    301 (Spring 2019) ................................................................... 11, 12
I. Egrikavuk, "Birth tourism in U.S. on the rise for Turkish parents,"
    *Hurriyet Daily News* (Mar. 12, 2010) .............................................. 25
E. J. Erler, <u>The Founders on Citizenship and Immigration</u> (Claremont Inst: 2007) ....... 23

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 3

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA 98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

J. Feere, "Birthright Citizenship in the United States: A Global Comparison," *Center for Immigration Studies* (Aug. 31, 2010) ............................................................ 25

D. Iriekpen, "Citizenship Rights: American Agitations Threaten a Nigerian Practice," *This Day* (Aug. 16, 2010) ...................................................................................... 25

N. Nnorom, "Birthright citizenship: Nigerians in diaspora kick, say Trump's action illegal," *Vanguard* (Jan. 23, 2025) ..................................................................... 25

Office of the Inspector General, "A Review of the FBI's Handling of Intelligence Information Prior to the September 11 Attacks," (Nov. 2004) ......... 25

W. Olson, H. Titus & A. Woll, "Children Born in the United States to Aliens Should Not, by Constitutional Right, Be U.S. Citizens," *U.S. Border Control* (January 2001; rev'd 2003; rev'd 2005, rev'd 2018) ........................................................ 11

K. Richburg, "For many pregnant Chinese, a U.S. passport for baby remains a powerful lure," *Washington Post* (July 18, 2010) ............................................... 25

U.S. Department of Justice, "Fact Sheet: Prosecuting and Detaining Terror Suspects in the U.S. Criminal Justice System," (June 9, 2009) ....................... 25

U.S. Department of Justice, "Two sent to prison for roles in cartel-linked human smuggling scheme," (Oct. 30, 2024) .............................................................. 25

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 4

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

**INTEREST OF THE *AMICI CURIAE*[1]**

The interest of these *amici* is set out in the accompanying motion for leave to file the brief *amicus curiae*.

**STATEMENT OF THE CASE**

On January 20, 2025, President Trump issued an executive order entitled, "Protecting the Meaning and Value of American Citizenship"[2] ("EO"). The Order contained a narrowly defined directive that federal agencies are not to consider a person born on U.S. soil to be a citizen of the United States when, "at the time of said person's birth," the **father** "was **not** a United States citizen or lawful permanent resident..." **and**

> "when that person's **mother**" was:
> (1) "**unlawfully present** in the United States" ... or
> (2) ... when [the mother's presence] ... was **lawful but temporary** (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa)....  [*Id.* (emphasis added).]

Although the EO would not take effect for 30 days, three groups of plaintiffs rushed to file suit — on the day the Order was issued and the next day — in federal district courts for the districts of New Hampshire, Western Washington, and Massachusetts.[3]

---

[1] No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than these amici curiae, their members or their counsel contributed money that was intended to fund preparing or submitting this brief.

[2] The White House, "Protecting the Meaning and Value of American Citizenship," (Jan. 20, 2025).

[3] The challenge brought by New Jersey, *et al.* was not filed in New Jersey, but in Massachusetts, thereby ensuring that any appeal would be heard not in the Third Circuit, but in the First Circuit, where an appeal from the New Hampshire litigation would also be heard. New Jersey may be aware that all of the active judges in the First Circuit were appointed by Presidents Obama or Biden, while in the Third Circuit half of the judges were appointed by Presidents G.W. Bush or Trump, and half by Presidents Obama or Biden.

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 5

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

1

**ARGUMENT**

2

**I.    PLAINTIFF STATES' CLAIMS AGAINST AND PRAYER FOR INJUNCTIVE**
3    **RELIEF AGAINST PRESIDENT TRUMP SHOULD BE DISMISSED OUT OF**
     **HAND.**

4

5        The Plaintiff States name as the lead defendant Donald J. Trump as President of

the United States, in his official capacity.  Compl. para. 18.  Plaintiffs also sue the
6

United States of America, several departments of government and the Social Security
7

8    Administration, and department and agency heads.  Further, in their prayer for relief,

9    plaintiffs ask that the Court "Temporarily restrain Defendants from implementing or

10   enforcing this Order."  This effort to name the President of the United States as the lead

11   defendant, with a request that this court enjoin the President, may generate good press

12   and be good politics for the Attorneys General of the Plaintiff States, but they should

13   know better, as this court's entry of an injunction against the President of the United

14   States would violate the Separation of Powers.

15       When suits were filed against President Trump's immigration policies during his

16   first term as the nation's 45th President, some of these *amici* objected to this practice of

17   seeking to enjoin the President, and filed three *amicus* briefs, urging the courts to

18   dismiss President Trump as a party defendant.  (*See IRAP v. Trump* in the Fourth

19   Circuit; *Hawaii v. Trump* in the Ninth Circuit; and *DHS v. Regents U. Calif.* in the U.S.

20   Supreme Court.)  During that first term, the Justice Department did not routinely act to

21   protect the Office of the President by seeking his dismissal, but it is encouraging that in

22   this litigation this argument was raised by the Justice Department in the concluding

23   paragraph of its Opposition.  Docket 36 at 16.

24

25

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 6

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

In *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992), the Supreme Court explained that, while a district court could enjoin an executive branch official, it could not enjoin the President himself.  In striking down an injunction against a President, the Court bluntly stated that "the District Court's grant of injunctive relief against the President himself is extraordinary, and should have raised judicial eyebrows."  *Id.* at 802.  Concurring in *Franklin*, Justice Scalia went even further, asserting that "[i]t is a commentary upon the level to which judicial understanding — indeed, even judicial awareness — of the doctrine of separation of powers has fallen, that the District Court entered this order against the President without blinking an eye." *Id.* at 826.  Justice Scalia noted that, up until at least 1984, "'[n]o court has ever issued an injunction against the president himself or held him in contempt of court.'" *Id.* at 827.

For most of the nation's history, it had been understood that suits against the President are improper.  In *Marbury v. Madison*, 5 U.S. 137 (1803), it was President Jefferson who made the decision not to deliver outgoing President John Adams' appointments, but it was Secretary of State James Madison who was named as the defendant in the case.  In 1838, the High Court again observed that "[t]he executive power is vested in a President; and as far as his powers are derived from the constitution, he is beyond the reach of any other department, except in the mode prescribed by the constitution through the impeaching power."  *Kendall v. United States*, 37 U.S. 524, 610 (1838).

The specific issue of an injunction against the President was considered by the U.S. Supreme Court in *Mississippi v. Johnson*, 71 U.S. 475 (1866), involving Mississippi's suit to enjoin President Andrew Johnson from enforcing the Reconstruction

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

Acts.  Although leaving open the question of whether the President could be ordered to

perform mere ministerial acts, the Court made clear that "this court has no jurisdiction ...

to enjoin the President in the performance of his official duties...."  *Id.* at 501.  Thus,

although President Truman made the decision to seize steel mills, suit was filed not

against him, but against Secretary of Commerce Sawyer, and it was the Secretary, not

the President, who was enjoined from enforcing that Presidential decision.  *Youngstown

Sheet & Tube v. Sawyer*, 343 U.S. 579 (1952).

Clearly, President Trump's issuance and enforcement of his Executive Order was

an act in the performance of his official duties.  *See Marbury v. Madison* at 170 ("The

province of the court is, solely, to decide on the rights of individuals, not to enquire how

the executive, or executive officers, perform duties in which they have a

discretion.  Questions, in their nature political, or which are, by the constitution and

laws, submitted to the executive, can never be made in this court.").  *See also Nixon v.

Fitzgerald,* 457 U.S. 731, 749 (1982) ("The president cannot ... be liable to arrest,

imprisonment, or detention, while he is in the discharge of the duties of his office; and

for this purpose, his person must be deemed, in civil cases at least, to possess an

official inviolability.")  The President's independence from the judiciary is "[t]he essential

purpose of the separation of powers ... to allow for independent functioning of each

coequal branch of government within its assigned sphere of responsibility, free from risk

of control, interference, or intimidation by other branches."  *Id.* at 760-61.

If President Trump cannot be enjoined by a federal judge, and most certainly

cannot be punished for disregarding an injunction, then no federal judge should allow

him even to be named as a party defendant.  For his official acts, the President cannot

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 8

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

be subjected to the jurisdiction of the judiciary — which is not a superior, but coequal, branch of government.  Accordingly, at the outset of this case, this Court should dismiss forthwith President Trump from this suit as having been improperly named as a defendant.

## II.    PLAINTIFF STATES LACK STANDING TO CHALLENGE THE EXECUTIVE ORDER.

The complaint begins with the erroneous assertion that the Plaintiff States are entitled to assert the interests of third-party non-citizens against the federal government.  Complaint para. 1 ("The States … bring this action to protect ... state residents against the illegal actions of the President…").  The general rule is that each plaintiff must "assert his own legal rights and interests."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  While an exception has been regularly made to this rule in order to allow abortionists to assert the rights of pregnant women, that exception is best understood as part of the federal judiciary's abortion jurisprudence.  No such exception is applicable here.  Plaintiffs do not claim to file this action to protect citizens as *parens patriae*, but even if they had, that option is not available under current case law.  Although there are reasons to doubt the correctness of that rule,[4] it has been long established that a state may not claim standing as *parens patriae* in litigation against the Federal Government.  *See Massachusetts v. Mellon,* 262 U.S. 477, 485-86 (1923).  Because standing was extensively addressed by the government, these *amici* do not address Plaintiffs' standing claim based on their purported entitlement of children born to alien

---

[4] *See Mass. v. EPA*, 549 U.S. 497 (2007).

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

fathers and mothers to a massive array of government benefits at the expense of American citizens.[5]

## III. PLAINTIFFS HAVE FAILED TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. Plaintiffs' View of Birthright Citizenship Is Unsupported by *Wong Kim Ark*.

Plaintiffs take the extreme position that every human being born on American soil is an American citizen, claiming only two exceptions permitted by the Fourteenth Amendment's text "subject to the jurisdiction thereof":  "the children of diplomats covered by diplomatic immunity and children born to foreign armies at war against the United States while on United States soil."  Motion for Temporary Restraining Order (Dkt. 10) ("TRO Mtn.") at 9-10.  There is certainly no support for this policy in the text, context, or history of the Citizenship Clause.

Plaintiffs assert that their position is identical to a "longstanding common law principle" (Compl. at 8), but that common law is completely inapplicable, as it was developed under the British view that every person born on British soil was both a British citizen and the subject of a king, lacking even the ability to renounce citizenship — wholly unlike American citizenship. In *Wong Kim Ark*, Justice Gray accurately described the English common law's presumption that everyone born on English soil was a subject of the King for life, whether he wished to be or not. "By the common law

---

[5] The Plaintiff States do not mention a possible political consideration.  Under prior Administrations, the U.S. Census Bureau chose to count illegal aliens in the population, by which power in the U.S. House of Representatives is allocated. Anticipating that this policy may be reversed, Plaintiff States could be motivated to maximize the number of babies awarded birthright citizenship, lest states heavily populated with illegal aliens lose political power in the House.

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

of England, every person born within the dominions of the Crown, no matter whether of English or of foreign parents, and, in the latter case, whether the parents were settled, or merely temporarily sojourning, in the country, was an English subject."  *United States v. Wong Kim Ark*, 169 U.S. 649, 657 (1898).  However, Justice Gray incorrectly assumed the British rule of citizenship that he described also applied in America when it does not.  As Justice Story explained in 1829, "The common law of England is not to be taken in all respects to be that of America.  Our ancestors brought with them its general principles, and claimed it as their birthright.  But they brought with them, and adopted only that portion which was applicable to their situation."  *Van Ness v. Pacard*, 27 U.S. 137, 145 (1829).

This distinction between British and American citizenship was addressed in an article originally published in January 2001 by a nonprofit organization, U.S. Border Control.  As the authors explain, the legal principle of *jus soli* was based on the idea that the king owned the land, and thus anyone born on the land, whether to a citizen or an alien, became by birth a subject of the king, to whom that person now owed allegiance for life, being permanently a subject by accident of birth on the King's land.[6] Constitutional scholar John Eastman explained when that shift occurred.  He states that by declaring their land and persons independent of the King in 1776, the Framers expressly repudiated the notion of being unalterably subjects by birth:  "The Declaration of Independence is not just a thorough repudiation of that old feudal idea of 'permanent allegiance' [to the king by accident of birth], but perhaps the most eloquent repudiation

---

[6] W. Olson, H. Titus & A. Woll, "Children Born in the United States to Aliens Should Not, by Constitutional Right, Be U.S. Citizens," *U.S. Border Control* (January 2001; rev'd 2003; rev'd 2005, rev'd 2018).

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

of it ever written....   The notion that the English common law of *jus soli* therefore continued unabated after the Declaration of Independence could not be more mistaken."[7]

Plaintiffs next rely on a statement submitted to the House Judiciary Committee in 1995 from the Office of Legal Counsel[8] during the Clinton Administration.   *See* Compl. at para 38, 54; Motion for Preliminary Injunction (Dkt. 63) ("PI Mtn") at 13.   Although published together with the official "Opinions of the Office of Legal Counsel," this was not such an Opinion, but rather a statement opposing passage of a House bill.   The statement asserted that to: "deny citizenship to certain children born in the United States based on their parents' immigration or citizenship status would be ... unquestionably unconstitutional."   However, it is clear that this statement was based on the same flawed assumption that the British common law of citizenship is identical to the American common law.   That statement relies on a lower court opinion for the proposition it assumes to be true that:  "We find no warrant for the opinion that this great principle of the common law has ever been changed in the United States."   *Id.* at 340.

Plaintiffs then assert that "[t]he Supreme Court cemented this longstanding and established understanding of the Citizenship Clause more than 125 years ago" in *Wong Kim Ark*.  Compl. para. 36.  In essence, plaintiffs take the position:  "It's been done for a long time, so it is constitutional," but longevity does not demonstrate constitutionality.  In 1896, two years before *Wong Kim Ark*, the Supreme Court decided *Plessy v. Ferguson*, 163 U.S. 537 (1896) by 7 to 1, holding that "separate but equal" did not violate the

---

[7] J. Eastman, "The Significance of 'Domicile' in *Wong Kim Ark*," 22 Chap. L. Rev. 301, 308-309 (Spring 2019).
[8] *See* 19 U.S. Op. Off. Legal Counsel 340, 1995 WL 1767990, at *1-2 (1995).

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

1  Fourteenth Amendment with Justice Gray, the author of *Wong Kim Ark*, in the

2  majority.  The *Plessy* decision stood as "good law" for nearly 60 years, before being

3  overturned by *Brown v. Board of Education*, 347 U.S. 483 (1954), a Court that did not

4  subscribe to Plaintiffs' theory that longevity demonstrates constitutionality.

5      Plaintiffs claim that their position is supported by the holding of *Wong Kim Ark*,

6  but Plaintiffs fail to admit that case was an outlier that veered sharply away from all the

7  Supreme Court cases decided closer to the time of the ratification of the Fourteenth

8  Amendment.  In 1873, just five years after ratification of the Fourteenth Amendment, the

9  Court interpreted the Citizenship Clause.

10

11      That its main purpose was to establish the citizenship of the negro can
    admit of no doubt.  **The phrase, "subject to its jurisdiction" was**
12      **intended to exclude** from its operation **children of** ministers, consuls,
    and **citizens or subjects of foreign States born within the United**
13      **States**.  [*Slaughter-House Cases*, 83 U.S. 36, 73 (1873) (emphasis
    added).]

14

15  Two years later, the Court again questioned acquiring citizenship, focusing on British

16  citizenship.

17      At **common-law**, ... it was never doubted that all children born in a country
    of parents who were its citizens became themselves, upon their birth,
18      citizens also.  These were natives, or natural-born citizens, as
    distinguished from aliens or foreigners.  **Some authorities go further** and
19      include as citizens children born within the jurisdiction without reference to
    the citizenship of their parents.  **As to this class there have been**
20      **doubts**....  [*Minor v. Happersett*, 88 U.S. 162, 167-168 (1874) (emphasis
    added).]

21

22      Just 12 years before *Wong Kim Ark*, writing for the Court, Justice Gray again

23  highlighted the critical difference between the children of citizens, and the children of

24  aliens owing allegiance to foreign powers.  The Court declared:

25      [t]he main object of the opening sentence of the Fourteenth Amendment
    was to settle the question ... as to the citizenship of free negroes ... and to

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 13

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

put it beyond doubt that all persons, white or black, and whether formerly slaves or not, born or naturalized in the United States, and **owing no allegiance to any alien power**, should be citizens of the United States...." [*Elk v. Wilkins*, 112 U.S. 94, 101 (1884) (emphasis added).]

Because the Plaintiff in *Elk v. Wilkins* was a member of a Native American tribe to which he owed allegiance, and had never been naturalized, the Court found that he was **not a citizen** despite being born on U.S. soil.

Despite some unduly broad *dicta*, *Wong Kim Ark* **did not even address those specific children covered by the Executive Order** — those born to a mother either **illegally or temporarily present** in the United States.  The question addressed in *Wong Kim Ark* was:

whether a child born in the United States, of parents of [foreign] descent, who, at the time of his birth, are subjects of [a foreign government], but have a **permanent domicil** and residence in the United States, and are there carrying on business, and are not employed in any diplomatic or official capacity under the [foreign government], becomes at the time of his birth a citizen of the United States.  [*Wong Kim Ark* at 653 (emphasis added).]

However, if *Wong Kim Ark* viewed that "subject to the jurisdiction" of the United States simply meant to be present "within the jurisdiction" thereof, equating (i) children born to aliens who owe allegiance to foreign governments to (ii) children of citizens, that decision was in error, an outlier, inconsistent with the Supreme Court's decisions in the *Slaughter-House Cases*, *Minor*, and *Elk*.

Plaintiffs argue that the Immigration and Nationality Act ("INA") reaffirms *Wong Kim Ark* and Plaintiffs' expansive reading of that case.  Compl. at 11.  While the INA was enacted after *Wong Kim Ark*, the INA did not incorporate that case, and certainly did not equate "the Citizenship Clause's commandment" with its mistaken reading of *Wong Kim Ark*, rather than the Clause itself.  As Plaintiffs concede, the language of the

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 14

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

INA, "subject to the jurisdiction thereof" was "taken directly from the Fourteenth Amendment." Thus, it could be said to incorporate that Amendment, but not Plaintiffs' mistaken reading of *Wong Kim Ark.*

In their motion for a temporary restraining order, Plaintiffs' hyperbole reaches new heights. Plaintiffs claim that "President Trump and the federal government now seek to impose a modern version of *Dred Scott.*" TRO Mtn. at 1. *Dred Scott,* of course, stood for the proposition that if a person's ancestors were brought to U.S. soil as slaves against their will, no matter how many generations passed, their descendants born here could never be citizens. The challenged Order, on the other hand, says that a father and mother who are citizens of other countries, who owe their allegiance to a foreign government, do not magically create an American Citizen by the mother being in the United States illegally or temporarily. The two situations are different in every respect.

**B.    Plaintiffs' Reliance on Other Supreme Court Cases Is Unpersuasive.**

Plaintiffs cite several other Supreme Court cases they incorrectly assert undercut the legality of the challenged Order. Plaintiffs cite to *dicta* in *Plyler v. Doe*, 457 U.S. 202 (1982). Motion for Preliminary Injunction (Dkt. 63) at 10-12. *Plyler* involved a Texas statute denying state funds for public education for children of illegal immigrants. Writing for a bare 5-4 majority, Justice Brennan's opinion for the Court stated that "[i]n appellants' view, persons who have entered the United States illegally are not 'within the jurisdiction' of a State even if they are present within a State's boundaries and subject to its laws. Neither our cases nor the logic of the Fourteenth Amendment supports that constricting construction of the phrase 'within its jurisdiction.'" *Id.* at 211. As shown in an accompanying footnote, for this proposition the

1  Court relied on Justice Gray's *dicta* in *Wong Kim Ark*, that "it was 'impossible to

2  construe the words "subject to the jurisdiction thereof," in the opening sentence [of the

3  Fourteenth Amendment], as less comprehensive than the words "within its jurisdiction,"

4  in the concluding sentence of the same section; or to hold that persons "within the

5  jurisdiction" of one of the States of the Union are not "subject to the jurisdiction of the

6  United States.""" *Id.* at 211, n.10.

7          Justice Gray utterly ignored the legislative history of the Citizenship Clause, in

8  which numerous Senators, including the author of the Clause, expressly differentiated

9  the meaning of the phrases "within the jurisdiction" and "subject to the jurisdiction" within

10  the Clause, in order to reach the opinion in his *dicta*.  *See* Section IV, *infra*.

11

12          If Justice Gray's *dicta* from *Wong Kim Ark* had been the case's holding, it would

13  have effectively overturned other cases, including Justice Gray's own opinion in *Elk*,

14  that were decided closer to the ratification of the Fourteenth Amendment, and he had to

15  ignore the plain statements in the legislative history.  In addition, neither the *dicta* in

16  *Wong Kim Ark* or that in *Plyler* controls the outcome here.  Rather, the text and history

17  of the Citizenship Clause control, and these utterly fail to support Plaintiffs' novel

18  proposition that children of diplomats and occupying forces are the only exceptions to its

19  claimed right birthright citizenship.  For that matter, nothing in *Plyler* would exclude even

20  children born to occupying forces from citizenship.  The error in *Plyler*'s *dicta* simply

21  follows from the error in *Wong Kim Ark's dicta* upon which it rests.  Neither undercuts

22  the legality of the Order.

23

24          Plaintiffs point to *INS v. Rios-Pineda*, 471 U.S. 444 (1985).  PI Mtn. at 12.  The

25  holding of the case was that the Board of Immigration Appeals did not abuse its

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 16

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

discretion by refusing to reopen a case ordering the deportation of the illegal alien

parents.  Although the Court did state that two children born here of illegal aliens were

citizens, that was purely *dicta*, tangential to the issue in the case, which had nothing to

do with the citizenship of children of illegal aliens.

Finally, Plaintiffs point to *Perkins v. Elg*, 307 U.S. 325, 328 (1939).  PI Mtn. at

12.  Plaintiffs cite the language, "[o]n her birth in New York, the plaintiff became a citizen

of the United States."  They fail to point out that at the time of her birth, Ms. Elg's father

was a naturalized citizen, and her mother was not an illegal alien.  As a child born in the

United States to a naturalized citizen, Ms. Elg would not be covered by the challenged

Executive Order in any way.  The *Perkins* Court's apparent assumption that birth equals

citizenship would of course, in a case like Ms. Elg's, a child born to a naturalized parent,

be entirely accurate.  *Perkins* provides no support for Plaintiffs' position.  Plaintiffs'

convenient failure to advise this Court of Elg's status as a native-born child of a citizen

is highly misleading, and that case does nothing to undercut the legality of the

challenged Executive Order.

## IV.    "BIRTHRIGHT CITIZENSHIP" VIOLATES THE TEXT AND THE ORIGINAL INTENT OF THE FOURTEENTH AMENDMENT.

As discussed *supra*, Plaintiffs' case rests almost entirely on the Supreme Court's

decision in *Wong Kim Ark*.  That decision limited the category of persons not "subject to

the jurisdiction" of the United States under the Fourteenth Amendment to children of

diplomats, of native Americans, and of foreign invaders born within the territory of the

United States.  *Wong Kim Ark* at 682.  That Court's rationale for this limitation is that

children who fall into these three categories do not, and are not expected to, form an

allegiance to the United States that would qualify them for citizenship merely by virtue of

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

physical birth on U.S. territory. While the Court's focus on allegiance was correct, it did not apply that principle thoughtfully as did the Framers of the Fourteenth Amendment. A review of Congress's Fourteenth Amendment deliberations demonstrates that children of foreign nationals are generally not entitled to citizenship.

### A.  The Text and Context.

Following the Civil War, Congress took action to overrule *Scott v. Sandford,* 60 U.S. 393 (1857) which held that slaves and their descendants, even as freedmen, were excluded from U.S. citizenship. Congress first moved to override *Dred Scott* by enacting the **Civil Rights Act of 1866**, which provided that "all persons born in the United States **and not subject to any foreign power**, excluding Indians not taxed, are hereby declared to be **citizens** of the United States." 14 *Stat.* 27. (emphasis added).

Due to concerns that the Supreme Court might rule the Civil Rights Act unconstitutional, or that a subsequent Congress might repeal the Act, Congress initiated the process required to amend the Constitution. *See* Raoul Berger, <u>Government by the Judiciary: The Transformation of the Fourteenth Amendment</u> (Liberty Fund: 1997) at 48. The resulting Fourteenth Amendment included this language:

> Section 1.  All persons born or naturalized in the United States, and **subject to the jurisdiction thereof**, are citizens of the United States and of the State wherein they reside....  No State shall ... deny to any person **within its jurisdiction** the equal protection of the law.

The language "**subject to the jurisdiction thereof**" in the Fourteenth Amendment is most important, and it is best understood as conveying the same meaning as the language "**and not subject to any foreign power**" as used in the Civil Rights Act of 1866.  Most countries claim as citizens those children born to parents who are their citizens.  Consequently, even if born on American soil, those children are

**subjects of a foreign power** and thus **not subject to the jurisdiction of the United States**.  That being the case, children born in the United States of parents who are not U.S. citizens have no lawful claim of citizenship simply because they are born in U.S. territory.

The Declaration of Independence not only freed the new country from the notion that persons born in America were British citizens with allegiance to England, it demonstrated the solemn, binding, and covenantal action undertaken on behalf of the people, which was later confirmed by the People's ratification of the Constitution which begins "We the People."

> We, therefore, the Representatives of the united States of America, in General Congress, Assembled, **appealing to the Supreme Judge of the world for the rectitude of our intentions**, do, in the Name, and by Authority of the good People of these Colonies, solemnly publish and declare, That these United Colonies are, and of Right ought to be **Free and Independent States**; that they are **Absolved from all Allegiance to the British Crown**, and that all political connection between them and the State of Great Britain, is and ought to be totally dissolved…. [Declaration of Independence (emphasis added).

The Declaration of Independence declared that Americans were shifting from their previous "**allegiance to the British Crown**" to allegiance to the new nation formed of "**Free and Independent States**."  Likewise, the ratification history of the Fourteenth Amendment discussed *infra*, that "**subject to the jurisdiction**" entails an obligation of allegiance to the United States and not simply an obligation of obedience to the laws of the United States.  The **obligation of allegiance** signified in the Citizenship Clause is different in kind from the **obligation** every person in the territory of the United States **to obey the laws** of the land.  Citizens subject to the jurisdiction of the United States are entitled to corresponding privileges and immunities of citizenship.  Constitution, Article

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 19

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

IV, Sect. 2, cl. 1.  On the other hand, all persons who "come within its jurisdiction" have a duty to obey the law, together with a corresponding right to the equal protection of the law.  The meaning of the phrase "subject to the jurisdiction" as used in the Fourteenth Amendment context is very different from the meaning of "within its jurisdiction."

### B.  Purpose and Drafting History of the Citizenship Clause.

The record of Congress's deliberations on the Fourteenth Amendment identifies the limited objective for which the Citizenship Clause was adopted — to reverse *Dred Scott* and to ensure that the citizenship of freedmen was recognized on the same basis as other Americans born in the United States.  The purpose was not to change the law regarding citizenship, but rather to affirm its proper understanding.  The deliberations specifically addressed the issue of children born in the United States to non-citizens and assumed that they did not qualify as natural born citizens.  It was understood by the Amendment's Framers that the best evidence that a person will bear true faith and allegiance to America is birth in the United States to American parents.

Republican Senator Jacob Howard of Michigan, who authored the Citizenship Clause, explained its meaning:

> This … is simply declaratory of what I regard as the law of the land already, that every person born within the limits of the United States, and subject to their jurisdiction, is by virtue of natural law and national law a citizen of the United States.  **This will not, of course, include persons born in the United States who are foreigners, aliens**, who belong to the families of ambassadors or foreign ministers accredited to the Government of the United States, but will include every other class of persons.  [Congressional Globe, 39th Cong, 1st Sess, 2890 (emphasis added).]

Senator Howard also explained what he meant by use of the term "jurisdiction":

> "jurisdiction" as here employed, ought to be construed so as to imply a **full and complete jurisdiction** on the part of the United States ... that is to say,

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 20

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

the **same jurisdiction in extent and quality** as applies to every **citizen** of the United States now.  [*Id.* at 2895 (emphasis added).]

Senator Lyman Trumbull of Illinois, Chairman of the Senate Judiciary Committee, concurred with Senator Howard regarding his characterization of the meaning of "jurisdiction":

> That means "subject to the complete jurisdiction thereof"....  **Not owing allegiance to anybody else**.  That is what it means....  It cannot be said of any [person] who owes allegiance, partial allegiance if you please, to some other Government that he is "subject to the jurisdiction of the United States...."
> It is only those persons who are completely within our jurisdiction, who are subject to our laws, that we think of making citizens; and there can be no objection to the proposition that such persons should be citizens.  [*Id.* at 2893 (emphasis added).]

Senator George Williams of Oregon concurred.

> In one sense, all persons born within the geographical limits of the United States, are subject to the jurisdiction of the United States, but **they are not subject to the jurisdiction of the United States in every sense**....  I understand the words here, "subject to the jurisdiction of the United States," to mean **fully and completely subject to the jurisdiction** of the United States.  [*Id.* at 2897 (emphasis added).]

Senator Edgar Cowan of Pennsylvania specifically expressed concern that the amendment should not be interpreted to grant citizenship to Chinese immigrant workers in California and went on to discuss the rights of travelers in the United States from foreign nations:

> If a **traveler** comes here from Ethiopia, from Australia, or from Great Britain, he is entitled to a certain extent, to the protection of the laws.  You cannot murder him with impunity.  It is murder to kill him, the same as it is to kill another man.  You cannot commit an assault and battery on him, I apprehend.  He has a right to the protection of the laws; but he is **not a citizen** in the ordinary acceptation of the word.  [*Id.* at 2890 (emphasis added).]

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 21

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

Before the debate on Senator Howard's proposal to add the qualifying phrase "subject to the jurisdiction thereof," Senator Saulsbury concisely stated the Senate's object with regard to this amendment, and in so doing, removed all doubt as to the limited purpose of the amendment as drafted.

> I do not presume that any one will pretend to disguise the fact that the object of this first section is simply to declare that negroes shall be citizens of the United States.  [*Id.* at 2897.]

Justice Peter Daniel, concurring in *Dred Scott*, provided a more complete explanation of the relationship between place of birth, parentage, and allegiance.

> "The natives, or natural-born citizens, are those born in the country, of parents who are citizens.  [A]s society cannot perpetuate itself otherwise than by the children of the citizens, those children naturally follow the condition of their parents, and succeed to all their rights."  Again: "I say, **to be of the country, it is necessary to be born of a person who is a citizen; for if he be born there of a foreigner, it will be only the place of his birth, and not his country.**  The inhabitants, as distinguished from citizens, are foreigners who are permitted to settle and stay in the country." (Vattel, Book 1, cap. 19, p. 101.)   [*Scott* at 476-77 (emphasis added).]

The legislative history of the Fourteenth Amendment clearly illuminates the Court's error in *Wong Kim Ark*, and counsels that this Court should avoid repeating it, and uphold President Trump's entirely lawful and constitutional Executive Order.  The English common law, on which *Wong Kim Ark*'s holding was expressly based, does not apply in the United States of America, and therefore provides no support for Plaintiffs' position.

## V.    PLAINTIFFS' CLAIM THAT BIRTHRIGHT CITIZENSHIP SHOULD BE HANDED OUT TO ALL CHILDREN OF ALIENS HAS BIZARRE RESULTS.

Plaintiffs entirely miss one of the most important aspects of Citizenship --- the **allegiance** that a person owes to his own country, sometimes described as loyalty or fidelity to the nation.  Most countries recognize citizenship based on the principle of *jus*

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

*sanguinis* — that a child acquires the citizenship of the child's natural parents.  *See* Edward J. Erler, <u>The Founders on Citizenship and Immigration</u> (Claremont Inst: 2007) at 28-29.  Thus, children born anywhere in the world to citizens of most other countries acquire the citizenship of their parents at birth.  Under Plaintiffs' notion of birthright citizenship — a term of recent origin that cannot be sourced to the Declaration, Constitution, or statute — almost all such children automatically would be citizens of multiple countries.  To which country do these children owe their allegiance?

The United States has long required naturalized citizens to swear off allegiance to all foreign sovereigns, but not so with those covered by Plaintiff's assertion of birthright citizenship.  Because most children born in the United States to parents with foreign citizenship are recognized as foreign nationals under international law, they are not any more "subject to the jurisdiction" of the United States than are the children of diplomats, Native Americans, or foreign invaders, who Plaintiffs concede cannot benefit from citizenship by birth alone.

The importance of allegiance is most acutely felt during time of war when the obligations of citizenship are most consequential.  An American citizen is "subject to the jurisdiction" of the United States and may be drafted into the military even if outside the country.  Citizens who take up arms against the United States may be prosecuted for treason.  U.S. Constitution Article III, Sect. 3.  Non-citizens who take up arms against the United States are prisoners of war if captured, and they are not subject to prosecution simply for waging war against the United States.  A person who is a citizen of two different countries that are at war will be placed in an untenable position.  The

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 23

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of counsel

problems that arise with dual citizenship were acutely felt by U.S. citizens who were impressed into service with the British navy leading up to the War of 1812.

Neither of the two categories of children born to aliens in the United States that are addressed by the Executive Order can be expected to demonstrate no allegiance to our nation.  First, those children born of parents who are not legally in the United States cannot be expected to be nurtured in the values of American citizenship by parents who entered the country illegally — being here not "subject to" but rather "in defiance of" our nation's laws.  Second are those children of parents, birth tourists, who travel to the United States for the purpose of giving birth and thereby obtaining cheap and easy citizenship for their children.  They too are unlikely to have any allegiance nurture their children in values of American citizenship.

Only those persons who can be expected to have a "**permanent allegiance**" to our country can become citizens, because based on that permanent allegiance, the country then owes to its citizens a reciprocal duty of protection.  No such relationship exists with the two classes of persons addressed by the EO:

> By **allegiance** is meant the obligation of **fidelity** and **obedience** which the **individual owes to the government** under which he lives, or to his sovereign **in return for the protection he receives**.  It may be an absolute and permanent obligation, or it may be a qualified and temporary one.  **The citizen or subject owes an absolute and permanent allegiance to his government** or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign.  **The alien, whilst domiciled in the country, owes a local and temporary allegiance**, which continues during the period of his residence.  [*Carlisle v. United States*, 83 U.S. 147, 154 (1872) (emphasis added).]

If *Wong Kim Ark* is read to support Plaintiffs' position, it contravenes common sense and our sense of justice.  According to the Plaintiffs' theory, under *Wong Kim Ark*,

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 24

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

a person born in the United States of alien parents is constitutionally entitled to American citizenship, whereas a person born outside the United States to American citizens is entitled to such citizenship only by statute.  Why should there be an irrebuttable legal presumption of allegiance in the former case, but not in the latter?

Under the Plaintiffs' theory of the case, children of the 9/11 hijackers, WWII German saboteurs, human traffickers, and imprisoned enemy combatants born on U.S. territory would be entitled to citizenship.[9]  Birth tourism from Turkey, China, Nigeria, and Mexico has received considerable attention.[10]  The problems associated with Plaintiffs' theory of birthright citizenship are exacerbated by statutes that facilitate immigration of lawfully naturalized citizens, known as "chain migration."

Plaintiffs' advocacy for automatic citizenship for children born to illegal aliens and birth tourists may further the policy objectives of globalists and the United Nations, which call for open migration,[11] but it defies common sense and undermines the nation-state and the concept of borders.

---

[9] *See, e.g.*, Office of the Inspector General, "A Review of the FBI's Handling of Intelligence Information Prior to the September 11 Attacks," ch. 5 (Nov. 2004); H. Ardman, "World War II: German Saboteurs Invade America in 1942," *History.net* (June 12, 2006); U.S. Department of Justice, "Two sent to prison for roles in cartel-linked human smuggling scheme," (Oct. 30, 2024); U.S. Department of Justice, "Fact Sheet: Prosecuting and Detaining Terror Suspects in the U.S. Criminal Justice System," (June 9, 2009).
[10] *See e.g.*, J. Feere, "Birthright Citizenship in the United States: A Global Comparison," *Center for Immigration Studies* (Aug. 31, 2010); I. Egrikavuk, "Birth tourism in U.S. on the rise for Turkish parents," *Hurriyet Daily News* (Mar. 12, 2010); K. Richburg, "For many pregnant Chinese, a U.S. passport for baby remains a powerful lure," *Washington Post* (July 18, 2010); D. Iriekpen, "Citizenship Rights: American Agitations Threaten a Nigerian Practice," *This Day* (Aug. 16, 2010); N. Nnorom, "Birthright citizenship: Nigerians in diaspora kick, say Trump's action illegal," *Vanguard* (Jan. 23, 2025).
[11] *See* UN's Global Compact for Safe, Orderly and Regular Migration (GMC), but even that compact is voluntary, and states that it "respects states' sovereign right to determine who enters and stays in their territory…."

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 25

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

1

**CONCLUSION**

2
    Plaintiffs' Motion for a Preliminary Injunction should be denied, and President

3
Trump should be dismissed as a party defendant.

4

5
DATED this 31st day of January, 2025.

6
                                            Respectfully submitted,

7
                                            ___/s/ Richard B. Sanders____

8
WILLIAM J. OLSON                            RICHARD B. SANDERS, WSBA #2813
JEREMIAH L. MORGAN                          LAND USE AND PROPERTY LAW, PLLC
9
WILLIAM J. OLSON, P.C.                       6659 Kimball Dr., Ste. B-201
370 Maple Avenue West, Ste. 4               Gig Harbor, WA 98335
10
Vienna, VA 22180                            (253) 853-1806
(540) 450-8777                              richard@landuselawwa.com
11
wjo@mindspring.com                          *Counsel for Amici*
                                            *America's Future, et al.*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 26

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel

**Certificate of Service**

I hereby certify that I served the foregoing Brief *Amicus Curiae* of America's

Future, et al., in Opposition to Plaintiffs' Motion for Preliminary Injunction on counsel for

the parties using the Court's Electronic Case Filing system.


January 31, 2025                                    */s/ Richard B. Sanders*
                                                    Richard B. Sanders

AMERICA'S FUTURE, ET AL. *AMICUS* BRIEF;
CASE NO. 2:25-CV-00127-JCC – PAGE 27

LAND USE & PROPERTY LAW, PLLC
6659 Kimball Drive, Suite B-201
Gig Harbor, WA  98335
Phone: 253-853-1806
Jane Koler – Richard Sanders of Counsel