The Honorable Judge John C. Coughnour

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., | Case No.: 2:25-cv-00127-JCC |
| *Plaintiffs*, | |
| v. | BRIEF AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF |
| DONALD TRUMP, in his official capacity as President of the United States, et al. | |
| | NOTING DATE: FEBRUARY 3, 2025 |
| *Defendants*. | |

BRIEF OF AMICUS CURIAE
IN SUPPORT OF DEFENDANTS
CASE NO. 2:25-CV-00127-JCC

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVE., NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTEREST OF *AMICUS CURIAE* .......................................................................................... 1

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

I.   Legal Standard for a Preliminary Injunction ..................................................................... 2

II.  Plaintiffs Cannot Establish a Likelihood of Success on the Merits ................................... 3

III. Granting Injunctive Relief to Plaintiffs is Contrary to the Public Interest ......................... 9

CONCLUSION .......................................................................................................................... 11

BRIEF OF AMICUS CURIAE                          IMMIGRATION REFORM LAW INSTITUTE
IN SUPPORT OF DEFENDANTS                              25 MASSACHUSETTS AVE., NW
CASE NO. 2:25-CV-00127-JCC                                                    SUITE 335
                                                                  WASHINGTON, DC 20001
                                                                    TEL. (202) 232-5590

i

# TABLE OF AUTHORITIES

**Cases**
*Elk v. Wilkins*, 112 U.S. 94 (1884)..................................................................................................6
*Fong Yue Ting v. United States*, 149 U.S. 698 (1893).................................................................6, 7
*Jackson v. Virginia*, 443 U.S. 307 (1979).........................................................................................8
*Minor v. Happersett*, 88 U.S. 162 (1874) .........................................................................................7
*Plyler v. Doe*, 457 U.S. 202 (1982)...................................................................................................9
*United States v. Salerno*, 481 U.S. 739 (1987) ................................................................................9
*United States v. Wong Kim Ark*, 169 U.S. 649 (1898)............................................2, 4, 6, 7, 8, 9, 10
*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. (2008) .............................................................2
*AFSCME Council 79 v. Scott*, 717 F.3d 851 (11th Cir. 2013)..........................................................7
*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) ........................6,7

**Statutes**
U.S. CONST. amend. XIV, § 1...........................................................................................................2
110 Stat. 3009-546 (1996) ...............................................................................................................10
66 Stat. 163 (1952)...........................................................................................................................10

**Other Authorities**
*Black's Law Dictionary* (1891).........................................................................................................6
*The Concise Oxford Dictionary of Current English* 825 (7th ed. 1919) .........................................6
*Webster's International Dictionary of the English Language* (Noah Porter ed., G. & C. Merriam Co. (1890))....................................................................................................................................6

**Rules**
*Exec. Order No. 13989*, 85 Fed. Reg. 512 (2025) ...........................................................................1

BRIEF OF AMICUS CURIAE                                    IMMIGRATION REFORM LAW INSTITUTE
IN SUPPORT OF DEFENDANTS                                            25 MASSACHUSETTS AVE., NW
CASE NO. 2:25-CV-00127-JCC                                                                        SUITE 335
                                                                                    WASHINGTON, DC 20001
                                                                                       TEL. (202) 232-5590

## **INTEREST OF** *AMICUS CURIAE*

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).[1]

## **INTRODUCTION**

On January 20, 2025, President Donald J. Trump signed an executive order titled "Protecting the Value of United States Citizenship" ("EO"). This order provides that:

> United States citizenship does not automatically extend to persons born in the United States: (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa) and the father was

---

[1] No counsel for a party authored this brief in whole or in part and no person or entity, other than amicus curiae, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

| | |
|---|---|
| BRIEF OF AMICUS CURIAE | IMMIGRATION REFORM LAW INSTITUTE |
| IN SUPPORT OF DEFENDANTS | 25 MASSACHUSETTS AVE., NW |
| CASE NO. 2:25-CV-00127-JCC | SUITE 335 |
| | WASHINGTON, DC 20001 |
| | TEL. (202) 232-5590 |

not a United States citizen or lawful permanent resident at the time of said person's birth.

*Exec. Order No. 13989*, 85 Fed. Reg. 512 (2025). It then directs the relevant federal agencies to "take all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order, and that no officers, employees, or agents of their respective departments and agencies act, or forbear from acting, in any manner inconsistent with this order." *Id.* Plaintiffs have filed suit in response to the EO, seeking a preliminary injunction on the grounds that the order, on its face, violates the Citizenship Clause of the Fourteenth Amendment.

Plaintiffs' claim is without merit. The Supreme Court, in the 1898 case *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), held that children born in the United States to non-citizen aliens are only citizens by birth if their parents, at their birth, resided in the United States with permission. And, because Plaintiffs' claim presents a facial challenge to the EO, Plaintiffs bear the burden of showing that "no set of circumstances exists under which [it] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Under the controlling precedent of *Wong Kim Ark*, the EO is valid as applied in innumerable situations, such as to children of illegal aliens. Plaintiffs' facial challenge thus fails, and injunctive relief should be denied.

BRIEF OF AMICUS CURIAE
IN SUPPORT OF DEFENDANTS
CASE NO. 2:25-CV-00127-JCC

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVE., NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

2

# ARGUMENT

## I.     Legal Standard for a Preliminary Injunction

A preliminary injunction is an extraordinary legal remedy that is only granted when the requesting party demonstrates a need for such relief. A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm without such preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The burden of proof rests with the movant, who must demonstrate a substantial likelihood of prevailing on the underlying claim, and that, absent the requested relief, the movant will suffer irreparable harm that is both imminent and not compensable through monetary damages. *Id.* at 22. Courts must weigh the competing equities between the parties, and assess whether granting injunctive relief aligns with broader public policy considerations. *Id.* at 24.

Here, Plaintiffs cannot succeed on the merits of their claims. In addition, preliminarily enjoining the EO would be contrary to the public interest.

## II.    Plaintiffs Cannot Establish a Likelihood of Success on the Merits

The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are

BRIEF OF AMICUS CURIAE  
IN SUPPORT OF DEFENDANTS  
CASE NO. 2:25-CV-00127-JCC

IMMIGRATION REFORM LAW INSTITUTE  
25 MASSACHUSETTS AVE., NW  
SUITE 335  
WASHINGTON, DC 20001  
TEL. (202) 232-5590

3

citizens of the United States." U.S. CONST. amend. XIV, § 1. The 1898 case *United States v. Wong Kim Ark* is often read as standing for, and indeed establishing, the widespread view that anyone born on American soil, at least to parents who are not members of a foreign country's diplomatic delegation, part of an invading force, or Indians born in the allegiance of a tribe, enjoys birthright citizenship by virtue of this clause. *United States v. Wong Kim Ark*, 169 U.S. 649 (1898). In fact, however, a careful reading of the case reveals its true holding to be, though broad, not as extreme as the conventional view: to have citizenship at birth under the Citizenship Clause, one must be born in the geographic confines of the United States to a person who, at the time of one's birth, resided with permission in the United States.

At issue in *Wong Kim Ark* was whether a son born to Chinese subjects while they were lawfully residing in the United States was a citizen at birth by virtue of the Citizenship Clause. The Court found that he was, explaining:

> The Fourteenth Amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes. The Amendment, in clear words and in manifest intent, includes the children born, within the territory of the United States, of all other persons, of whatever race or color, domiciled within the United States. Every citizen or subject of another country, while domiciled here, is *within the allegiance and the protection, and consequently subject to the jurisdiction, of the United*

> *States*. His allegiance to the United States is direct and immediate, and although but local and temporary, continuing only so long as he remains within our territory, is yet, in the words of Lord Coke, in Calvin's Case, 7 Rep. 6a, "strong enough to make a natural subject, for if he hath issue here, that issue is a natural-born subject;" and his child, as said by Mr. Binney in his essay before quoted, "if born in the country, is as much a citizen as the natural-born child of a citizen, and by operation of the same principle." It can hardly be denied that an alien is completely subject to the political jurisdiction of the country in which he resides—seeing that, as said by Mr. Webster, when Secretary of State, in his Report to the President on Thrasher's Case in 1851, and since repeated by this court, "independently of a residence with intention to continue such residence; independently of any domiciliation; independently of the taking of any oath of allegiance or of renouncing any former allegiance, it is well known that, by the public law, an alien, or a stranger born, for so long a time as he continues within the dominions of a foreign government, owes obedience to the laws of that government, and may be punished for treason, or other crimes, as a native-born subject might be, unless his case is varied by some treaty stipulations." Ex. Doc. H.R. No. 10, 1st sess. 32d Congress, p. 4; 6 Webster's Works, 526; United States v. Carlisle, 16 Wall. 147, 155; Calvin's Case, 7 Rep. 6a; Ellesmere on Postnati, 63; 1 Hale P.C. 62; 4 Bl. Com. 74, 92.

*Id.* at 693-94 (1898) (emphasis added). The Court then added an important proviso, in which it conformed its reasoning to an earlier case:

> Chinese persons, born out of the United States, remaining subjects of the Emperor of China, and not having become citizens of the United States, are entitled to the protection of and owe allegiance to the United States, *so long as they are permitted by the United States to reside here*; and are "subject to the jurisdiction thereof," in the same sense as all other aliens [lawfully] residing in the United States.

BRIEF OF AMICUS CURIAE
IN SUPPORT OF DEFENDANTS
CASE NO. 2:25-CV-00127-JCC

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVE., NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

5

*Id.* at 694 (emphasis added) (citing, *inter alia, Fong Yue Ting v. United States*, 149 U.S. 698, 724 (1893)). *See, e.g., The Concise Oxford Dictionary of Current English* 825 (7th ed. 1919) (defining "so long as" as "with the proviso, on the condition, that").

The phrase "subject to the jurisdiction thereof," then, as used in the Citizenship Clause, refers not merely to being subject to the laws of the United States. Rather, it connotes being subject to the nation's political jurisdiction, and "owing it direct and immediate allegiance." *Wong Kim Ark*, 169 U.S. at 680 (citing *Elk v. Wilkins*, 112 U.S. 94, 101-102 (1884)). As the Court earlier had held, in a passage cited in the above holding of *Wong Kim Ark*:

> Chinese laborers, [] like all other aliens residing in the United States for a shorter or longer time, are entitled, *so long as they are permitted by the government of the United States to remain in the country*, to the safeguards of the Constitution, and to the protection of the laws, in regard to their rights of person of property, and to their civil and criminal responsibility.

*Fong Yue Ting*, 149 U.S. at 724 (emphasis added).

"Reside" is defined in the 1890 edition of *Webster's Dictionary* as "to dwell permanently or for a considerable time; to have a settled abode for a time; to abide continuously; to have one's domicile or home." *Webster's International Dictionary of the English Language* (Noah Porter ed., G. & C. Merriam Co. (1890). *Black's Law Dictionary* (1891) defines "permission" as "[a] license to do a thing; leave to do something which otherwise a person would not have the right to do." Thus, as used in

BRIEF OF AMICUS CURIAE
IN SUPPORT OF DEFENDANTS
CASE NO. 2:25-CV-00127-JCC

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVE., NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

6

*Wong Kim Ark*, the phrase "permitted to reside" applied to Chinese nationals, and also aliens of nationalities other than Chinese, who resided here without being prohibited from doing so.

Not to regard the Court as holding permission to reside in the country to be a prerequisite for being subject to the jurisdiction of the United States for Citizenship Clause purposes would be to truncate the reasoning the Court gave for its judgment, ignore the precedents it cited, and make nonsense of its opinion. For example, the Court would then have left open the possibility (which it explicitly foreclosed, and had earlier foreclosed, *Fong Yue Ting*, 149 U.S. at 724) that those residing in the country while being prohibited from doing so were within the allegiance and protection of the United States, and thus subject to its jurisdiction. Indeed, an illegal alien, subject to apprehension, detention, and removal at all times, is hardly within the "protection" of the United States, as the phrase "allegiance and protection" has always been understood. *See, e.g., Minor v. Happersett*, 88 U.S. 162, 165-66 (1874) ("The very idea of a political community, such as a nation is, implies an association of persons for *the promotion of their general welfare*. Each one of the persons associated becomes a member of the nation formed by the association. He owes it allegiance and is entitled to its protection.") (emphasis added).

BRIEF OF AMICUS CURIAE  
IN SUPPORT OF DEFENDANTS  
CASE NO. 2:25-CV-00127-JCC

IMMIGRATION REFORM LAW INSTITUTE  
25 MASSACHUSETTS AVE., NW  
SUITE 335  
WASHINGTON, DC 20001  
TEL. (202) 232-5590

7

The Court's proviso requiring lawfully permitted residence is clearly part of its holding, not dicta, under the principle that the Supreme Court may set forth a standard as part of its holding in a case even when the Court finds that the standard has been met in that case. *See, e.g., Jackson v. Virginia*, 443 U.S. 307 (1979) (holding that a federal court hearing habeas corpus must consider whether there was legally sufficient evidence to support a conviction, not just whether there was some evidence, and finding that the prosecution had met the former, higher standard).

Likewise, *Wong Kim Ark* did not leave open the question of whether persons born in this country to persons who did *not* lawfully reside in the country were birthright citizens, merely because Wong Kim Ark's parents lawfully resided here. Rather, the standard it announced and applied, which implies that those born in this country to illegal aliens, tourists, and others who do not lawfully reside here are not birthright citizens, was and is part of the Court's holding, even though the Court found that Wong Kim Ark met that standard. (Wong Kim Ark's parents lawfully resided in the United States from 1873 until their return to China in 1890. 169 U.S. at 652-53.)  Any view of "holding" that is more restrictive, at least if applied to the Supreme Court, would rob the Court of its ability to set forth general principles of law to guide lower courts in any case where the general principle it discerned happened to be met.

BRIEF OF AMICUS CURIAE
IN SUPPORT OF DEFENDANTS
CASE NO. 2:25-CV-00127-JCC

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVE., NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

8

It is true that the Court in *Wong Kim Ark* stated (in dicta) that "jurisdiction" had a unitary meaning in the Fourteenth Amendment. 169 U.S. at 687. It is also true that "jurisdiction" for purposes of the Equal Protection Clause was later held to be merely geographical. *Plyler v. Doe*, 457 U.S. 202, 215 (1982). But it cannot be concluded that the *Plyler* holding alters *Wong Kim Ark*'s holding that an alien, to be subject to the jurisdiction of the United States under the Citizenship Clause, must be permitted to reside in the country. *A fortiori, Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

It follows, then, that the EO has innumerable valid applications, including to children born to illegal aliens, tourists, and others who do not lawfully reside in the United States. Therefore, Plaintiffs' facial challenge must fail. *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."); *see also AFSCME Council 79 v. Scott*, 717 F.3d 851, 857-858 (11th Cir. 2013) (applying the rule of *Salerno* to a facial challenge to an executive order).

BRIEF OF AMICUS CURIAE
IN SUPPORT OF DEFENDANTS
CASE NO. 2:25-CV-00127-JCC

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVE., NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

9

### III. Granting Injunctive Relief to Plaintiffs is Contrary to the Public Interest.

The prevailing practice of granting birthright citizenship to all persons born in the United States (with a few exceptions, such as children born to diplomats) is not only a fatal misreading (at best) of *Wong Kim Ark*, but it has a result fundamentally at odds with one of the primary purposes of United States immigration law since at least the Immigration and Nationality Act of 1952, which has been to formalize the process by which foreign nationals obtain legal status in the United States and to prevent illegal immigration. *Immigration and Nationality Act*, Pub. L. No. 82-414, 66 Stat. 163 (1952); *Illegal Immigration Reform and Immigrant Responsibility Act of 1996*, Pub. L. No. 104-208, div. C, 110 Stat. 3009-546.

Granting birthright citizenship according to Plaintiffs' theory undermines the structural purpose of differentiating between legal and illegal immigration status in U.S. law by rewarding unlawful entry and presence. It incentivizes birth tourism, which reduces citizenship to a mere collection of material and social benefits rather than a reciprocal civic responsibility. Additionally, it serves as a magnet for illegal immigration, placing pregnant mothers at risk as they travel to the United States with the expectation of securing citizenship for their children.

Finally, such an expansive grant of birthright citizenship endangers an orderly legal immigration process by which the American people welcome newcomers who

BRIEF OF AMICUS CURIAE
IN SUPPORT OF DEFENDANTS
CASE NO. 2:25-CV-00127-JCC

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVE., NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

10

respect the rule of law and seek to take on the responsibilities of lawful residence or citizenship. United States citizenship is indeed "a most precious right," Complaint at 6, which is precisely why it should not be granted indiscriminately as a reward to those who either violate our laws or are merely visiting.

BRIEF OF AMICUS CURIAE
IN SUPPORT OF DEFENDANTS
CASE NO. 2:25-CV-00127-JCC

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVE., NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

11

# CONCLUSION

For the foregoing reasons, Plaintiffs' request for a preliminary injunction should be denied.

Dated: **February 3, 2025**

    Respectfully submitted,

**SNYDER LAW FIRM, LLC**

**/S/ KLAUS O. SNYDER**

---

**KLAUS O. SNYDER**, WSBA# 16195
Co-Counsel for Amicus,
*IMMIGRATION REFORM LAW INSTITUTE*
SNYDER LAW FIRM LLC
15306 MAIN STREET E, SUITE B
SUMNER WA 98390-2640
(253) 863-2889 - FAX: (253) 863-1483
Klaus.Snyder@sumnerlawcenter.com


CHRISTOPHER J. HAJEC*
D.C. Bar No. 492551
GABRIEL R. CANAAN*
D.C. Bar No. 90025172
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
gcanaan@irli.org

* pending *pro hac vice* admission
Counsel for *Amicus Curiae*
Immigration Reform Law Institute

BRIEF OF AMICUS CURIAE
IN SUPPORT OF DEFENDANTS
CASE NO. 2:25-CV-00127-JCC

IMMIGRATION REFORM LAW INSTITUTE
25 MASSACHUSETTS AVE., NW
SUITE 335
WASHINGTON, DC 20001
TEL. (202) 232-5590

12