THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, *et al.*,<br><br>Defendants. | CASE NO. C25-0127-JCC<br><br>ORDER |

This matter comes before the Court on the Plaintiff States' motion for preliminary injunction (Dkt. No. 63) and the Individual Plaintiffs' supplemental motion for the same (Dkt. No. 74). Having thoroughly considered the parties' briefing and the relevant record, and having heard the parties' oral argument, the Court hereby GRANTS the motions for preliminary injunction (Dkt. Nos. 63, 74) for the reasons explained herein.[1]

[1] Because this order grants an interlocutory injunction, the Court must make findings of fact and conclusions of law. Fed. R. Civ. P. 52(a)(2). The Court therefore makes such findings and conclusions via this order, which serves as a memorandum of the Court's decision. *See* Fed. R. Civ. P. 52(a)(1) (the findings of fact and conclusions of law "may appear in an opinion or a memorandum of decision filed by the court"); *see also FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1109 (9th Cir. 1982) (explicit factual findings are unnecessary); *Riverside Publishing Co. v. Mercer Publishing LLC*, 2011 WL 3420421, slip op. at 1 (W.D. Wash. 2011) (same).

## I. BACKGROUND

On January 20, 2025, President Trump issued an Executive Order ("Order") entitled "Protecting the Meaning and Value of American Citizenship." (Dkt. No. 12-1.) In it, the President stated that "the privilege of United States citizenship does not automatically extend to persons born in the United States." (*Id.* at 3.) Instead, the President explained that birthright citizenship does not apply to two categories of newborns depending on the status of their parents: (1) those born to a mother who is "unlawfully present" in the United States and whose father is not a United States citizen or lawful permanent resident ("LPR") at the time of birth, and (2) those born to a mother whose presence in the United States is "lawful but temporary" and whose father is not a United States citizen or LPR at the time of birth. (*Id.*) The Order then declares it the policy of the United States not to "issue documents recognizing citizenship, or accept documents issued by State, local, or other governments or authorities purporting to recognize United States citizenship" to the aforementioned categories of persons. (*Id.*) This policy is effective February 19, 2025. (*See id.* at 4.) Nevertheless, the Order further directs the "heads of all executive departments and agencies" to "issue public guidance within 30 days of the date of this order regarding this order's implementation with respect to their operations and activities." (*Id.*)

On January 21, 2025, the states of Washington, Arizona, Illinois, and Oregon ("Plaintiff States") filed a complaint against the Government seeking declaratory and injunctive relief. (Dkt. No. 1 at 1.) In it, they argued that the Order violates the Citizenship Clause of the Fourteenth Amendment and the Immigration and Nationality Act (INA), 8 U.S.C. § 1401. (*Id.* at 28–29.) The Plaintiff States then moved for a temporary restraining order to enjoin the Order, in its entirety. (Dkt. No. 10 at 30.) The Court granted the motion on January 23, 2025. (Dkt. No. 43.) That same day, the Court set a briefing schedule and preliminary injunction hearing. (Dkt. No.

44.) The next day, Delmy Franco Aleman, Cherly Norales Castillo, and Alicia Chavarria Lopez[2] ("Individual Plaintiffs") filed suit, lodging similar arguments and seeking similar relief as the Plaintiff States. (*See* Dkt. No. 56 at 2.) The Court consolidated the Individual Plaintiffs' suit with the present action and provided them an opportunity to submit supplemental briefing regarding the preliminary injunction. (*See id.* at 3.) The Plaintiff States' and the Individual Plaintiffs' respective motions for preliminary injunction are now pending before this Court. (*See* Dkt. Nos. 63, 74.)

## II. DISCUSSION

### A. Threshold Matters

Before reaching the criteria for a preliminary injunction, the Government raises two threshold challenges. First, the Government argues that the Plaintiff States' lack standing to bring this lawsuit. (Dkt. No. 84 at 20–26.) Second, the Government contends that both sets of Plaintiffs have failed to assert valid causes of action. (*Id.* at 28–30.) The Court takes each challenge in turn.

#### 1. Standing

Though the Court has already concluded that the Plaintiff States have standing, (*see* Dkt. No. 43 at 2), it reaffirms that conclusion here. To establish Article III standing, a plaintiff must demonstrate that they have suffered a concrete "injury in fact" that is traceable to the defendant and likely redressable by judicial relief. *Washington v. U.S. Food & Drug Administration*, 108 F.4th 1163, 1172 (9th Cir. 2024) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

Here, the Order subjects the Plaintiff States to direct and immediate economic and administrative harms. (Dkt. No. 63 at 12.) That is, the Order would force the Plaintiff States to disqualify many individuals it currently deems citizens, and such disqualification would result in

---

[2] All of whom are pregnant noncitizens living in the United States with due dates more than 30 days following the Order. *See* C25-0163-JCC, Dkt. No. 1 at 13–15. In a later-filed amended consolidated complaint (Dkt. No. 106), the Plaintiffs note that Delmy Franco Aleman has chosen to withdraw from the case. (*Id.* at 3–4 n. 2.)

the States' significant loss of federal funds for which they are otherwise eligible. (*See id.* at 13.) It would also impose "significant operational disruptions and administrative burdens within state agencies and state-run-healthcare facilities as they try to navigate the chaos and uncertainty the [Order] creates." (*Id.* at 14; *see also* Dkt. Nos. 14 at 12; 15 at 9; 25 at 5; 26 at 4, 6) (documenting burdens on state agencies). This is more than sufficient to satisfy Article III standing. *See Biden v. Nebraska*, --- U.S. ---, 143 S. Ct. 2355, 2365–66 (2023) (Missouri had standing to sue the federal government where federal action cancelling student loans would cost Missouri millions "in fees that it otherwise would have earned under its contract with the Department of Education"); *see also City and Cnty. of San Francisco v. United States Citizenship and Immigration Servs.*, 944 F.3d 773, 787–88 (9th Cir. 2019) (states had standing to challenge federal government where federal action would have encouraged aliens to disenroll from public benefits, which would have resulted in a reduction in Medicaid reimbursement payments to the States of about $1.01 billion and increased administrative costs).[3]

2. Cause of Action

The Government argues that the Plaintiffs lack a valid cause of action. (Dkt. No. 84 at 26–30.) But the Plaintiffs maintain a valid cause of action by nature of the equitable relief they seek in response to the statutory and constitutional violations they allege. Federal courts are courts of equity that are tasked with upholding the rule of law. *Cf. Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015). Indeed, "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Id.* at 327. "'[I]n a proper case, relief may be given in a court of equity . . . to prevent an injurious act by a public officer.'"

---

[3] Finally, though the Government does not challenge standing for the Individual Plaintiffs, (*see generally* Dkt. No 84 at 28), the Court nevertheless confirms that they, too, have standing to bring this lawsuit. They are pregnant noncitizens whose children will be deprived of United States citizenship if the Order goes into effect. (*See* Dkt. Nos. 59 at 2–3, 60 at 2–3, 61 at 2–3) (the Individual Plaintiffs fall into the category of persons for which the Order applies, and their due dates come after the effective date of the Order). As such, their harms are directly traceable to the Order.

*Id.* (quoting *Carrol v. Safford*, 3 How. 441, 463 (1845)). As such, a party may seek to enjoin acts of a public officer that run counter to statute. *See Sierra Club v. Trump*, 929 F.3d 670, 696 (9th Cir. 2019). Similarly, because a public officer's unconstitutional acts are particularly injurious, a court may provide equitable relief under that principle alone. *See id.* at 694. Different standards apply to suits for damages, of course. *See DeVillier v. Texas*, 601 U.S. 285, 292 (2024). But the Plaintiffs here do not seek damages; they seek declaratory and injunctive relief. (Dkt. No. 106 at 42.) Therefore, because they have standing, this Court may review the Order and, if it is illegal under the Constitution or the INA, enjoin its enforcement.[4]

**B. Preliminary Injunction**

A preliminary injunction is an extraordinary remedy and is never available as a matter of right. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). Therefore, the burden is on the moving party to establish that (1) it is likely to succeed on the merits, (2) irreparable harm is likely to occur absent preliminary relief, (3) the balance of equities tips in the movant's favor, and (4) an injunction is in the public interest. *Id.* at 20. Moreover, in the Ninth Circuit, a preliminary injunction may be appropriate where the moving party establishes "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable harm and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

---

[4] The Government also argues in its response brief that the President should be dismissed from this case as immune from the injunctive relief the Plaintiffs seek. (Dkt. No. 84 at 58) (citing *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992)). Such a request, buried in a response brief, is procedurally deficient. *See* LCR 7(b)(1); *see also Kujat v. Harbor Freight Tools USA, Inc.*, 2010 WL 3463928, slip op. at 2 (E.D. Mich. 2010) (it is "procedurally improper . . . [to] raise in a response brief what is essentially a Rule 12(b)(6) motion"); *Cooper Lighting, LLC v. Cordelia Lighting, Inc.*, 2018 WL 11350387, slip op. at 5 (N.D. Ga. 2018) (similar holding).

1. Success on the Merits

The Plaintiffs are likely to succeed on their claim that the Order violates the Citizenship Clause of the Fourteenth Amendment (and, in turn, the INA). Indeed, the Court need only look to its text. The Citizenship Clause is clear: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1, cl. 1. In other words, any individual who is born in the territorial United States or properly naturalized according to federal procedures is a citizen of this country.

The Government, for its part, relies on the provision of the Citizenship Clause that conditions citizenship upon being "subject to the jurisdiction" of the United States. (Dkt. No. 84 at 31–36.) That is, the Government argues that "children born in the United States of illegal aliens or temporary visitors" are not "subject to the jurisdiction of the United States," and therefore cannot be considered birthright citizens. (*Id.* at 31.) Its logic proceeds as follows. First, the Government contends that a person is "subject to the jurisdiction" of the United States if that person is born "'in the allegiance and under the protection of the country.'" (*Id.* at 33) (citing *United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1898)). It then explains that such allegiance and protection exist for a person "only if [they are] not subject to the jurisdiction of a foreign power, and the 'nation' has 'consent[ed]' to [that person] becoming part of its own 'jurisdiction.'" (*Id.*) (citing *Elk v. Wilkins*, 112 U.S. 94, 101–02 (1884)). The Government further explains that a person owes "allegiance" to the country in which they are "domiciled," and because a child's domicile "'follow[s] the independent domicile of [their] parent,'" so, too, must a child's "allegiance." (*Id.* at 37) (quoting cases). In turn, the Government reasons that because "[t]emporary visitors and unlawfully present aliens" are not "domiciled" here, their children born on our soil must not owe "allegiance" to this country, and therefore are not "subject to [its] jurisdiction" (as that phrase is contemplated by the Citizenship Clause). (*Id.*) But the Government accords more meaning to the phrase "subject to the jurisdiction" than those words or precedent support.

In interpreting the text of the Constitution, courts are "guided by the principle that '[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.'" *District of Columbia v. Heller*, 544 U.S. 570, 576 (2008) (quoting *United States v. Sprague*, 282 U.S. 716, 731 (1931)). Here, the Government interprets the phrase "subject to the jurisdiction" beyond its normal and ordinary meaning. For one, the Government insinuates that "subject to the jurisdiction" conditions citizenship upon the *exclusive* jurisdiction of the United States. (*See* Dkt. No. 84 at 33) (stating that allegiance exists only if a person is not subject to the jurisdiction of a foreign power). But the text of the phrase requires no such exclusivity; it requires only that the person born in the United States be subject to it. *See* Michael D. Ramsey, *Originalism and Birthright Citizenship*, 109 Geo. L.J. 405, 446 (2020).

The Government also contends that whether a person born in the territorial United States is "subject to its jurisdiction" ultimately turns on the legal status of the person's parents and their allegiance to and domicile in this country. But the words "allegiance" and "domicile" do not appear in the Citizenship Clause, or anywhere in the Fourteenth Amendment, and nowhere in the text does it refer to a person's parentage. The Clause merely refers to "jurisdiction," and the word "jurisdiction" is commonly understood in this context to be "a geographic area within which political or judicial authority may be exercised." *Jurisdiction*, Black's Law Dictionary (12th ed. 2024); *see also The Schooner Exch. v. McFaddon*, 11 U.S. 116, 136 (1812) ("The jurisdiction of the nation within its own territory is necessarily exclusive and absolute"). Thus, anyone who answers to the political or judicial authority of the United States is "subject to [its] jurisdiction." That is the plain meaning of the phrase "subject to the jurisdiction," and it unequivocally applies to children born in the territorial United States—regardless of the immigration status of their parents.

The Government's interpretation also contravenes longstanding precedent. Indeed, the Supreme Court addressed the meaning of the phrase "subject to the jurisdiction thereof" in the seminal case *Wong Kim Ark*. *See generally* 169 U.S. at 649–705. There, the Supreme Court

concluded that a child born in California to Chinese nationals, nevertheless acquired United States citizenship at birth under the Fourteenth Amendment. *Id.* at 705. To reach that conclusion, the Supreme Court exhaustively canvassed English common law,[5] early American decisions,[6] and citizenship's meaning to the Fourteenth Amendment's drafters.[7] It also clearly explained that the phrase "subject to the jurisdiction thereof" was an extremely narrow qualification that only excepted three specific classes of person: "children of members of the Indian tribes, . . . children born of alien enemies in hostile occupation, and children of diplomatic representatives of a foreign state." *Id.* at 682.[8] And to further emphasize the narrowness of the qualifications imbued

---

[5] *See, e.g., id.* at 657–58 (citing A.V. Dicey for the proposition that only two types of persons born in British dominions were not British: those born to ambassadors and those born to hostile invaders).

[6] *See, e.g., id.* at 674 (noting that *Lynch v. Clarke*, 1 Sandf. Ch. 583 (1844), "emphatically asserted the citizenship of native-born children of foreign parents").

[7] *See, e.g., id.* at 698–99. To the extent they are useful, the Senate debates indicate that the Citizenship Clause drafters understood the phrase "subject to the jurisdiction thereof" to apply broadly to immigrants and their children. *See* Ramsey, *supra*, at 445–50. Indeed, like the Government here, opponents of the proposed Citizenship Clause worried that it would confer citizenship upon children born on U.S. soil to immigrant parents. Cong. Globe, 39th Cong., 1st Sess. 2891 (remarks of Sen. Cowan). Proponents defended the language. *Id.* at 2891 (remarks of Sen. Conness), 2893 (Sen. Johnson), 2897 (Sen. Williams). But both sides seemed to agree that the Clause would broadly confer citizenship on these persons. *See* Ramsey, *supra*, at 447–50; *see also* James Ho, *Birthright Citizenship, the Fourteenth Amendment, and State Authority*, 42 U. Rich. L. Rev. 969, 972 (2008). The opponents lost and the Fourteenth Amendment was ratified, with the Citizenship Clause intact.

[8] Of course, this exception for Native American children no longer applies. But at the time, in deciding *Wong Kim Ark*, the Supreme Court also confronted its decision in *Elk*. In doing so, the *Wong Kim Ark* court clarified that *Elk*'s holding was limited only to be that "an Indian born a member of one of the Indian tribes . . . was not a citizen of the United States." 169 U.S. at 680. Congress has since abrogated *Elk* and expanded citizenship to Native American children via statute. *See* 8 U.S.C. § 1401(b) (1924).

To that effect, the Government's reliance on *Elk*, (*see, e.g.,* Dkt. No. 84 at 15–16, 31, 33–38), as well as on Senate debates around Native American citizenship generally, (*id.* at 34–35), are simply unfounded. The questions addressed there were more difficult than the question about immigrant parents due to the tribes' "peculiar relation to the national government" as independent sovereigns. *Wong Kim Ark*, 169 U.S. at 682; *see also* Garrett Epps, *The Citizenship Clause: A "Legislative History"*, 60 Am. U. L. Rev. 331, 357–72 (2010). As noted in *Wong Kim Ark*, those special concerns do not directly speak to the question presented here. *See id.* at 680.

in the phrase "subject to the jurisdiction thereof," the Supreme Court explicitly clarified that "aliens" were "exempt" from the qualifications because:

> When private individuals of one nation spread themselves through another as business or caprice may direct, mingling indiscriminately with the inhabitants of that other, . . . , it would be obviously inconvenient and dangerous to society, and would subject the laws to continual infraction, and the government to degradation, if such individuals or merchants did not owe temporary and local allegiance, and were not amenable to the jurisdiction of the country.

*Id.* at 685–86. In other words, "aliens" and other individuals who avail themselves of this country for non-diplomatic purposes—whether lawfully or not—are necessarily "subject to the jurisdiction" of the United States. So, too, are children born of said "aliens" on United States territory. To construe the phrase otherwise would be "dangerous to society" and delegitimize this country's jurisdiction over the persons who inhabit it. *See id.* (citing *The Schooner Exch.*, 11 U.S. at 136). And thus, according to the Court in *Wong Kim Ark*, so long as a child is born in the territorial United States and does not fall under one of the narrowly tailored exceptions covered by the phrase "subject to the jurisdiction thereof," that child receives citizenship by birth under the Fourteenth Amendment. *Id.* at 693.

To the Government's credit, allegiance has at least some importance to citizenship. Indeed, the Supreme Court acknowledged as much in *Wong Kim Ark*. *See id.* ("The fourteenth amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country"). But again, the Government relies too heavily on the *parents'* allegiance, when it ought to focus on the *child's*. In *Wong Kim Ark*, the Supreme Court emphasized time and again that "[b]irth and allegiance go together." *Id.* at 662; *see also id.* at 659 ("allegiance by birth is that which arises from being born within the dominions and under the protection of a particular sovereign"). In other words, so long as a person is born within a territory, then allegiance to that territory is a foregone conclusion. In turn, that a child happens to be born to undocumented parents or parents with temporary status is irrelevant.

Finally, this Court briefly considers the Government's argument regarding consent. The Government intimates that the phrase "subject to the jurisdiction thereof" requires that the United States "consent" to a person becoming subject to its jurisdiction. (Dkt. No. 84 at 33.) That is, "'[n]o one can become a citizen of a nation without its consent'." (*Id.* at 16) (quoting *Elk*, 112 U.S. at 102). And because the United States has not "consented" to the entry of undocumented immigrants, it must follow that the United States has not "consented to making citizens of that person's children." (*Id.*) Once again, the Government seems most preoccupied with the legal status of the parents—so much so that it conflates the position of the child with that of their parents. The fact of the matter is that the United States *has* consented to the citizenship of children born on its territory, through the ratification of the Fourteenth Amendment.

Ultimately, the Government's position is unavailing and untenable. It does not have the text or precedent to support its interpretation of the Citizenship Clause. And it rehashes losing arguments from over a century ago. *See, e.g.*, *Wong Kim Ark*, 169 U.S. at 705–32 (Fuller, C.J., dissenting). Moreover, subsequent precedents have affirmed the exceptionally American grant of citizenship as birthright. *See also Regan v. King*, 49 F. Supp. 222, 223 (N.D. Cal. 1942), *aff'd*, 134 F.2d 413 (9th Cir. 1943), *cert denied*, 319 U.S. 753 (1943); *see also Gee v. United States*, 49 F. 146, 148 (9th Cir. 1892). We need not till the same ground more than a century later.

The Plaintiffs are likely to succeed on the merits.

2. Irreparable Harm

The Plaintiff States have also shown that they are likely to suffer irreparable economic harm in the absence of preliminary relief. Economic harm "is irreparable here because the states will not be able to recover money damages." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). The Order will directly impact the Plaintiff States, immediately increasing unrecoverable costs for providing essential medical care and social services to the States's residents and creating substantial administrative costs for state agencies that are forced to comply with the Order. (*See, e.g.*, Dkt. Nos. 14 at 12; 15 at 9; 25 at 5; 26 at 4, 6) (*cf. Ledbetter v. Baldwin*, 479

U.S. 1309, 1310 (1986) ("the State will suffer irreparable harm . . . [and] will bear the administrative costs of changing its system to comply with the District Court's order")).

Likewise, the Individual Plaintiffs have made the requisite showing of irreparable harm. "An alleged constitutional infringement will often alone constitute irreparable harm." *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (citing Wright & Miller, 11 *Fed. Prac. & Proc.* § 2948 (1973)). The Individual Plaintiffs assert that their unborn children will be denied citizenship and be immediately subject to deportation under the INA, 8 U.S.C. § 1182(a)(6)–(7). (*See, e.g.,* Dkt. Nos. 59 at 3, 60 at 2–3.) This would forcibly separate some of their families. (*See, e.g.,* Dkt. No. 61 at 2–3.) The constitutional infringement and the specter of deportation are sufficiently irreparable for the purposes of a preliminary injunction.

Therefore, the Plaintiffs have demonstrated the likelihood of irreparable harm.

3. Balance of Equities and Public Interest

Finally, the Court finds that the balance of equities and the public interest strongly weigh in favor of entering a preliminary injunction. These two factors merge when the federal government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). First, constitutional violations weigh heavily in favor of an injunction. *Betschart v. Oregon*, 103 F.4th 607, 625 (9th Cir. 2024). Second, the Government has no legitimate interest in enforcing an Order that is likely unconstitutional and beyond its authority. *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 539 (N.D. Cal. 2017). Third, the rule of law is secured by a strong public interest that the laws "enacted by their representatives are not imperiled by executive fiat." *E. Bay Sanctuary Covenant v. Trump*, 9 F.3d 742, 779 (9th Cir. 2018) (cleaned up).

The balance of equities and the public interest both support the relief sought.

**C. Scope of Injunction**

The Plaintiff States ask the Court to enjoin the Order's implementation and enforcement

on a nationwide basis.[9] (*See* Dkt. No. 63 at 29.) They contend anything less cannot provide complete relief, given the Order's "extraordinary nature," its resulting financial burdens, and the likely "operational chaos" the Order will trigger. (Dkt. Nos. 63 at 29, 105 at 23.) It is axiomatic that injunctive relief must be narrowly tailored. *See, e.g.*, *Nat. Resources Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007). Nevertheless, this "is 'dependent as much on the equities . . . as the substance of the legal issues,' and courts must tailor the scope 'to meet th[ose] exigencies.'" *Doe #1 v. Trump*, 957 F.3d 1050, 1069 (9th Cir. 2020) (quoting *Azar*, 911 F.3d at 584).

The extreme nature of the equities, *see supra* Part II.B.3., alone warrants nationwide relief. Moreover, the Court cannot ignore the Supreme Court's discussion regarding President Biden's student loan debt program, as implemented by the Secretary of Education, where according to the Court, the Executive branch "arrogat[ed] to itself power belonging to another [branch]." *Biden*, 143 S. Ct. at 2373. Given the nature of that harm and the scope of that conduct, nationwide relief was warranted. *See id.* at 2376 (reversing the District Court's refusal to issue a nationwide preliminary injunction). The Court fails to see a distinction with the actions at issue here.

In addition, as the Plaintiff States note, a geographically limited injunction would be ineffective, as it would not completely relieve them of the Order's financial burden(s). (*See* Dkt. No. 63 at 29.) For example, babies born in other states would travel to the Plaintiff States. Once they do, those persons would be eligible for services and support that, without nationwide relief, need be funded by the Plaintiff States, without federal support (even though that same funding would continue for babies born within the Plaintiff States to parents of comparable immigration status). This is, simply said, perverse and bizarre. As *amicus* 72 State and Local Governments

[9] The Individual Plaintiffs do not specify the scope of the preliminary injunction they seek. (*See generally* Dkt. No. 74.) However, as the Court has not yet ruled on their motion for preliminary class certification (Dkt. No. 58), the Court must surmise that these plaintiffs seek only to enjoin the implementation and enforcement of the Order as it relates to themselves.

point out, it is also unworkable. (*See* Dkt. No. 69-1 at 17.) The recordkeeping and administrative burden from such an arrangement, (*see id.*),[10] also mandates nationwide relief. Nor is it clear what, if any, prejudice the Government would suffer from nationwide relief. In its brief in opposition, it points to none. (*See* Dkt. No. 84 at 57–59).

For all these reasons, the Court finds that relief must be nationwide. Anything less is ineffectual.

## III. CONCLUSION

Citizenship by birth is an unequivocal Constitutional right. It is one of the precious principles that makes the United States the great nation that it is. The President cannot change, limit, or qualify this Constitutional right via an executive order. The Court GRANTS the Plaintiffs' motions for a nationwide preliminary injunction (Dkt. Nos. 63, 74) and ENJOINS enforcement or implementation of the Order on a nationwide basis.

DATED this 6th day of February 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

[10] *Amicus* 18 Opposing States do not suggest, in the alternative, limited relief. (*See generally* Dkt. No. 89-1.) Nor do other opposing *amici*. (*See generally* Dkt. Nos. 80-2, 86-2.)