```
                  UNITED STATES DISTRICT COURT

              WESTERN DISTRICT OF WASHINGTON AT SEATTLE
_____

                                  )
 STATE OF WASHINGTON, et al.,     ) C25-00127-JCC
                                  )
               Plaintiffs,        ) SEATTLE, WASHINGTON
                                  )
 v.                               ) February 6, 2025
                                  ) 10:00 a.m.
 DONALD TRUMP, et al.,            )
                                  ) Preliminary
               Defendants.        ) Injunction Hearing
_____

                 VERBATIM REPORT OF PROCEEDINGS
            BEFORE THE HONORABLE JOHN C. COUGHENOUR
                  UNITED STATES DISTRICT JUDGE
_____


 APPEARANCES:



 For the Plaintiffs:    Lane Polozola
                        Alyson Dimmitt Gnam
                        Daniel Jun Jeon
                        Attorney General's Office
                        800 5th Avenue
                        Suite 2000
                        Seattle, WA  98104-3188

 For Consol             Matt Adams
 Plaintiffs,            Northwest Immigrant Rights
                        Project
                        615 2nd Avenue
                        Suite 400
                        Seattle, WA  98104
```

```
1   For the Defendants:    Drew Ensign
                           Yuri Fuchs
2                          U.S. Department of Justice
                           1100 L. Street
3                          Washington, DC  10005

4

5

...

25
```

1    THE CLERK: The matter before the Court is scheduled
2    for a preliminary injunction hearing, C256-127 State of
3    Washington et al., versus Donald Trump, et al.
4        Counsel, please make your appearances.
5        MR. POLOZOLA: Lane Polozola for the State of
6    Washington. I'll also be speaking for the other plaintiff
7    states.
8        THE COURT: All right.
9        MR. ENSIGN: Good morning, Your Honor, Drew Ensign on
10   behalf of the United States.
11       THE COURT: Okay.
12       MR. ADAMS: Good morning, Matt Adams from the
13   Northwest Immigrant Rights Project on behalf of individual
14   plaintiffs and proposed class members.
15       THE COURT: All right.
16       Do you want to start, Mr. Polozola?
17       MR. POLOZOLA: Thank you, Your Honor:
18       Your Honor, the Court's current TRO calmed the immediate
19   chaos that President Trump's Citizenship Stripping Order
20   caused two weeks ago, when he attempted to unilaterally end
21   birthright citizenship in the United States. Today we're
22   asking the Court to maintain that calm and enjoin the
23   Executive Order's implementation nationwide, to protect the
24   plaintiff states and their residents from the harms they will
25   suffer without an injunction and to protect the Constitution

1  from an egregious abuse of executive power.
2      The Court can reject each of the defendants' arguments on
3  the merits, on the plaintiff states' standing, and on the
4  appropriateness of nationwide relief, by applying settled
5  precedent.  Because this is not a close case, we're prepared
6  to rest largely on our papers, Your Honor, and I plan to
7  highlight only a few key points this morning.
8      Briefly on the merits, Your Honor, the Court has already
9  recognized that the Executive Order is plainly
10 unconstitutional.  And there's no doubt, the text and the
11 history of the Fourteenth Amendment are clear.  The Supreme
12 Court's interpretation of the Citizenship Clause is clear.
13 And federal statute embodying the Citizenship Clause's grant
14 of birthright citizenship, the INA, is clear.
15     The only thing that has changed since the TRO issued is
16 that the defendants have now laid their cards on the table
17 and they've explained boldly that they seek to deny
18 citizenship to children born on American soil, for no reason
19 other than political ends, based on a new interpretation of
20 the phrase "subject to the jurisdiction thereof," that has
21 never been accepted by any court.
22     But the plain text of the Fourteenth Amendment, Your
23 Honor, and the Supreme Court's *Wong Kim Ark* decision, don't
24 allow them to do that.
25     With respect to the relief we're seeking, Your Honor, we

1  do believe a nationwide injunction is essential in this case,
2  and there are a few reasons for that.  First, an injunction
3  will protect the plaintiff states and their residents by
4  preserving a rule that's been in effect for more than
5  150 years.  On the other hand, it will require nothing of the
6  defendants whatsoever.
7      A nationwide injunction is necessary, in particular, Your
8  Honor, to provide the states with complete relief.  And the
9  reason is simple.  State residents can and do move.  And
10 state borders cannot possibly mean the difference between
11 being a U.S. citizen or not.
12     Finally, I just want to raise for the Court, we are aware
13 that a district judge -- or a judge in the District of
14 Maryland issued an injunction yesterday in a case brought by
15 private plaintiffs.  But we want to be clear that the
16 plaintiff states' position here is that that injunction
17 should have no impact on the need for an injunction here.
18 The threat to the plaintiff states remains in this case.  And
19 there are three reasons I want to highlight, Your Honor.
20     One, we obviously are not parties to that case and we have
21 no right to enforce or rely on that injunction.  And we don't
22 control what will happen in that case.
23     Second, I want to flag for the Court that that case has a
24 different -- or our case, excuse me -- has a different and
25 broader set of defendants.  HHS and the Department of

1   Agriculture were not parties in that case.  And the programs
2   at issue here, Medicaid, Title IV-E, the Children's Health
3   Insurance Program, I don't think are covered or implicated by
4   that injunction.
5       Third, Your Honor, I'm not aware that the federal
6   government has disavowed its right or intent to appeal or
7   seek a stay of that injunction, or any others that may issue.
8   So simply put, circumstances may well be different tomorrow,
9   and we believe an injunction from this court is essential.
10      With that, Your Honor, I'll just sum up by making what I
11  think is a pretty important point here.  When we, the people
12  in the states, when we ratified the Fourteenth Amendment, we
13  rendered a collective judgment and a promise that would guide
14  our nation into the future.  It was a judgment that we should
15  never again accept the idea that some people born here are
16  less than others, in the eyes of the law.  And it was a
17  promise that citizenship at birth is beyond the power of the
18  government to take away or destroy.  The President and the
19  Executive Branch cannot alone undo that judgment or that
20  promise, and we ask the Court grant our motion for injunction
21  to protect this most foundational right.
22      Thank you, Your Honor.
23          THE COURT:  Before you sit down, I just want to say
24  how impressive the states' briefing and your oral
25  presentation have been in this case.  And I want to commend

1  you and the Attorney General, Mr. Brown, or General Brown,
2  for the quality of the representation of your clients.
3           MR. POLOZOLA:  Thank you, Your Honor.  We appreciate
4  that.  And there's a wonderful group of people who have been
5  working on this.  So credit to the whole team.  Thank you.
6           THE COURT:  All right.  Let me hear from the other
7  plaintiffs.
8           MR. ADAMS:  Good morning.  May it please the Court.
9  In light of the plain language of the Citizenship Clause and
10 subsequent Supreme Court precedent interpreting the
11 Fourteenth Amendment, there is simply no room for the
12 President to assert the authority to redefine or restrict
13 birthright citizenship, certainly not in a country that is
14 governed by the rule of law.  And that was the very purpose
15 of the Citizenship Clause, that is why it was added to the
16 Constitution, to ensure --
17          THE COURT:  By the way, you've seized upon a phrase
18 that reverberates with me, and that is, the rule of law.
19 I've done a lot of work in Eastern Europe, particularly the
20 former Republics of the Soviet Union, where I found that
21 referring to the rule of law was something that appealed to
22 people that otherwise were in the early stages of renewed
23 commitment to the rule of law.  So you touched upon something
24 that I value very highly.
25          MR. ADAMS:  Thank you.

1       And that was and is the very purpose of the Citizenship
2   Clause, to protect our citizens from moments of inflamed
3   political passion, when elected officials may seek to strip
4   away the rights of unpopular or oppressed communities.  And
5   that function that was so critical in the reconstruction
6   period is evidently very important today, as demonstrated by
7   the President's Executive Order.
8       Defendants have no legal authority to add additional
9   requirements to birthright citizenship.  And as has already
10  been addressed in the briefs in detail, *Wong Kim Ark* made
11  clear that all persons, while in this country, other than
12  those specific exceptions that were listed, are subject to
13  its jurisdiction.  And this is true even of a person who is
14  here residing temporarily, or an undocumented person.
15      Now, defendants argue that an undocumented person is not
16  subject to its jurisdiction.  Well, they're certainly subject
17  to its tax laws, to its criminal code, family law.  The
18  federal law even requires an undocumented male, between the
19  ages of 18 and 26, to register with the Selective Service.
20  It is patently absurd for defendants to contend that a person
21  who can be conscripted into the military, forced to fight for
22  this country, is not subject to its jurisdiction.
23      And *Wong Kim Ark* made that very clear, that all persons,
24  while here, are obligated to its laws, but entitled to its
25  protections.

1        So defendants repeatedly ignore binding precedent, the
2    plain text of the Fourteenth Amendment, and, of course, the
3    common law principles of birthright citizenship, which define
4    -- which was the source of the Fourteenth Amendment
5    Citizenship Clause.
6        So what is the very direct harm?  It is apparent that our
7    individual plaintiffs and class members, immediately,
8    overnight, will have their rights ripped from them as
9    citizens, and instead will be deemed to be here with no
10   lawful status.  Defendants have no response for case law that
11   confirms that when a party's constitutional rights are
12   threatened, that in and of itself constitutes irreparable
13   harm; and certainly when we're talking about the right of
14   citizenship, perhaps the most fundamental right,
15   constitutional right that we possess.
16       Finally, plaintiffs would ask that -- individual
17   plaintiffs ask that the injunction extend to them and
18   proposed class members, so that those who are directly
19   targeted by the Executive Order are able to squarely present
20   the harms that they face.
21       The defendants have attempted to sidetrack the Court by
22   claiming that the states don't have standing to present or to
23   argue on behalf of the constitutional violations of its
24   residents.  And I think this makes it all the more important
25   that this injunction extend to these individual plaintiffs

1  and proposed class members who are, in fact, directly
2  targeted and will immediately bear the onus and the burden of
3  this unconstitutional deprivation of their rights.
4       And for this reason, we ask this Court to extend its order
5  into a preliminary injunction covering the states and
6  individual plaintiffs, as well as the proposed class members.
7            THE COURT:  All right.  Thank you.
8            MR. ADAMS:  Thank you.
9            THE COURT:  And for the government.
10      Let me ask.  Wouldn't you agree the existence of these
11 three pregnant women as plaintiffs, render the standing issue
12 rather moot?
13           MR. ENSIGN:  Your Honor, not entirely moot.  But I
14 certainly take your point that the United States does not
15 challenge the standing of the private plaintiffs, and hence,
16 that may be relevant to the scope of relief.
17      But if Your Honor wants to proceed under the premise that
18 the individual plaintiffs have standing, we have not
19 challenged that in this purpose.
20           THE COURT:  Thank you for the forthrightness of your
21 response.  It's a welcome breath of fresh air.
22           MR. ENSIGN:  Thank you, Your Honor.
23      May it please the Court, Drew Ensign, Deputy Assistant
24 Attorney General for the United States.  This case turns on
25 the critical phrase, "subject to the jurisdiction thereof,"

1   in the Citizenship Clause.  On that issue, plaintiffs offer a
2   construction of that phrase that is demonstrably and
3   unequivocally incorrect.  This court should therefore deny
4   the requested injunction.
5        The states' central thesis is presented on Page 10 of
6   their PI motion, and it says, The only U.S.-born individuals
7   excluded are those not subject to the jurisdiction of the
8   United States at birth -- m-dash -- the children of diplomats
9   covered by diplomatic immunity and children born to foreign
10  armies at war against the United States on U.S. soil.
11       That categorical assertion is simply wrong.  To begin
12  with, it fails to account for members of Native American
13  tribes.  Since the *Elk* case in 1884, the Supreme Court has
14  squarely held that members of tribes are not subject to the
15  jurisdiction of the United States and are thus not entitled
16  to birthright citizenship.
17            THE COURT:  Didn't Congress solve that problem?
18            MR. ENSIGN:  Exactly, Your Honor, they have.  They've
19  conferred birthright citizenship by separate statute.  And so
20  absolutely, all members of Native American tribes within the
21  United States enjoy citizenship at birth.  But they do so not
22  under the Citizenship Clause, but rather under a separate
23  statutory enactment.  And because *Elk* remains good law, that
24  is the source of citizenship, and not the Fourteenth
25  Amendment itself.

1    And the reason why tribal members are excluded from the
2    Citizenship Clause is critically important and ultimately
3    controlling here.  In *Elk*, the United States Supreme Court
4    squarely held that for the Citizenship Clause to apply,
5    persons must be "completely subject to the political
6    jurisdiction of the United States."  Which is to say that
7    they must owe "direct and immediate allegiance" to this
8    country, unqualified by any "allegiance to any alien power."
9    The Supreme Court further explained that citizenship turns
10   partly on the consent of the sovereign since, "no one can
11   become a citizen of the nation without its consent."
12   The Supreme Court's holding in *Elk* thus rejected
13   birthright citizenship for tribal members because of the
14   divided allegiances between the United States and their
15   respective tribes.  And the Supreme Court has further long
16   recognized that Indian tribes form "an intermediate category
17   between foreign and domestic states."
18   So if loyalty to a tribe is insufficient to satisfy the
19   requisite direct and immediate allegiance, then being a
20   citizen of a foreign power without the -- without any
21   permanent ties to the United States, is necessarily
22   insufficient too, and for even greater reasons, since
23   allegiance to a foreign country is even more removed from the
24   United States than allegiance to a member -- being a member
25   of a Native American tribe, which occupied that intermediate

1  category.

2  Notably, the *Wong Kim Ark* case on which plaintiffs place
3  overwhelming reliance, makes clear that *Elk* is still good
4  law.  It further explains that the Citizenship Clause applies
5  only to -- to those "in the allegiance and under the
6  protection of the country."  And that's at 693.  Thus
7  reiterating the dispositive allegiance test from *Elk*.

8  *Wong Kim Ark* similarly explains that, "two things usually
9  concur to create citizenship.  First, birth within -- birth
10 locally within the dominions of the sovereign.  And secondly,
11 birth...within the ligeance of the sovereign."  Ligeance is
12 an ancient word that is synonymous with allegiance and it
13 thereby reiterates the allegiance test from *Elk*, which,
14 again, remains good law.

15 But under the plaintiffs' interpretation here, the second
16 part of that test is essentially obliterated and we're really
17 just collapsed to the first part; contrary to what is clearly
18 a two-part test.  For that reason plaintiffs' reliance,
19 overwhelming reliance on dicta from *Wong Kim Ark* is
20 misplaced.

21 That's particularly the case because *Wong Kim Ark* itself
22 stresses that dicta should not be regarded as binding since
23 "general expressions in every opinion are to be taken in
24 connection with a case in which those expressions are used."
25 That's at 169 U.S. at 679.

1    And in that case, the question presented was explicitly
2 limited to whether a child whose parents had "a permanent
3 domicile and residence in the United States," and, "fell
4 within the scope of the Citizenship Clause."
5    By its terms, *Wong Kim Ark* limited analysis to children of
6 lawful permanent residents who do owe the requisite
7 allegiance to the United States.  And that's the line that
8 *Wong Kim Ark* drew, is that people with lawful permanent
9 residence to the United States, possess sufficient connection
10 and allegiance to the United States to satisfy the
11 Citizenship Clause.
12    The President's reading of the Citizenship Clause to
13 exclude those lacking a permanent connection to the United
14 States and thus the requisite allegiance under *Elk*, is
15 confirmed by the Civil Rights Act of 1866.
16    The very same Congress that drafted the Fourteenth
17 Amendment a few months prior, adopted language in the Civil
18 Rights Act that provided for birthright citizenship to
19 persons "born in the United States and not subject to any
20 foreign power, excluding Indians not taxed."  That language
21 has an explicit allegiance requirement.  And there is every
22 indication that that very same Congress intended the
23 Fourteenth Amendment to codify and constitutionalize the
24 standard of the Civil Rights Act of 1866, which simplifies
25 the language concerning allegiance to both foreign powers and

1  Indian tribes into the single "subject to the jurisdiction
2  thereof" language.
3       Contemporaneous statements by Senator Trumbull and
4  Representative Wilson confirmed that intent.  Indeed, it
5  would be bizarre for Congress to set out to render a statute
6  it had just enacted months earlier, unconstitutional, without
7  even uttering a word about such a thoroughly counterintuitive
8  act.  There's every indication that they were simply
9  constitutionalizing what they had just done, rather than
10 attempting to render the statute they had just enacted a few
11 most prior, unconstitutional.
12      For all of these reasons, the Executive Order here
13 comports with the Citizenship Clause because the two
14 categories of persons it excludes are ones that are outside
15 the Clause's scope, under Supreme Court precedence.  This
16 court should therefore deny the preliminary injunction.
17      In addition to these merits arguments as well, plaintiffs'
18 claims are also barred by several procedural grounds,
19 including lack of standing for the states, although not for
20 those individual plaintiffs, and a lack of cause of action.
21 I'm happy to address any of those arguments if the Court has
22 any questions about them.
23           THE COURT:  No.  Thanks.  All right.  Anything
24 further?
25           MR. ENSIGN:  No, Your Honor.

| | |
|---|---|
| 1 | THE COURT:  Mr. Polozola? |
| 2 | MR. POLOZOLA:  Nothing further, Your Honor. |
| 3 | THE COURT:  All right.  It has become ever more |
| 4 | apparent that to our President the rule of law is but an |
| 5 | impediment to his policy goals.  The rule of law is, |
| 6 | according to him, something to navigate around or simply |
| 7 | ignore, whether that be for political or personal gain. |
| 8 | Nevertheless, in this courtroom and under my watch the |
| 9 | rule of law is a bright beacon which I intend to follow.  I |
| 10 | said this two weeks ago and I'll say it again today, there |
| 11 | are moments in the world's history when people look back and |
| 12 | ask, "Where were the lawyers?  Where were the judges?"  In |
| 13 | these moments, the rule of law becomes especially vulnerable. |
| 14 | I refuse to let that beacon go dark today.  As a judge, my |
| 15 | job is not only to uphold the law but to protect the rule of |
| 16 | law itself.  Birthright citizenship is a fundamental |
| 17 | constitutional right.  The Fourteenth Amendment secures the |
| 18 | blessings of liberty to our posterity by bestowing on all |
| 19 | those born in the United States, and subject to its |
| 20 | jurisdiction, the rights of citizenship.  We are all |
| 21 | citizens, subject to the rule of law.  No amount of policy |
| 22 | debate can change that.  And the fact that the government has |
| 23 | cloaked what is effectively a constitutional amendment under |
| 24 | the guise of an Executive Order is equally unconstitutional. |
| 25 | The Constitution is not something with which the |

1  government may play policy games.  If the government wants to
2  change the exceptional American grant of birthright
3  citizenship, it needs to amend the Constitution itself.
4  That's how our Constitution works and that's how the rule of
5  law works.
6      Because the President's order attempts to circumscribe
7  this process, it is clearly unconstitutional.  The
8  preliminary injunction is granted on a nationwide basis.  And
9  I'm signing the preliminary injunction.
10     Anything else, counsel?
11         MR. POLOZOLA:  No, Your Honor.  Thank you.
12         MR. ENSIGN:  Nothing from the United States, Your
13 Honor.
14         THE COURT:  All right.  We'll be in recess.
15                    (Adjourned.)
16                  C E R T I F I C A T E
17
18
19     I certify that the foregoing is a correct transcript from
20 the record of proceedings in the above-entitled matter.
21
22 */s/ Debbie Zurn*
23 DEBBIE ZURN
   COURT REPORTER
24
25