The Honorable Judge John C. Coughenour

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>　　　　Defendants. | NO. 2:25-cv-00127-JCC<br><br>PLAINTIFF STATES' RESPONSE TO DEFENDANTS' MOTION TO STAY INJUNCTION PENDING APPEAL<br><br>NOTE ON MOTION CALENDAR: FEBRUARY 28, 2025 |

PLAINTIFF STATES' RESPONSE TO
DEFENDANTS' MOTION TO STAY
INJUNCTION PENDING APPEAL --
No. 2:25-cv-00127-JCC

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

## I. INTRODUCTION

Defendants seek judicial permission to implement and enforce the plainly unlawful Citizenship Stripping Order pending appeal with an exception for the two individually named private plaintiffs. The Court should decline that invitation. Defendants do not dispute the irreparable harm the Plaintiff States will suffer or the harm to the public interest that will follow if the Citizenship Stripping Order goes into effect. Instead, they make the remarkable assertion that *they* will be irreparably injured absent a stay even though the Court's injunction preserves the status quo as it has existed for more than a century and they are currently bound by separate injunctions that they have neither appealed nor sought to stay. The Court's Order explaining the basis for its injunction, which detailed the Plaintiff States' likelihood of prevailing on the merits, concluded that the Plaintiff States have standing, and explained the appropriateness of nationwide relief, rests on settled precedent. Defendants, in turn, are extraordinarily unlikely to succeed on appeal on any of the issues they raise. They come nowhere close to meeting the standard needed to justify staying the Court's injunction pending appeal. Defendants' motion should be denied.[1]

## II. ARGUMENT

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020) (citation omitted). "It is instead 'an exercise of judicial discretion,' and 'the propriety of its issue is dependent upon the circumstances of the particular case.'" *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)). Courts consider four factors when determining whether to exercise their discretion and stay an order pending appeal: "(1) whether the stay applicant[s] ha[ve] made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant[s] will be irreparably injured absent a stay; (3) whether

---

[1] Defendants noted their motion to stay for February 28, 2025, but, for reasons they do not explain, demand a ruling by February 12, 2025, and indicate that they intend to seek relief from the Ninth Circuit before the Court has the opportunity to consider their motion on the normal timeline. The Plaintiff States accordingly file this response early.

PLAINTIFF STATES' RESPONSE TO
DEFENDANTS' MOTION TO STAY
INJUNCTION PENDING APPEAL --
No. 2:25-cv-00127-JCC

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    issuance of the stay will substantially injure the other parties interested in the proceeding; and
2    (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quotation omitted). "The burden of
3    demonstrating that these factors weigh[] in favor of a stay lay with the proponent . . . ."
4    *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024). And of course, the likelihood of
5    success and irreparable injury factors "are the most critical." *Id.*
6        Every factor here points sharply towards denial of Defendants' requested stay.

**A.    Defendants Will Suffer No Injury Whatsoever in Continuing to Comply With the 157-Year-Old Established Rule Regarding Birthright Citizenship—Particularly Where They Have Not Appealed a Separate Nationwide Injunction**

    Defendants must show that they will suffer irreparable injury absent a stay. "[S]imply showing some possibility of irreparable injury" is insufficient. *Al Otro Lado*, 952 F.3d at 1007 (quoting *Nken*, 556 U.S. at 434). With all due respect, Defendants cannot contend with a straight face that they will be irreparably harmed by respecting a constitutional right that has been established—and accepted by all branches of the federal government—for more than a century. *See Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (denying emergency stay of TRO enjoining President Trump's first Travel Ban where the defendants would suffer no irreparable harm because "the district court's order merely returned the nation temporarily to the position it has occupied for many previous years"). Denial of a stay is required here because Defendants will suffer no harm whatsoever.

    To be sure, Defendants try to conjure harm by invoking the President's supposed "broad authority over immigration matters" and accusing the Court of an "improper intrusion . . . into the workings of a coordinate branch of the Government." ECF No. 122 (Defs.' Mot.) at 6-7. As the Plaintiff States have explained, however, this is not a case about "immigration." It is a case about citizenship rights that are intentionally and explicitly *beyond* the President's authority. *See* ECF No. 105 (States' Prelim. Inj. Reply) at 16-17. The case Defendants cite, *INS v. Legalization Assistance Project of Los Angeles County Federation of Labor*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers), nowhere recognized a President's unilateral authority over

PLAINTIFF STATES' RESPONSE TO
DEFENDANTS' MOTION TO STAY
INJUNCTION PENDING APPEAL --
No. 2:25-cv-00127-JCC

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

"immigration matters," and it certainly did not recognize a President's authority to deny U.S. citizens their right to citizenship. Moreover, the Executive Branch does not suffer irreparable harm merely by having its actions challenged as unlawful and being subject to a preliminary injunction. *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020) ("Indeed, if we were to adopt the government's assertion that the irreparable harm standard is satisfied by the fact of executive action alone, no act of the executive branch asserted to be inconsistent with a legislative enactment could be the subject of a preliminary injunction. That cannot be so."). Defendants' vague and conclusory invocation of the President's supposed authority in the immigration context in no way shows that they will in fact suffer irreparable harm absent a stay of the Court's injunction.

Next, Defendants' plea to let them work towards implementing the Citizenship Stripping Order is unavailing (and concerning), particularly given that they do not even try to argue they are likely to succeed on the merits of the Citizenship Stripping Order's legality. They state that the injunction "prevents (and has prevented) the executive branch as a whole from even beginning the process of formulating relevant policies and guidance for implementing the EO." Defs.' Mot. at 7. That is precisely the point. Defendants are not harmed by refraining from implementing a plainly unconstitutional and unlawful Executive Order. ECF No. 114 at 11. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 679 (9th Cir. 2021) ("[T]he public has an interest in ensuring that the '[laws] enacted by [their] representatives are not imperiled by executive fiat.'") (cleaned up). Moreover, the Citizenship Stripping Order's implementation and enforcement has been enjoined since the Court issued a TRO on January 23, 2025, yet Defendants point to no actual harm that they have suffered. That failure defeats their request for a stay. *See Al Otro Lado*, 952 F.3d at 1007 (denying motion to stay injunction pending appeal where injunctive relief was in place for weeks and defendants offered no evidence of harms that had in fact occurred in that period before seeking stay).

PLAINTIFF STATES' RESPONSE TO
DEFENDANTS' MOTION TO STAY
INJUNCTION PENDING APPEAL --
No. 2:25-cv-00127-JCC

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Finally, Defendants' manufactured claims of urgency and harm cannot be reconciled with the fact that they have neither appealed nor sought to stay a separate nationwide injunction that bars most of the Defendants here from implementing or enforcing the Citizenship Stripping Order.[2] *See CASA, Inc. v. Trump*, No. 8:25-cv-00201-DLB, ECF Nos. 65-66 (D. Md. Feb. 5, 2025) (enjoining the Secretary of State, U.S. Attorney General, Secretary of Homeland Security, Director of U.S. Citizenship and Immigration Services, the Commissioner of the Social Security Administration, and their officers and agents from "implementing and enforcing the Executive Order until further order of th[e] Court"). They have thus far declined to appeal or seek a stay of that injunction even though they made the *same* arguments in that case on the merits, about the plaintiffs' supposed lack of a cause of action, and on the propriety of nationwide relief. *See id.* ECF No. 40 at 5-7, 29-30. By accepting that injunction for the time being, Defendants are making a transparent attempt to funnel review of the Citizenship Stripping Order's legality to the Ninth Circuit. That is their litigation choice, but they may not do so and at the same time represent to the Court here that they will suffer irreparable harm absent a stay of the Court's injunction in this case.[3]

In sum, Defendants will suffer no harm at all. Their motion should be denied.

**B.   Defendants' Challenges to the Plaintiff States' Standing and the Injunction's Nationwide Scope Are Meritless**

Defendants do not argue that they are likely to succeed on the merits of the Plaintiff States' constitutional and statutory claims. Rather, they reassert that the Plaintiff States lack standing and contend that nationwide relief is unwarranted. Defs.' Mot. at 3-4. They are wrong

---

[2] Today, on February 10, 2025, another court issued an injunction that enjoins Defendants from enforcing the Citizenship Stripping Order "in any manner" with respect to the plaintiffs in that case, which have members nationwide, and "with respect to any individual or entity in any matter or instance within the jurisdiction" of the court there. *See N.H. Indonesian Cmty. Support v. Trump*, No. 1:25-cv-00038-JL-TSM, ECF No. 77 (D.N.H. Feb. 10, 2025).

[3] Indeed, Defendants' failure to acknowledge or address the impact of the Maryland injunction on their irreparable harm claim presents serious Rule 11 concerns regarding counsel's candor to the Court. The Plaintiff States do not intend to seek sanctions by motion at this time because the matter is proceeding imminently to appeal. The Court should, at a minimum, warn Defendants' counsel regarding their obligations as officers of the Court.

PLAINTIFF STATES' RESPONSE TO
DEFENDANTS' MOTION TO STAY
INJUNCTION PENDING APPEAL --
No. 2:25-cv-00127-JCC

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

on both accounts, and they certainly have not made a "strong showing" that they are likely to prevail on appeal with respect to those discrete issues.

### 1. Defendants Are Not Likely to Succeed in Challenging the Plaintiff States' Standing

Defendants argue (again) that the Plaintiff States' "economic harms are the 'indirect effects on state revenues or state spending' of federal immigration policy," and suggest (again) that such harms are insufficient to support Article III standing based on a single footnote from *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023). Defs.' Mot. at 4-5. The Court concluded, however, that the Citizenship Stripping Order "subjects the Plaintiff States to *direct and immediate* economic and administrative harms." ECF No. 114 at 3 (emphasis added). And of course it does. The undisputed record here proves that the Plaintiff States will suffer concrete, direct funding losses as a result of the Order, including tens of thousands of dollars that will be lost under existing contracts with SSA and millions in lost Medicaid, CHIP, and Title IV-E funding. *See* ECF No. 63 (States' Prelim. Inj. Mot.) at 6-9 (detailing sovereign and pecuniary harms the Plaintiff States will suffer). Given these losses, which flow *directly* from the Citizenship Stripping Order's attempted denial of citizenship to children who the Plaintiff States serve in their programs, the Plaintiff States have standing under *Biden v. Nebraska*, --- U.S. ---, 143 S. Ct. 2355, 2365-66 (2023), and additional Ninth Circuit precedent. *See* States' Prelim. Inj. Mot. at 6-9; States' Prelim. Inj. Reply at 3-5. Defendants note *Nebraska* in a single sentence but again offer no way to reconcile their arguments with the squarely applicable facts and holding of that case. *See* Defs.' Mot. at 4.

Nothing about *United States v. Texas* undermines the Plaintiff States' standing here. As explained previously, Defendants' "indirect, downstream" harms argument relies on a single footnote in *Texas* taken out of context. The Supreme Court in *Texas* held that the plaintiff states' injuries in the form of increased costs to incarcerate and provide social services to non-citizens were not redressable because the judiciary could not interfere in the exercise of Article II

PLAINTIFF STATES' RESPONSE TO
DEFENDANTS' MOTION TO STAY
INJUNCTION PENDING APPEAL --
No. 2:25-cv-00127-JCC

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

executive discretion regarding arrest and prosecution policies, which courts generally lack meaningful standards to review. *Texas*, 599 U.S. at 677-80. The Court did not disturb the district court's conclusion that the states suffered cognizable injuries and no one "dispute[d] that even one dollar's worth of harm is traditionally enough to 'qualify as concrete injur[y] under Article III.'" *Id.* at 688 (Gorsuch, J., concurring) (citation omitted). The *Texas* holding by its own terms was "narrow" and limited to the redressability concerns of arrest and prosecutorial discretion policies, *id.* at 683-84, and the Ninth Circuit has confirmed as much, *Nebraska v. Su*, 121 F.4th 1, 13 n.5 (9th Cir. 2024). In short, *Texas* casts no doubt on the Plaintiff States' standing here. *See* States' Prelim. Inj. Reply at 4.

Second, Defendants are not likely to succeed with respect to their reprised "third-party standing" argument.[4] As the Plaintiff States explained in their Reply, Defendants' argument depends on a strawman assertion that the Plaintiff States are asserting *parens patriae* claims to protect nothing more than individual residents' interests. States' Prelim. Inj. Reply at 6-7. That is wrong. The Plaintiff States challenge the Citizenship Stripping Order to protect their own unique sovereign and pecuniary interests, not based on a *parens patriae* theory. Defendants' cited cases support the Plaintiff States' right to do so, including through assertion of a claim under the Citizenship Clause. *Id.*

Finally, while Defendants fail to address it in their motion to stay, the Plaintiff States independently have standing to protect their sovereign interests, which are harmed directly under the Citizenship Stripping Order. *See* States' Prelim. Inj. Mot. at 6; States' Prelim. Inj. Reply at 2-3. Indeed, it is not seriously disputed that under the Order's narrowed view of citizenship, thousands of state residents will be deemed not subject to the jurisdiction of the United States. That, in turn, will directly injure the Plaintiff States' "'sovereign interest' in the retention of

---

[4] Notably, Defendants only make this argument with respect to the Plaintiff States' constitutional claim. *See* Defs.' Mot. at 4-5. The Court also held that the Plaintiff States are likely to succeed on their INA claim, a ruling Defendants entirely ignore. ECF No. 114 at 6. Thus, Defendants' "third-party" standing argument has no practical impact on the scope of the injunction.

PLAINTIFF STATES' RESPONSE TO
DEFENDANTS' MOTION TO STAY
INJUNCTION PENDING APPEAL --
No. 2:25-cv-00127-JCC

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  [their] authority" to regulate individuals within their borders. *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1176 (9th Cir. 2024); *see also* States' Prelim. Inj. Mot. at 6; States' Prelim. Inj. Reply at 2-3. Nor is it disputed that many of the Plaintiff States' constitutions and laws rely on the settled meaning of "United States" citizen, and as a result, the meaning of "citizen" for purposes of those laws is suddenly "endangered and rendered uncertain." *Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.*, 766 F.2d 228, 233 (6th Cir. 1985); *see also* States' Prelim. Inj. Reply at 2-3. The Court can take this opportunity to make clear that the Plaintiff States have sovereign standing to challenge the Order.

### 2. Defendants Are Extremely Unlikely to Succeed in Challenging the Nationwide Scope of the Injunction

Defendants next protest that the Court issued a nationwide injunction. Defs.' Mot. at 5-6. They rely on general statements about such injunctions being disfavored, but they do not dispute that the Court has discretion to fashion an appropriate injunction, including a nationwide injunction, as necessary to provide the Plaintiff States with complete relief. Nor could they. *See Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579, 581 (2017) (allowing nationwide injunction as to enforcement of portions of Executive Order that exceeded presidential authority); *Doe #1*, 957 F.3d at 1069 (declining to stay nationwide injunction and explaining that "there is no bar" against such injunctions "when it is appropriate") (quoting *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987)). The Court acted well within its authority in issuing the current injunction.

The most Defendants muster is the conclusory suggestion that the Plaintiff States' injuries could be "substantially remedied by an order that provided relief only within their borders[.]" Defs.' Mot. at 6. That is wrong, as the Court explained. *See* ECF No. 114 at 12-13; States' Prelim. Inj. Mot. at 23-24; States' Prelim. Inj. Reply at 17-18. Moreover, in making that statement, Defendants concede that a geographically limited injunction would not provide *complete* relief to the Plaintiff States. Their hedging with language like "substantially"

PLAINTIFF STATES' RESPONSE TO
DEFENDANTS' MOTION TO STAY
INJUNCTION PENDING APPEAL --
No. 2:25-cv-00127-JCC

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

underscores the undisputed fact that individuals in the United States can and do move between states every day. And that is why their argument crumbles. If an injunction is geographically limited, the Plaintiff States will be forced to update and modify their systems to verify eligibility for their Medicaid, CHIP, and Title IV-E programs to the same degree because they must verify the citizenship status for *every* child they serve, regardless of which state that child was born in. Thus, the Court hit the nail on the head when it concluded that the "relief must be nationwide," because "[a]nything less is ineffectual." ECF No. 114 at 13. Defendants are unlikely to succeed in showing otherwise on appeal.

**C.    The Plaintiff States and the Public Interest Will Be Irreparably and Substantially Harmed If the Injunction is Stayed**

The Plaintiff States have detailed at length the harms they and their residents face under the Citizenship Stripping Order. *See* States' Prelim. Inj. Mot. at 15-24; States' Prelim. Inj. Reply at 16-17. The Court rightfully recognized those harms, the blatant unlawfulness of the Citizenship Stripping Order, and how the "balance of equities and the public interest strongly weigh in favor of entering a preliminary injunction." ECF No. 114 at 11. Defendants ignore those harms entirely, but the stay analysis does not. The final *Nken* factors strongly support denial of a stay.

### III.    CONCLUSION

The Plaintiff States request that the Court deny Defendants' motion for a stay of the preliminary injunction.

PLAINTIFF STATES' RESPONSE TO DEFENDANTS' MOTION TO STAY INJUNCTION PENDING APPEAL -- No. 2:25-cv-00127-JCC

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

DATED this 10th day of February 2025.

NICHOLAS W. BROWN
Attorney General

*s/ Lane M. Polozola*
COLLEEN M. MELODY, WSBA #42275
Civil Rights Division Chief
LANE POLOZOLA, WSBA #50138
DANIEL J. JEON, WSBA #58087
ALYSON DIMMITT GNAM, WSBA #48143
Assistant Attorneys General
Wing Luke Civil Rights Division
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
colleen.melody@atg.wa.gov
lane.polozola@atg.wa.gov
daniel.jeon@atg.wa.gov
alyson.dimmittgnam@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

I certify that this memorandum contains 2857 words, in compliance with the Local Civil Rules.

KRIS MAYES
*Attorney General of Arizona*

*s/ Joshua Bendor*
Joshua D. Bendor (AZ No. 031908)*
Luci D. Davis (AZ No. 035347)*
Gabriela Monico Nunez (AZ No. 039652)*
Office of the Arizona Attorney General
Firm State Bar No. 14000
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Luci.Davis@azag.gov
Gabriela.MonicoNunez@azag.gov
ACL@azag.gov

*Pro hac vice
Attorneys for Plaintiff State of Arizona*

KWAME RAOUL
*Attorney General, State of Illinois*

*s/ Rebekah Newman*

PLAINTIFF STATES' RESPONSE TO
DEFENDANTS' MOTION TO STAY
INJUNCTION PENDING APPEAL --
No. 2:25-cv-00127-JCC

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

REBEKAH NEWMAN, ARDC #6327372*
Assistant Attorney General
Special Litigation Bureau
Office of the Illinois Attorney General
115 South LaSalle St., Floor 35
Chicago, IL 60603
Tel. (773) 590-6961
rebekah.newman@ilag.gov

*Pro hac vice
Attorneys for Plaintiff State of Illinois

DAN RAYFIELD
Attorney General, State of Oregon

/s/ Carla A. Scott
CARLA A. SCOTT, WSBA #39947
THOMAS H. CASTELLI, OSB #226448*
Senior Assistant Attorneys General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Carla.A.Scott@doj.oregon.gov
Thomas.Castelli@doj.oregon.gov

*Pro hac vice
Attorneys for Plaintiff State of Oregon

PLAINTIFF STATES' RESPONSE TO
DEFENDANTS' MOTION TO STAY
INJUNCTION PENDING APPEAL --
No. 2:25-cv-00127-JCC

10

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the United State District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this 10th day of February 2025 in Seattle, Washington.

*s/ Tiffany Jennings*
Tiffany Jennings
Paralegal

PLAINTIFF STATES' RESPONSE TO DEFENDANTS' MOTION TO STAY INJUNCTION PENDING APPEAL -- No. 2:25-cv-00127-JCC

11

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744