**UNITED STATES DISTRICT COURT**

CASA v. TRUMP                           8:25-cv-201

WASHINGTON v. TRUMP            2:25-cv-127

NEW JERSEY v. TRUMP              1:25-cv-10139

**MOTION TO INTERVENE, INORPORATED MOTION FOR DECLATORY RELIEF,**

**INCORPORATED OPPOSITION TO VACATION OF THE COURT'S INJUNCTION and,**

**INCORPORATED MOTION TO PROCEED UNDER PSEUDONYM**

Comes now Movant John Doe pro se pursuant to F.R.C.P. 24,26(c), 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 5.2 of the Federal Rules of Civil Procedure and respectfully moves this honorable court(s) to permit limited and specific intervention in the above captioned case(s), for declarations, to clarify or modify its current injunction instead of vacation and, to proceed under pseudonym. Movant alleges as follows in support of granting this motion.

### INTRODUCTION AND BACKROUND

1. Movant incorporates the factual bases to the exclusion of the defendant's alleged capacity of the complaints filed in these cases and alleges as follows.

2. On January 20, 2025, Donald J. Trump signed Order 14160, in his purported executive authority, purported judicial authority and purported congressional authority.

3. Various plaintiffs sued Donald J. Trump and members of his administration in the above captioned cases.

4. "Nationwide injunctions" were entered in all 3 cases.

5. Donald J. Trump through counsel moved to stay the injunctions in the United States Supreme Court narrowly limiting their objections to the Nationwide or Universal injunctions without consideration of the underlying issue of his judicial determination of Birthright citizenship followed by his birthright citizenship legislation.

6. The U.S. Supreme court on 06/27/25 entered an order permitting the narrowed challenge affecting litigants and the Judiciary nationwide including this movant limiting district court authority on "nationwide or universal injunctions" WITHOUT consideration of the gross illegality of Trump performing judicial and congressional duties under guise of the executive, and so "wrapped" their determination in that scope. The real question was whether District judges can enjoin VOID conduct nationwide because the executive is not a judge nor a legislator.

7. This motion follows.

## GROUNDS FOR INTERVENTION

8. Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as a matter of right. That provision provides, in relevant part, that "[o]n timely motion, the court must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

9. Consistent with this language, the D.C. Circuit has identified four requirements for intervention as a matter of right.

10. First, an application to intervene in a pending action must be timely. Karsner v. Lothian, 532 F.3d 876, 885 (D.C. Cir. 2008).

11. Second, the putative intervenor must have a "legally protected" interest in the action.

12. Third, the action must threaten to impair the putative intervenor's proffered interest in the action.

13. Fourth, and finally, no existing party to the action may adequately represent the putative intervenor's interests.

14. Permissive intervention under Rule 24(b)(1)(B) can be granted if the movant has a claim or defense that shares with the main action a common question of law or fact.

15. First, the movant's Motion to Intervene is timely because the litigation is in its early stages and the Supreme Court order is stayed for 30 days.

16. The movant has a substantial legal interest in the isolated subject matter of the action because it involves claims concerning his ability to seek injunctive relief in pending and future litigation.

17. Disposition of the action without the movant's participation may impede his ability to seek injunctive relief. The outcome of this case implicates *stare decisis* concerns that warrant the movant's intervention.

18. The movant's interests are not adequately protected by the existing parties to the litigation. Because the movant represents his own and the public interest on a national scale in pending litigation, those interests do not necessarily align with the interests represented by the plaintiffs.

19. The movant also satisfies the requirements for permissive intervention because his claims against the defendant have questions

of law and fact in common with the claims and facts at issue in the narrowed action and the narrowed action involves questions of the defendant's and judiciary's "capacities" that appear to not to be previously raised.

## GROUNDS FOR DECLARATION

20. Movant respectfully moves the court to grant or supplement declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 57 of the Federal Rules of Civil Procedure. Plaintiff specifically moves this honorable court to declare the following:

   a. That the United States Constitution established a permanent class of "persons within the jurisdiction of the United States and the provisions of the United States Constitution",

   b. That while there are narrower classes within the super class, the interests of the larger class must prevail so long as the narrower class is not harmed,

   c. That "Nationwide injunctions" are merely class actions established "sua sponte" under F.R.C.P. 23, 19 and, 20 in which the class of "persons within the jurisdiction of the United States and the provisions of the United States Constitution" is already forever established.

    d. That "Nationwide injunctions" are also issued pursuant to F.R.C.P. 62 and F.R.A.P. 8 and 18 as a District judge has broad discretion in fashioning "stays" when an "ADMINISTRATIVE FUNCTION" or "JUDICIAL FUNCTION" even when purported as an "EXECUTIVE FUNCTION" is being reviewed and is in question and moreover when the District Judge is acting in appellate capacity and or the action taken is VOID.

21. On 06/27/25 in Trump v. Casa The Supreme Court has now instructed that, in circumstances in use of "Nationwide injunctions", class-wide relief may be appropriate. Trump v. CASA, slip op. 13-14 (June 27, 2025); id., slip op. at 6 (Kavanaugh, J., concurring) (noting that district courts may "grant or deny the functional equivalent of a universal injunction—for example, by granting or denying a preliminary injunction to a putative nationwide class under Rule 23(b)(2)"); id., slip op. at 44 (Sotomayor, J., dissenting) ("[T]he parents of children covered by the Citizenship Order would be well advised to file promptly class action suits and to request temporary injunctive relief for the putative class pending class certification.").

22. However, it appears that no party averred that nationwide injunctions are in fact sua sponte class, joinder, and class action determinations. The legislature has indeed given District courts authority to make

class, joinder, and class action determinations pursuant to F.R.C.P. 23 ,19 and, 20.

23. The U.S. Constitution generally applies to everyone within the United States, including non-citizens and undocumented immigrants. The Constitution outlines a framework for a government of the people, and it indirectly addresses the idea of different groups or interests within society through its provisions on representation, rights, and the structure of government. But those narrower different groups or classes established by the Constitution and construed so over 236 years establishes a permanent super class of "persons within the jurisdiction of the United States and the provisions of the United States Constitution". This permanent class is established even before certification in a judicial proceeding.

24. When District courts make sua sponte class, joinder, and class action determinations pursuant to F.R.C.P. 23 ,19 and, 20 resulting in an order traditionally entitled a "Nationwide injunction" it is this permanent class that is considered, subject to any modification to the class up to and including decertification.

25. Sua sponte authority is derived from the court's inherent power to manage its own proceedings and ensure the efficient administration of justice. Equitable relief should be granted if it

supports the efficient administration of justice. Equitable relief should not be denied if the efficient administration of justice is interfered with by conflicting relief across 50 states.

26. Donald J. Trump issued order 14160 in his purported "JUDICIAL CAPACITY" as he interpreted birthright citizenship laws and can declared existing birthright citizenship laws unconstitutional.

27. Donald J. Trump issued order 14160 in his purported "LEGISLATIVE CAPACITY" as he made new law while abolishing existing law.

28. The district judge must determine its subject matter and personal jurisdictions, and the subject matter and personal jurisdictions as to the ACTION reviewed. Judicial or legislative acts performed by the executive are VOID ab initio even if framed as an executive order. Old Wayne Mut. Life Ass'n v. McDonough, 204 U.S. 8 (1907), Youngstown Sheet & Tube Co. v. Sawyer (1952), United States v. Nixon (1974).

29. Stays even when fashioned as "Nationwide injunctions" are issued PENDING REVIEW and all parties relevant to the action reviewed are before the district judge acting in this forced appellate capacity until review is complete.

30. The existence or nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared. For these reasons declaratory relief should be granted.

## OPPOSITION TO VACATION OF THE COURT'S INJUNCTION

31. Movant realleges and incorporates the preceding paragraphs.

32. On January 20, 2025, Donald J. Trump signed Order 14160, in his purported executive authority, purported judicial authority and purported congressional authority.

33. It appears that the Supreme court addressed the narrowed action ONLY in Donald J. Trump's purported EXECUTIVE capacity even though he did more.

34. It also appears that the Supreme court did not consider that the injunction is a sua sponte class, joinder, and class action determination pursuant to F.R.C.P. 23 ,19 and, 20 resulting in an order traditionally entitled a "Nationwide injunction" in which the "persons within the jurisdiction of the United States and the provisions of the United States Constitution" permanent class is considered.

35. It appears that the Supreme court did not consider that ALL the parties in the action being reviewed are before the district judge

pending review in alleging that the relief should be tailored only to the parties who are before the court.

36. The consequences of relinquishing this necessary power of the district court judiciary will have a devastating impact on the court's ability to protect its litigants, the laws and the Constitution of the United States.

37. If the Supreme Court of the United States authorize the executive to execute judicial and congressional functions until it reaches the Supreme court sometimes years later, then the Supreme Court authorizes the District Courts to act in the forced appellate capacity until that time so long as the District judge did not yet "try" the issue. U.S. Code, Title 28, Section 47, which states, "No judge shall hear or determine an appeal from the decision of a case or issue tried by him."

38. A District judge entering a preliminary "Nationwide injunction" has not "tried" the issues.

39. For these reasons the movant respectfully invites the professional attorneys for the plaintiffs to elaborate on this request and requests that the court clarify or modify instead of vacating its order while simultaneously granting all the relief requested by the plaintiffs.

## GROUNDS TO PROCEED UNDER PSEUDONYM

40. Defendants have threatened and incited violence against judges, lawyers, political rivals, litigants, and others who are in opposition or challenge alleged unconstitutional conduct, and their families under guise of the 1st amendment.

41. Movant contends that no one in the United States should be dissuaded from assertion of the Constitutional rights to seek redress and to self-representation, but that instead the intended fear mongering requires a penalty from the beginning against the defendants for attempting to interfere or impede with litigation before, during, and after. The defendant's conduct should be recognized as a "self-inflicted" challenge to their own ability to defend when balancing it with the very safety of litigants and the right to seek redress. The plaintiff's and others right to seek redress and do so without threat of violence outweighs the defendants' right to build a defense based upon identifying facts when the threat is live, and ongoing but curable. Defendants can "cure" this issue by simply being honest with those, for example, who engaged in an insurrection against the government.

42. Defendants have released nearly 1500 persons that were in some way involved with an attempted coup of the government on January 6th, 2021.

43. Defendants under guise of official conduct threaten lawyers who were involved in adverse litigation.

44. Defendants, under guise of official conduct, have "kidnapped" people to foreign countries without due process of law and in this very case attempt by executing judicial functions under guise of the executive to end citizenship for more.

45. Pursuant to F.R.C.P. 5.2 and 26(c), the plaintiff may obtain an order allowing him to proceed under pseudonym.

46. In re Sealed Case, 971 F.3d 324 (D.C. Cir. 2020) the court reiterated that "Once a legitimate showing of need has been made, the court must then "balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure." *In re Sealed Case, 931 F.3d at 96*. This balancing test is necessarily flexible, and fact driven."

47. As a starting point, the court will weigh the following five non-exhaustive factors:

[1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;

[2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;

[3] the ages of the persons whose privacy interests are sought to be protected;

[4] whether the action is against a governmental or private party; and, relatedly,

[5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

## FACTOR 1

**[1] The justification asserted by the requesting party is NOT merely to avoid the annoyance and criticism that may attend any litigation and is to preserve privacy in a matter of [a] sensitive and highly personal nature.**

48.     Under this factor, the Court must consider whether this lawsuit would bear on the kind of "sensitive and highly personal" information about Plaintiff or other individuals that can weigh in favor of pseudonymity. In re Sealed Case, 971 F.3d at 326–27 (citation

omitted) (listing as examples "sexual activities," "medical concerns," or "identity of abused minors").

49. Movant is proceeding under pseudonym in other litigation already granted by the court.

## FACTOR 2

**[2] Identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties**

50. Movant is in fear of being retaliated against having already been attacked for assertion of rights by a nonwhite person. Defendants should not reap the benefits of their conduct.

## FACTOR 3

**[3] The ages of the persons whose privacy interests are sought to be protected**

51. There are no minors personally known to the primary plaintiff directly involved. But plaintiff has a large family in all parts of the country with many minors as members. The risk of danger exists to both immediate and non-immediate family members.

## FACTOR 4

## [4] The action is against both a governmental and a private party relatedly

52. Anonymous litigation can also be appropriate when a plaintiff sues the government seeking "individualized relief." Doe v. PCAOB, *2024 WL 3954189*, at *3–4 (D.D.C. Aug. 2, 2024); see Doe v. Blinken, No. 24-1629,

ECF No. 3 (Mem. Op.) at 4–5 (D.D.C. June 11, 2024). And that is indeed in large part Doe's aim as he also seeks damages for his injuries in other litigation.

## FACTOR 5

## [5] The risk of unfairness to the opposing party from allowing an action against it to proceed anonymously is self-inflicted

53. Words matter.

54. The facts of the case outline defendants' declaration of war against the Constitution. Defendants have no plans to comply with the law, but instead to weaponize the plaintiff's, movant's and the court's loyalty to the Constitution against them.

55. There is a strong presumption that defendants engaged in threats and fear mongering to prevent adverse litigation even before litigation commenced. Nevertheless, defendants invoked their plan to impermissibly and unlawfully interfere with meaningful access and

due process and prevent contests to their conduct by choice and counsel of professional attorneys. This type of misconduct would be subject to the most severe sanction in any proceeding including adverse judgement.

56. Merely proceeding under pseudonym in this limited capacity places no burden on the defendants.

57. Movant respectfully moves the court to allow him to proceed under pseudonym.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Court should grant the movant's Motion to Intervene (i) as a matter of right pursuant to Rule 24(a)(2), Federal Rules of Civil Procedure, or, in the alternative, permissively pursuant to Rule 24(b) Federal Rules of Civil Procedure, grant the declaratory requests and request in opposition under pseudonym while simultaneously granting all of the plaintiff's requested relief.

## CERTIFICATE

I John Doe, swear under penalties of perjury, that the foregoing is

true, correct and not meant to mislead. I also certify that a true, correct

copy has been forwarded to all electronically registered parties upon filing.

*[signature]*

John Doe




PRESS FIRMLY TO SEAL   PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

**UNITED STATES POSTAL SERVICE** | **PRIORITY MAIL**

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

**TRACKED ■ INSURED**

To schedule free Package Pickup, scan the QR code.


PS00001000014
EP14F July 2022
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

**UNITED STATES POSTAL SERVICE** — **Click-N-Ship®**

usps.com
$8.75
US POSTAGE

9405 5301 0935 5175 9564 75 0087 5001 0009 8101

U.S. POSTAGE PAID

07/02/2025   Mailed from 32835   973032332566838

**PRIORITY MAIL®**

VINODH RAGHUBIR  LODGED
385 RED ROSE CIR   RECEIVED
ORLANDO FL 32835-4486

JUL 08 2025
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

07/07/2025
Flat Rate Envelope
RDC 03
C028

UNITED STATES DISTRICT COURT
STE 2310
700 STEWART ST
SEATTLE WA 98101-4442

**USPS TRACKING #**

9405 5301 0935 5175 9564 75





This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.